# EXHIBIT A

# PROMISSORY NOTE SECURED BY DEED OF TRUST
## (This Note contains an Acceleration Clause)
### BALLOON PAYMENT NOTE

☒ INTEREST ONLY ☐ PARTIALLY AMORTIZED ☐ FULLY AMORTIZED ☐ OWNER USER
☐ OWNER OCCUPIED ☒ NON-OWNER OCCUPIED
☐ CONSUMER PURPOSE ☒ BUSINESS PURPOSE ☒ BUSINESS ENTITY

Loan Number: DB18877
Property Address: 1226 PHYLLIS AVENUE, MOUNTAIN VIEW, CA 94040
Loan Amount: $1,522,500.00    SAN JOSE, California    December 13, 2019

In installments as herein stated, for value received, MADELEINE TASHJIAN, AN UNMARRIED WOMAN and DUTCHINTS DEVELOPMENT LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, the undersigned Borrower(s), promise to pay to BEHROOZ R. SHAHAB AND LAURIE A. SHAHAB, TRUSTEES OF THE SHAHAB FAMILY REVOCABLE TRUST, DATED 7/31/2000, AS TO AN UNDIVIDED 550,000/1,522,500 INTEREST; GREGORY GALEN LIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 740,000/1,522,500 INTEREST; STEPHEN E. FOURNIER, TRUSTEE, FOURNIER TAX CONSULTING 401K, AS TO AN UNDIVIDED 232,500/1,522,500 INTEREST, Lender at a place that may be designated by Lender, the sum of: $1,522,500.00, One million Five hundred Twenty-Two thousand Five hundred dollars with interest from the date of funding on the unpaid principal at the rate of 8.500% per annum, payable as follows:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 11 | $ 10,784.38 | Monthly Beginning: 02/01/2020 Due on the FIRST day of each month |
| 1 | $ 1,533,284.38 | 01/01/2021 |

The maturity date of this loan is 01/01/2021, at which time all sums of principal, interest, and other charges, then remaining unpaid shall be due and payable in full. Interest shall be calculated on a 360 day year and on an ordinary annuity calculation basis. At the option of Lender, each payment shall be credited first on impounds then due, then interest due, then on late charges, then on interest on advances, then on advances, then on default interest, then on advance fees and other fees and charges incurred, and the remainder on principal. Interest shall thereafter cease upon any principal so credited. Should full payment not be received, including any impounds due, Lender may apply the amount received in its sole discretion.

**In Case of an Interest Only or Partially Amortizing Loan:** Should any portion of principal be paid prior to the maturity date of this loan, Lender reserves the right to keep the monthly payment amount consistent with what is showing as the regular monthly payment above. However, the amount due at the time of the maturity will change with principal paydown.

WHEN PAYING OFF ANY AMOUNT OF PRINCIPAL GREATER THAN $50,000.00, SAID PRINCIPAL MUST BE PAID IN THE FORM OF A CASHIER'S CHECK, MONEY ORDER, WIRE OR TITLE COMPANY FUNDS. SHOULD BORROWER CHOOSE TO PAY IN THE FORM OF A PERSONAL CHECK, AN ADDITIONAL TEN (10) CALENDAR DAYS OF INTEREST MAY BE CHARGED AS IT CAN TAKE UP TO TEN (10) BUSINESS DAYS TO FULLY CLEAR THE BANK (IN CASE OF A NON-SUFFICIENT FUND CHECK NEEDING A SECOND CLEARANCE PERIOD, FOR EXAMPLE).

**Default on Loan.** Upon default in any payment of any installment or any other default under the loan documents, the Note, or the Security Instrument, then the balance of this obligation shall become due immediately at the option of the holder of the Note; principal, interest, and any and all amounts due Lender are payable in lawful money of the United States of America. Except where federal law is applicable, this Note shall be construed and enforceable according to the laws of the State of California for all purposes and any terms herein inconsistent therewith are hereby modified to conform to said law at the time of signing of these loan documents. Time is of the essence for each and every obligation under this Note.

If this Note, or any amounts under this Note, is not paid when due, or there is any other breach under the loan documents, the Borrower(s) promise to pay, in addition to the principal, interest, advances, interest on advances, default interest and any other amounts due under this Note, all costs of collection and all reasonable attorneys' fees incurred by Lender for said collection, whether or not suit is filed herein. Each Borrower consents to renewals, replacements, and extensions of time for payment if granted by Lender, before, at, or after maturity; consents to the acceptance of security for this Note and waives demand, protest and any applicable statute of limitations. Advances shall bear interest at the interest rate stated in the Note or the Default interest, whichever is higher, from date of advance until date paid in full.

Page 1 of 4

THE FOLLOWING PROVISIONS MAY RESULT IN THE COMPOUNDING OF INTEREST ON YOUR LOAN
At the option of Lender, if any payment remains unpaid after that payment's grace period and/or any payment should be insufficient to pay the interest then due, the balance of interest remaining may, at Lender's sole discretion:
    1. Add any unpaid interest and/or late charges to principal and cause it to bear interest at the Note rate as part of the principal
    2. Charge Note rate of interest or default rate of interest, if default rate is included in this Note, whichever is higher, upon the unpaid interest amount until interest is paid current
Additionally, at the option of Lender, if any principal and/or interest installments, late charges, advances and/or costs should be repaid through or by any forbearance, bankruptcy plan or similar repayment plan or by foreclosure, the total sum of these amounts may, at Lender's sole discretion, bear interest at the Note rate or the Default Interest rate from the date due or advanced until the date repaid.
IF BORROWER(S) DO NOT ACKNOWLEDGE THE ABOVE, IT DOES NOT NEGATE THE COMPOUNDING INTEREST CLAUSE. IT WILL STILL BE IN FULL FORCE AND EFFECT.
BORROWER(S) ACKNOWLEDGE COMPOUNDING INTEREST RATE BY INITIALING BELOW:

_A.T._

**Payment Late Charge.** If any installment due hereunder is not received by the Lender or their designated agent within ten (10) calendar days, the Borrower to this Note agrees to pay a late charge on each installment of $5.00 or 10.00% of the delinquent payment, whichever is larger. All late charges are to be paid immediately on demand.

**Balloon Late Charge.** In addition, if any balloon payment is not received by the Lender or their designated agent within ten (10) calendar days, Borrower will be charged a monthly late charge for each month the balloon remains unpaid in full. Borrower to this Note agrees to pay a late charge equivalent to the maximum late charge which could be assessed on the largest single regular installment due under this Note. This late charge on the balloon payment is to continue to be assessed for each subsequent period of time equal to the regular installment period under this Note until the balloon payment and all other fees, interest and charges due under this Note are paid in full.

**Return Check Charge.** Borrower and Lender agree that it would be difficult to determine the actual damages to Lender or Lender's agent for the return of an unpaid check provided by Borrower. It is hereby agreed that Borrower will pay the sum equal to 5% of the amount returned or $25.00, whichever is greater. However, in any event the maximum charge for an unpaid check is not to exceed the sum of $35.00. This amount is in lieu of any statutory monetary penalty, if any; however, Lender does not waive any other rights that may be awarded under any statute. Should Borrower have two or more returned checks (including automatic clearinghouse ("ACH") payments), for any reason, during the life of the loan, Lender may demand that Borrower make payments in the form of cash, cashier's check or money order.

**Right to Assign By Lender.** The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and/or other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**Prepayment Penalty.** The principal and accrued interest on this loan may be prepaid in whole or in part at any time ☒ without paying a penalty; ☐ Lender is guaranteed to receive a minimum of N/A months interest based on the original principal balance together with any odd days interest due or paid through escrow; or ☐ but a prepayment made within N/A months of the date of execution of this Note shall be subject to the following prepayment charge, whether such prepayment is voluntary, involuntary or results from default in any term of this Note or the Deed of Trust by which it is secured: A sum equal to the payment of six (6) months advance interest on the amount prepaid in any twelve (12) month period (non-accumulative) in excess of twenty percent (20%) of the unpaid balance will be charged. If the remaining term of the loan is less than six (6) months, the prepayment consideration shall be in the amount of advance interest for the remaining term on the amount prepaid in excess of twenty percent (20%) of the unpaid balance or the interest due to the end of the loan term, whichever is greater (provided the prepayment penalty does not exceed the amount which would have been received if paid prior to the last six month period). Said pre-payment penalty is to be paid at the time of principal pre-payment.

**Default Rate.** In addition to the interest rate stated above, default interest shall accrue when (a) any monthly installment (either full or partial payment) under this Note remains past due its late period (b) the principal balance is not paid on its maturity date (c) senior lien, including taxes and insurance, is/are delinquent (d) advances are made to protect Lender's interest and/or (e) any other Event of Default under this Note, the securing Deed(s) of Trust or any of the loan document has occurred and is continuing. Default interest under this Note shall accrue on the unpaid principal balance (and any advances made by Lender or Agent of Lender under this note) from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "Default Rate") equal to the lesser of **5.00%** percentage points above the rate stated in the first paragraph of this Note or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. This would also include any acceleration of the note due to title transfer, foreclosure or any other reason for acceleration. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent, advances are made or the loan is not paid at the Maturity Date, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent or the loan is not paid at the Maturity Date or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's default and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent/defaulted loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in the first paragraph of this Note may be immediately due and payable in addition to the regularly scheduled principal and interest payments at Lender's discretion. The accruing and/or charging of the default interest is at Lender's discretion/direction whether to charge said increase of interest rate.
**IF BORROWER(S) DO NOT ACKNOWLEDGE THE ABOVE, IT DOES NOT NEGATE THE DEFAULT INTEREST CLAUSE. IT WILL STILL BE IN FULL FORCE AND EFFECT.**
**BORROWER(S) ACKNOWLEDGE DEFAULT INTEREST RATE BY INITIALING BELOW:**

_____     _____

**Advancing Fee.** For any advances made to senior encumbrances and/or obligations to protect Lender's interest in this Note, there will be an advancing fee equal to three (3%) of the amount so advanced subject with a minimum fee of fifty dollars ($50) per advance made by each Lender. Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when all monies are paid in full in the form of cash and/or certified funds. ALL ADVANCES ARE TO BE REPAID AT NOTE RATE OR DEFAULT INTEREST RATE, WHICHEVER RATE IS HIGHER, FROM THE DATE OF ADVANCE UNTIL THE DATE FUNDS ARE RECEIVED BY LENDER. If Lender makes an advance, Borrower is responsible for the advance, advancing fee(s) stated above, and any cost of the title endorsement associated with the advance.

**Senior Loan Information.** If this loan is in a junior position loan, Borrower must provide Lender, upon written or verbal request, all current information necessary, by both telephone and internet access if available, to determine whether senior lienholders are current. All senior loans and senior liens must be in a current status or a default under this loan will have occurred.

**Oral Representations.** Borrower hereby states that neither Lender, Lender's representative(s), any employee of Lender, or any employee of HAMILTON RIDGE ASSET MANAGEMENT has mentioned, given actual details(s) or discussed terms of this loan other than what has been agreed to in writing.

**Bankruptcy Administration Fee.** A Bankruptcy Administration Fee will be charged for each bankruptcy filed by Borrower and/or each bankruptcy that affects the Property in an amount of $250.00 for each case filed. All parties agree that this additional fee is to compensate Lender or Lender's servicing agent for the additional tracking, accounting, communications, and work required when a bankruptcy is filed. This fee is in addition to any attorneys' fees which may be due or payable to Lender and/or Lender's servicing agent's attorney or reimbursement to Lender and/or Lender's servicing agent for work performed by said attorney during bankruptcy.

**Severability; Entire Agreement; Amendments.** The parties intend that the provisions of this Note, and all other Loan Documents, including the Deed of Trust securing the indebtedness, shall be legally severable. If any term or provision of this Note or any other loan document, including the Deed of Trust securing the indebtedness, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Note or of such other loan document, including the aforesaid Deed of Trust, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by law. This Note and the aforesaid Deed of Trust contain the entire agreement between the parties as to the rights granted and the obligations assumed in this Note. This Note may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

Page 3 of 4

**Binding Terms.** This Note and all of the covenants, promises and agreements contained in it shall be binding on and enure to the benefit of the respective legal and personal representatives, devisees, heirs, successors, and assigns of Borrower and Lender.

**Acceleration Clause.** This Note is secured by a First Deed of Trust of even date herewith naming **FCI LENDER SERVICES, INC.,** as trustee, which contains the following provision:

> In the event of sale or transfer, conveyance or alienation of the Property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and twenty-five percent (25%) or more of that entity that is Borrower is sold or transferred), Lender shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, immediately due and payable, irrespective of the maturity date expressed therein, and without demand or notice. No waiver of this right shall be effective unless it is in writing. Consent by Lender to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions. The acceptance of funds from any party other than Borrower does not constitute acceptance of any transfer of the Property and acceleration under this clause may still occur and/or continue.

**NON-CANNABIS USE AGREEMENT.** Borrower and Lender agree that Borrower shall be prohibited from any and all cannabis use and/or growth on the property while the Loan is still active. Should the Borrower fail to comply with this agreement, the Lender, at its discretion, may immediately declare the Loan in default and may accelerate the Loan.

**No Assumption of Note.** This Note is not assumable if Borrower sells, assigns, or otherwise transfers, including to heirs and/or devisees, either in part or in its entirety, the security for this Note, the Deed of Trust, and/or other instruments evidencing or securing the indebtedness of this Note.

BY SIGNING BELOW, BORROWER ACCEPTS AND AGREES TO THE TERMS AND COVENANTS CONTAINED IN THIS NOTE.

BORROWERS:

_____ 12/17/19
MADELEINE TASHJIAN / DATE

DUTCHINTS DEVELOPMENT, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

BY: _____ 12/17/19
VAHE TASHJIAN, MANAGING PARTNER / DATE

DO NOT DESTROY THIS NOTE: When paid, this Note, with Deed of Trust securing same, must be surrendered to the Trustee for cancellation before reconveyance or Trustee's Deed. This loan was originated by HAMILTON RIDGE ASSET MANAGEMENT, License No. 01870147, a company licensed by the California Department of Real Estate.

Page 4 of 4

Case: 21-51255   Doc# 59-2   Filed: 11/18/21   Entered: 11/18/21 11:03:12   Page 5 of 37

# EXHIBIT B

**Orange Coast Title Company**

RECORDING REQUESTED BY *Orange*

WHEN RECORDED MAIL TO

HAMILTON RIDGE ASSET MANAGEMENT
111 NORTH MARKET STREET #300
SAN JOSE, CA 95113
Loan Number: DB18877

Property Address:
1226 PHYLLIS AVENUE
MOUNTAIN VIEW, CA 94040
APN # 193-11-042
**COUNTY: <u>SANTA CLARA</u>**

**This document was electronically submitted to Santa Clara County for recording**

**24374662**

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
01/07/2020 09:29 AM

Titles: 2     Pages: 17
Fees: $98.00
Tax: $0.00
Total: $98.00

SPACE ABOVE THIS LINE FOR RECORDERS USE

The primary person responsible for the origination of this loan is DAVID PAUL BIANCO CALDRE #01819218 employed by HAMILTON RIDGE ASSET MANAGEMENT  CALDRE #01870147.

Exempt from fee per GC 27388.1 (a)(1); fee cap of $225 reached.

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

**DEFINITIONS:**

Words used in multiple sections of this document are defined below and other words are defined in Sections 1, 3, 4, 5, 9, 11, 16, 20, 35, and 36. Certain rules regarding the usage of words used in this document are also provided in Section 14.

**(A) "Security Instrument"** means this Deed of Trust and Assignment of Rents, which is dated December 13, 2019, together with all Riders to this document.  This Security Instrument may also be referred to as the "Deed of Trust".

**(B) "Borrower"** is MADELEINE TASHJIAN, AN UNMARRIED WOMAN and DUTCHINTS DEVELOPMENT LLC, A CALIFORNIA LIMITED LIABILITY COMPANY. Borrower is the trustor under this Security Instrument. Borrower's mailing address is: 5150 EL CAMINO REAL STE. E20, LOS ALTOS, CA  94022.

**(C) "Lender"** is BEHROOZ R. SHAHAB AND LAURIE A. SHAHAB, TRUSTEES OF THE SHAHAB FAMILY REVOCABLE TRUST, DATED 7/31/2000, AS TO AN UNDIVIDED 550,000/1,522,500 INTEREST; GREGORY GALEN LIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 740,000/1,522,500 INTEREST; STEPHEN E. FOURNIER, TRUSTEE, FOURNIER TAX CONSULTING 401K, AS TO AN UNDIVIDED 232,500/1,522,500 INTEREST. Lender is the beneficiary under this Security Instrument. The term Lender shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Lender herein.

**(D) "Trustee"** is FCI LENDER SERVICES, INC., to whom Borrower irrevocably grants, transfers and assigns property, in Trust, with Power of Sale.

**(E) "Note"** means the promissory note signed by Borrower and dated December 13, 2019.  The Note states that Borrower owes Lender One million Five hundred Twenty-Two thousand Five hundred dollars (U.S. $1,522,500.00) plus interest plus all other amounts that may become due under the Note and this Security Instrument.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges, late charges, and all other charges due under the Note, all sums due under this Security Instrument, plus interest and other charges. Loan also includes all other documents executed by Borrower conjunction with the Note and this Security Instrument. While there may be sums due under this Security Instrument that are not part of the Loan, such sums are secured by this Security Instrument and may be collected pursuant to the rights granted to Lender herein.

Page 1 of **15**

**(H) "Riders"** means all riders to this Security Instrument that are required by Lender and are executed by Borrower. The following riders are to be executed by Borrower: **NONE**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** mean those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5 for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Periodic Payment"** means the regularly scheduled amount due for: (1) principal and interest under the Note; plus (2) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan".

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(Q) "Loan Servicer"** means the entity that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SANTA CLARA, which currently has the address of 1226 PHYLLIS AVENUE, MOUNTAIN VIEW, CA 94040 and fully described as:

## SEE LEGAL DESCRIPTION ATTACHED – EXHIBIT "A"

## APN # 193-11-042

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges, late charges, and all other charges due under the Note and the payment of any obligations due under Borrower's Security Instrument(s). Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer. Additionally, Lender can require payment due to senior encumbrances, including property taxes, insurance, and Homeowner's Association ("HOA") dues, in the forms listed above.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender or Lender's Servicing Agent, in accordance with the notice provisions in Section 13. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds, at Lender's sole discretion, or return them to Borrower. If not applied earlier, such funds will be applied to any amounts under the Note owed by Borrower. Lender shall decide how to apply funds. Should a Notice of Default be of record, funds may be applied and the Notice of Default shall remain valid with full force and effect. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: each payment shall be credited first on impounds (Escrow Items in Section 3) then due, then interest due, then on late charges, then on interest on advances, then on advances, then on default interest, then on advance fees and other fees and charges incurred, and the remainder on principal. However, should advances be made due to a default under this Deed of Trust, Lender has sole discretion as to the distribution as to how payments shall be applied when received. All Periodic Payments shall be applied in the order in which a payment first became due unless a written forbearance agreement or loan modification agreement is in effect.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied the full payment of one or more Periodic Payments, such excess may be applied to any late charges due, in Lender's sole discretion. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Should Lender require, Borrower or his successor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum to provide for payment of amounts due ("Escrow Funds") for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Escrow Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver shall only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for

any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender all such amounts. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with

Page 3 of 15

Section 13 and subject to any legal requirements, and, upon such revocation, Borrower shall pay to Lender all Escrow Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount: (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA; and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Escrow Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Escrow Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Escrow Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Escrow Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Escrow Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Escrow Funds, Lender shall not be required to pay Borrower any interest or earnings on the Escrow Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Escrow Funds. Lender shall give to Borrower, without charge, an annual accounting of the Escrow Funds as required by RESPA.

If there is a surplus of Escrow Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Escrow Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Escrow Funds held by Lender.

**4. Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust including borrower's covenants to make payments when due. Additionally, borrower shall pay all taxes, assessments, charges, including garbage billings, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**All Property Assessed Clean Energy assessment/liens ("PACE") (or similar type program) are prohibited. In the event that a PACE assessment/lien becomes a lien on the Property and becomes a part of the payment of property taxes or becomes senior to this Security Instrument in any way, Borrower shall be in breach of the Note and this Security Instrument and Lender has the right to take all acts set forth in Security Instrument and to accelerate this Loan. The loan shall be in default and Lender may proceed under Section 21 of this Security Instrument. This supersedes any and all conflicting language regarding taxes, liens and assessments in this Security Instrument.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 calendar days of the date on which that notice is given (excluding Deed of Trust liens, which need no notice), Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4. Failure to do so by Borrower, may result in Lender accelerating the Note under Section 8.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (1) a one-time charge for flood zone determination, certification and tracking services; or (2) a one-time charge for flood zone determination and certification services and subsequent charges each time re-mappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Page 4 of 15

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, except where required by state and/or federal law, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate or Default Rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Prior to close of escrow, and upon renewal and/or change of insurance carrier, Borrower to provide and deliver evidence of insurance to Lender, which is to the satisfaction of Lender.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss to the insurance carrier if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2. Lender or Lender's agent has the right to order inspections to review the repairs and restoration of the Property. The cost for those inspections shall be paid from the insurance proceeds unless paid directly by Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 calendar days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender: (1) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument; and (2) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Whether or not the Lender/Beneficiary has required a particular insurance product, as an example but not limited to earthquake or flood, the Lender/Beneficiary shall be entitled to any insurance proceeds without limitation.

**Any cost of acquiring evidence of insurance from current insurance producer, shall be a cost of the Borrower. It will be treated as an advance and charged interest thereon from date cost is paid by Lender and/or Lender's agent to date advance is repaid to Lender by Borrower. Advancing fee applies. Additionally, should Borrower not supply evidence of insurance sufficient for Lender's requirement and an insurance binder must be place by the Lender and/or Lender's agent, the binder fee shall be charged to the Borrower in addition to the cost of Lender placed insurance.**

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the

Page 5 of 15

Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Additionally, should Borrower be conducting illegal activity on or about the property, this shall constitute a breach under this Security Instrument.

**Should this Loan fall into default for any reason or fall under any other city, county and/or state ordinance notification and/or correction situation (i.e. vacant property), Borrower agrees to pay all ordinance and/or registration fees to the city/county and/or state, and corrective fees and charges when due, and those advanced by Lender. In addition, should inspections be required, Borrower understands that they are responsible for payment of all fees for said inspections. The inspections could be monthly, depending on the requirements of the city, county, and/or state, or depending upon the requirements of Lender.**

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, fraudulent, misleading, misrepresentation, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence, or funds being used for a business purpose.

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If: (1) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (2) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations); or (3) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (1) paying any sums secured by a lien which has priority over this Security Instrument; (2) appearing in court; and (3) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. The parties hereto agree that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Code of the United States, Lender, at Lender's option, may take such action, including but not limited to seeking relief from stay to complete foreclosure of the Property under the Bankruptcy Code. Lender may disburse such sums, including reasonable attorneys' fees, as Lender deems necessary, in Lender's sole and absolute discretion, to protect Lender's interest. All such disbursed sums shall be added to the obligation of Borrower and shall be secured by this Security Instrument.

Additionally, a Bankruptcy Administration Fee will be charged for each bankruptcy filed by Borrower and/or each bankruptcy that affects the Property in an amount of $250.00 for each case filed.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate or Default Rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is

Page 6 of 15

made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 calendar days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

Page 7 of 15

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, foreclosure fees, property inspection, and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is judicially interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's mailing address set forth in the definitions if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the mailing address set forth in the definitions unless Borrower has designated a substitute notice address that is provided to Lender.

**Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address that is provided to Borrower.**

Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument. Borrower requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to Borrower at the mailing address set forth above, unless Borrower has designated another address that is provided to Lender.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (1) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (2) words in the singular shall mean and include the plural and vice versa; and (3) the word "may" gives sole discretion without any obligation to take any action.

**15. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.   Borrower acknowledges receipt of same.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

**In the event of sale or transfer, conveyance or alienation of the Property, or any part thereof, or any interest therein, whether voluntary or involuntary (or if Borrower is not a natural person and twenty-five percent (25%) or more of that entity that is Borrower is sold or transferred), Lender shall have the right of acceleration, at its option, to declare the Note secured by the Deed of Trust, immediately due and payable, irrespective of the maturity date expressed therein, and without demand or notice. No waiver of this right shall be effective unless it is in writing. Consent by Lender to one such transaction shall not constitute waiver of the right to require such consent to succeeding transactions. The acceptance of**

Page **8** of **15**

**funds from any party other than Borrower does not constitute acceptance of any transfer of the Property and acceleration under this clause may still occur and/or continue.**

**17. Borrower's Right to Reinstate after Acceleration.** If Borrower meets certain conditions, Borrower may have the right to reinstate the Note after acceleration by Lender prior to the earliest of: (i) five business days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (ii) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (iii) entry of a judgment enforcing this Security Instrument.

Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, foreclosure fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. **However, this right to reinstate shall not apply in the case of acceleration under Section 16.**

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change of Loan Servicer. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information required in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**19. Secret Profit.** Under the law, it is unlawful for a Loan Servicer to make "secret profit". Should a Loan Servicer be involved with the servicing of the Loan, a Loan Servicer may not earn interest on the funds in a trust account unless it is to the benefit of the actual owner of the funds. This paragraph is to put Borrower on notice that although interest is not paid to the Loan Servicer, there may be a lower cost basis given by the bank utilized by the Loan Servicer for the monthly analysis performed on the trust account(s). Said lower cost may be reflective of the balances in the accounts. Additionally, when there is a returned check fee being charged, the entire amount is not a "bank charge". Included in the cost of the returned check" which is delineated in the Promissory Note, Loan Servicer shall retain the difference between the "Note" charge and the actual charge by the bank as an additional work charge. In addition, should a tax service be ordered, the Loan Servicer may retain the difference between the actual cost of the service and the amount charged to the you, the Borrower. This difference is the cost for the Loan Servicer to prepare the request for service.

**20. Hazardous Substances.** As used in this Section 20: (1) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (2) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (3) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (4) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property: (1) that is in violation of any Environmental Law; (2) which creates an Environmental Condition; or (3) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of: (1) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (2) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (3) any condition caused by the presence, use or release of a Hazardous

Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of the Note and/or this Security Instrument, and/or any other of the Loan documents, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee, Agent of Lender or Agent of Trustee, of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee, Agent of Lender or Agent of Trustee shall cause to be filed for record. Trustee, Agent of Lender or Agent of Trustee shall be entitled to rely upon the correctness of such notice.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee or Trustee's Agent, without demand on Borrower, shall sell the Property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as Trustee or Lender may determine at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee, or Trustee's Agent may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Borrower, Trustee or Lender as herein defined, may purchase at such sale.

If the Property consists of several lots, parcels or items of property, Lender may: (a) designate the order in which such lots, parcels or items shall be offered for sale or sold; or (b) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender deems is in its best interest. Any person, including Borrower, Trustee or Lender, may purchase at any sale hereunder, and Lender shall have the right to purchase at any sale hereunder by crediting upon the bid price the amount of all or any part of the indebtedness hereby secured. Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender may, at its option, cause the same to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Property not sold until all indebtedness secured hereby has been fully paid. In the event Lender elects to dispose of the Property through more than one sale, Trustor agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein the same may be made, including reasonable compensation to Trustee and Lender, their agents and legal counsel, and to pay all expenses, liabilities and advances made or incurred by Trustee in connection with such sale or sales, together with interest on all such advances made by Trustee at the lower of the rate set forth in the Note, or the maximum rate permitted by law to be charged by Trustee. Trustor hereby waives any and all rights expressed or implied under California Civil Code § 2924g(b).

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with the sale, Trustee shall apply the proceeds of sale to payment of: (a) all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; and then (b) all other sums then secured thereby, and the remainder, if any, to the person or persons legally entitled thereto.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey this Deed of Trust and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey this Deed of Trust without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Deed of Trust if the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

If Borrower pledges more than one parcel of real property as security for the Note, Lender may agree, in its sole discretion, to agree to release a portion of the Property pledged under this Security Instrument for a sum certain that is paid.

If Borrower seeks a partial reconveyance of one of the properties, Lender shall be entitled to charge a fee of $100.00 for the work necessitated for preparation of the partial reconveyance and said fee shall be presumed to be reasonable. The remaining property described in this Deed of Trust shall continue to be held by said Trustee under the terms thereof. As provided in said Deed of Trust, this Partial Reconveyance is made without affecting the personal liability of any person for payment of the indebtedness secured by said Deed of Trust.

Page 10 of 15

**23. Grievances.** Neither Borrower nor Lender may commence, join, or be joined to any judicial action, except an appointment of a receiver and/or a judicial foreclosure (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action, if a corrective action is available under the Applicable Law. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law.

**25. Multiple Lender Loans:** Pursuant to California Civil Code § 2941.9, if this Deed of Trust has more than one Lender with an undivided interest, it is subject to a signed agreement between all of the Lenders to be governed by the Lenders holding more than 50% of the record beneficial interest of this Deed of Trust. This may occur during escrow or after the close of escrow. Additionally, pursuant to California Business & Professions Code § 10238(i), the holders of more than 50% of the recorded beneficial interests of the notes or interests may govern the actions to be taken on behalf of all holders in accordance with California Civil Code § 2941.9 in the event of default or foreclosure for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf and the sale, encumbrance, or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**26. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the Beneficiary statement and/or Payoff demand statement as provided by California Civil Code § 2943.

**27. Senior Lien Information.** Lender may require information on any and all senior lien information from Borrower. Said request must be made in writing to Borrower. Borrower must submit the information to Lender within 20 calendar days of the date of request. Said information can include, but is not limited to:    name, address, and phone number of senior lien holder, balance due, payment amount, next due date, loan number, amounts advanced, and access codes to on-line systems of senior lienholder that would provide information to Lender about the senior lien.

**28. Document Drawing Service.** If a document drawing service has been hired to draw loan documents, Borrower hereby agrees to indemnify and hold Document Drawing Service, its officers, agents and representatives harmless from and against all costs, expenses (including, without limitation attorney fees, consulting fees and court costs), claims, demands, lawsuits, judgments, awards, or actions arising out of or related to the Property or the Loan.

**29. Indemnification.** Borrower hereby agrees to indemnify, defend (with counsel of Lender's and/or Broker's choice) (as to any fees and costs are incurred or accrued) and hold Lender and Broker and their officers, agents, and representatives harmless from and against any costs, expenses (including, without limitation attorneys' fees, consulting fees and court costs), claims, demands, lawsuits, judgments, awards, or actions arising out of or related to the Property or the Loan, including, but not limited to any claims made by contractors, suppliers, mechanics lien claimants, homeowner associations, governmental authorities, stop notice claimants, title companies or persons purporting to be injured on or by the Property or by the acts or conduct of Borrower, its contractors, subcontractors, suppliers and/or other persons dealing with Borrower. If Borrower fails to provide such indemnity as the same accrues and as expenses are incurred, the amount not paid shall be added to the principal amount of the Note and bear interest thereon at the same rate then in effect (including any default rate in effect) and shall be secured by the same collateral as securing the Note and Loan Agreement.

**30. Acceptance by Lender of Partial Payment after Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full), or any sums secured by this Deed of Trust after a notice of default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payments so made to the loans secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such payment promptly or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. Any foreclosure action that is pending or has been commenced shall continue and will be with full force and effect.

**31. Unsecured Portion of Indebtedness.** If any part of the secured indebtedness cannot be lawfully secured by this Deed of Trust, or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in order to discharge that portion thereof which is unsecured by this Deed of Trust.

Page 11 of 15

**32. Waiver of Marshalling; Other Waivers.** To the extent permitted by law, Borrower waives: (i) the benefit of all present or future laws providing for any appraisal before sale of any portion of the Property; (ii) all rights of redemption, valuation, appraisal, stay of execution, notice of election to mature or declare due the whole of the indebtedness and marshalling in the event of foreclosure of the lien created by this Security Instrument; (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties; (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce the Note or any other obligation secured by this Security Instrument; and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order, including any rights under California Civil Code §§ 2899 and 3433.

**33. 125% Title Insurance Policy.** Borrower agrees to allow Lender to obtain a title policy in an amount exceeding the face amount of the Loan by 25% and instruct insuring title company of same. Lender and Borrower acknowledge this increase of coverage is not for the allowance of negative amortization of the principal balance of the Note. This additional coverage is to pay for losses the Lender may incur in a case which could increase the amount above the original principal balance coverage. Said losses could include unpaid or delinquent interest, late charges, attorneys' fees, advances for insurance, taxes, etc. Borrower agrees this increase of coverage results in a higher title insurance fee for which Borrower shall pay.

**34. Severability; Entire Agreement; Amendments.** The parties intend that the provisions of this Security Instrument and all other Loan Documents, including the Note evidencing the indebtedness secured hereby, shall be legally severable. If any term or provision of this Security Instrument or any other Loan Document, including the Note evidencing the indebtedness secured hereby, be determined to any extent by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Security Instrument or of such other Loan Document, including the aforesaid Note, shall not be affected thereby and each term and provision shall be valid and be enforceable to the fullest extent permitted by Applicable Law. This Security Instrument and the aforesaid Note contain the entire agreement between the parties as to the rights granted and the obligations assumed in this Security Instrument. This Security Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought.

**35. Assignment of Rents, Revenues and Profits**

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the Property now existing or hereafter entered into, all of the rents, royalties, issues, profits (including crops), revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under the Deed of Trust.

Prior to the occurrence of any Event of Default; Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under the Deed of Trust shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof.

Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon. Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due. Whenever requested by Lender, Borrower shall furnish to Lender a certificate of Borrower setting forth the names of all lessees under all leases, the terms of their respective leases, the space occupied, the rents payable thereunder, the security deposit paid, and the dates through which any and all rents have been paid. Whenever requested by Lender, Borrower shall furnish a copy of all current leases to Lender.

**Violation of Governmental Requirements.** If Borrower suspects any tenant or other occupant of the Property is using the Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation.

Page **12** of **15**

The failure of Borrower, any tenant, or any other occupant of the Property to comply with any Governmental Requirements in accordance with the lease section above and any potential violation by a tenant or other occupant of the Property of any Governmental Requirement is an Event of Default.

(b) **Application by Borrower of Rents and Profits.** Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

(c) **Attornment.** Each lease for any part of the Property shall make provision for the attornment of the lessee thereunder to any person succeeding to the interest of Borrower as the result of any foreclosure or transfer in lieu of foreclosure hereunder.

**36. Security Agreement.** This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property that are part of the Property which, under Applicable Law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all hotel furnishings, building materials, petroleum products including gasoline, gas station food and beverages, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with the Property, including, without limitation, any and all personal property necessary for the operation and maintenance of any business located on the Property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of Borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) any and all items of property that are part of the Property which, under Applicable Law, constitute fixtures and may be subject to a security interest under California Uniform Commercial Code §§ 9334 and/or 9604. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, drapery and drapery rods, landscaping, water tanks, plumbing, machinery, air conditioners, ducts, and the like.

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property", and in all additions thereto, substitutions therefor and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times. Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to the Personal Property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under the California Uniform Commercial Code, including, § 9604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this paragraph, Borrower may from time to time replace items of Personal Property and fixtures constituting a part of the Property, provided that:

(1) the replacements for such items of Personal Property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to

being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of California Commercial Code §§ 9334 and/or 9604.

**37. Occupancy of Borrower.** If this loan has been arranged as a non-owner occupied loan, Borrower shall not move into property without written permission by Lender. Should Borrower move into subject property without approval from Lender, this shall be deemed a default under the terms of the loan.

**38. Use of Loan Funds.** Lender has loaned funds according to the what Borrower has stated as funds are to be used. Should Lender discover that funds were not used for the exact reason given in the loan/underwriting documents, this shall be deemed a default under the terms of the loan.

**39. Periodic Reports on the Status of any Business involved with regard to the making of this loan.** If this loan has been made as a "Business Purpose Loan", Lender may request from Borrower an update as to the status of the business with which the funds were to be used. Borrower will have 30 calendar days to give a written status to Lender from date Lender has requested said status. Lender to delineate what information is required as evidence of the status. Should Borrower not produce the written status within the given time period, this shall be deemed a default under the terms of the Loan.

**40. Uncashed Checks.** Should Lender or their agent issue a check to the borrower and it remains uncashed for more than 60 calendar days, a $5.00 monthly fee from date of issue may be charged should borrower request a reissue on the check. Should Borrower request the check to be reissued, in addition to the fee just stated, a stop payment and re-issue fee in the amount of $25.00 may be incurred and deducted from the funds.

**41. Agency of Loan Servicer.** The Loan Servicer or Lender under this Note may or may not have a proprietary program for forbearances, extensions or modifications. You would be advised during the course of the servicing of the loan. However, if the Loan Servicer inquires whether the Borrower would like, or should the Borrower request, an extension of the loan, forbearance, modification, etc., the Loan Servicer remains the sole agent of the Lender and is not the agent of the Borrower.

**42. The Agreement is Binding.** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devises, administrators, executors, successors and assigns.

**43. Usury.** This Loan is exempt from usury as it has been made or arranged by a Licensed California Real Estate Broker.

**44. Property Tax Verification.** Lender may require Borrower to pay a one-time charge for a real estate tax service and/or reporting service used by Lender in connection with this Loan. This tax service may be ordered on each Assessor's Parcel Number secured by this loan. In addition to the fee to be paid to the service, the Loan Servicer may charge a fee to prepare the documentation to order the service. Fees shall be paid by the Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

BORROWERS:

_Madeleine Tashjian_  12/17/19
MADELEINE TASHJIAN / DATE

DUTCHINTS DEVELOPMENT, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY

BY: _____  12/17/19
VAHE TASHJIAN, MANAGING PARTNER / DATE

Page **14** of **15**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California}
County of _____ Santa Clara }

On _DEC 17, 2019_____ before me, _Susan Trujillo_, NOTARY PUBLIC, personally appeared _Madeleine Ashijian_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SUSAN TRUJILLO
COMM. # 2175512
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
My COMM. EXP. JAN. 9, 2021

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF __California__

COUNTY OF __Santa Clara__

On __Dec 17, 2019__,

before me, __Susan Trujillo__ Notary Public,

personally appeared __Vahe S. Tashjian__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

```
SUSAN TRUJILLO
COMM. # 2175612
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Jan. 9, 2021
```

# EXHIBIT C

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
As-Is Value

Please Note: This report was completed with the following assumptions: Market Approach: **Fair Market Price** , Marketing Time: **Typical** . Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | | | |
|---|---|---|---|---|---|
| **Address** | 1226 Phyllis Ave, Mountain View, CA 94040 | **Order ID** | 7732844 | **Property ID** | 31572301 |
| **Inspection Date** | 11/09/2021 | **Date of Report** | 11/11/2021 | | |
| **Loan Number** | TS85418 | **APN** | 193-11-042 | | |
| **Borrower Name** | Dutchints | **County** | Santa Clara | | |

**Tracking IDs**

| | | | |
|---|---|---|---|
| **Order Tracking ID** | UNKNOWN | **Tracking ID 1** | |
| **Tracking ID 2** | -- | **Tracking ID 3** | -- |

## General Conditions

| | | |
|---|---|---|
| Owner | Dutchints | |
| R. E. Taxes | $2,114 | **Condition Comments** |
| Assessed Value | $168,351 | Subject's located on a private road so agent had no access. |
| Zoning Classification | Residectial | Grasses and trees are adequately cut and watered. |
| Property Type | SFR | |
| Occupancy | Occupied | |
| Ownership Type | Fee Simple | |
| Property Condition | Average | |
| **Estimated Exterior Repair Cost** | $0 | |
| **Estimated Interior Repair Cost** | $0 | |
| **Total Estimated Repair** | $0 | |
| HOA | No | |
| **Visible From Street** | Not Visible | |
| Road Type | Public | |

## Neighborhood & Market Data

| | | |
|---|---|---|
| Location Type | Suburban | **Neighborhood Comments** |
| Local Economy | Stable | Located in an established neighborhood with homes in average to good condition. Market value steadily increases with fewer REO and shortsale transactions. |
| Sales Prices in this Neighborhood | Low: $1,900,000 High: $2,300,000 | |
| Market for this type of property | Increased 4 % in the past 6 months. | |
| Normal Marketing Days | <30 | |

## Current Listings

| | Subject | Listing 1 | Listing 2 | Listing 3 * |
|---|---|---|---|---|
| Street Address | 1226 Phyllis Ave | 882 Harpster Drive | 372 Loreto Street | 1155 W Mc Kinley Avenue |
| City, State | Mountain View, CA | Mountain View, CA | Mountain View, CA | Sunnyvale, CA |
| Zip Code | 94040 | 94040 | 94041 | 94086 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 0.61 [1] | 0.79 [1] | 1.41 [1] |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | $ | $2,345,000 | $2,188,000 | $1,998,000 |
| List Price $ | -- | $2,250,000 | $2,188,000 | $1,998,000 |
| Original List Date | | 09/16/2021 | 10/18/2021 | 10/14/2021 |
| DOM · Cumulative DOM | -- · -- | 27 · 56 | 8 · 24 | 16 · 28 |
| Age (# of years) | 66 | 71 | 95 | 67 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 1 Story Bungalow | 1 Story Ranch | 1 Story Bungalow | 1 Story Ranch |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 1,196 | 1,370 | 1,225 | 1,214 |
| Bdrm · Bths · ½ Bths | 3 · 2 | 3 · 2 | 2 · 2 | 3 · 2 |
| Total Room # | 5 | 5 | 4 | 5 |
| Garage (Style/Stalls) | Attached 2 Car(s) | Attached 1 Car | Detached 1 Car | Attached 2 Car(s) |
| Basement (Yes/No) | No | No | Yes | No |
| Basement (% Fin) | 0% | 0% | 50% | 0% |
| Basement Sq. Ft. | -- | -- | 613 | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.15 acres | 0.12 acres | 0.12 acres | 0.14 acres |
| Other | Frpl, Patio, Porch | Frpl, Patio | Frpl, Patio, Guest house | Frpl, Patio, Guest house, Shed |

* Listing 3 is the most comparable listing to the subject.
[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

**Listing Comments** Why the comparable listing is superior or inferior to the subject.
**Listing 1** List 1 has bigger living space. Similar beds, baths, lot size, age, condition, and proximity.
**Listing 2** List 2 has 1 fewer bed, and 29 years younger. Similar baths, living space, lot size, condition, and proximity.
**Listing 3** List 3 has similar beds, baths, living space, lot size, age, and condition.

## Recent Sales

| | Subject | Sold 1 * | Sold 2 | Sold 3 |
|---|---|---|---|---|
| Street Address | 1226 Phyllis Ave | 1626 Tyler Park Way | 1104 Phyllis Avenue | 1602 Tyler Park Way |
| City, State | Mountain View, CA | Mountain View, CA | Mountain View, CA | Mountain View, CA |
| Zip Code | 94040 | 94040 | 94040 | 94040 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 0.30 [1] | 0.17 [1] | 0.29 [1] |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | -- | $1,999,999 | $1,995,000 | $1,998,000 |
| List Price $ | -- | $1,999,999 | $1,995,000 | $1,998,000 |
| Sale Price $ | -- | $2,150,000 | $2,000,000 | $2,000,000 |
| Type of Financing | -- | Cash Sale | Conventional | Conventional |
| Date of Sale | -- | 07/02/2021 | 06/10/2021 | 04/19/2021 |
| DOM · Cumulative DOM | -- · -- | 8 · 16 | 10 · 40 | 22 · 49 |
| Age (# of years) | 66 | 66 | 65 | 66 |
| Condition | Average | Average | Good | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 1 Story Bungalow | 1 Story Bungalow | 1 Story Ranch | 1 Story Bungalow |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 1,196 | 1,196 | 1,305 | 1,196 |
| Bdrm · Bths · ½ Bths | 3 · 2 | 3 · 2 | 3 · 2 | 3 · 2 |
| Total Room # | 5 | 5 | 6 | 5 |
| Garage (Style/Stalls) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) |
| Basement (Yes/No) | No | No | No | No |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | | -- | -- | -- |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.15 acres | 0.15 acres | 0.14 acres | 0.14 acres |
| Other | Frpl, Patio, Porch | Frpl, Patio | Frpl, Patio | Frpl, Patio |
| Net Adjustment | -- | +$500 | -$52,661 | +$10,500 |
| Adjusted Price | -- | $2,150,500 | $1,947,339 | $2,010,500 |

* Sold 1 is the most comparable sale to the subject.
[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

**Sold 1** Sold 1 has porch+500. Similar beds, baths, living space, lot size, age, condition, and proximity.

**Sold 2** Sold 2 has bigger living space-3161, superior condition-50000, and porch+500. Similar beds, baths, lot size, age, and proximity.

**Sold 3** Sold3 has sold date+10000, and porch+500. Similar beds, baths, living space, lot size, age, condition, and proximity.

Client(s): Hamilton Ridge Asset Management, Inc.    Property ID: 31572301    Effective: 11/09/2021    Page: 3 of 14

## Subject Sales & Listing History

| | | | |
|---|---|---|---|
| **Current Listing Status** | Not Currently Listed | **Listing History Comments** | |
| **Listing Agency/Firm** | | N/A | |
| **Listing Agent Name** | | | |
| **Listing Agent Phone** | | | |
| **# of Removed Listings in Previous 12 Months** | 0 | | |
| **# of Sales in Previous 12 Months** | 0 | | |

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $2,077,000 | $2,077,000 |
| **Sales Price** | $2,036,000 | $2,036,000 |

**Comments Regarding Pricing Strategy**

11/11/21--1727 Cherrytree Ln is 0.79 mile away and 944 Tulane Dr is 0.7 mile away further than any sold comp used in the report. 1538 Nilda Ave is in good condition and also not a good comp since Sold2 in the report which is on the same street as the subject with all similar characteristics and superior condition was sold recently for only 2 million. Potential buyers are move-up buyers. There's a shortage of comparables with similar living space within immediate area so expansion of sold date, search distance, age, GLA and/or lot size is necessary and pending date exceeding 120 days is needed for sold comps. Since subject requires no repair, listing it as-is will save the pre-marketing time and limit total amount of capital invested.

Client(s): Hamilton Ridge Asset Management, Inc    Property ID: 31572301    Effective: 11/09/2021    Page: 4 of 14

## Clear Capital Quality Assurance Comments Addendum

**Reviewer's Notes**

There is a 27% decrease since the prior completed 6/2021. The prior was an interior and the subject was reflected in good condition, and the current is an exterior and reflected in average condition, causing the variance.

The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported.

Client(s): Hamilton Ridge Asset Management, Inc.　Property ID: 31572301　Effective: 11/09/2021　Page: 5 of 14

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
As-Is Value

## Subject Photos



Front



Address Verification



Side



Side



Street



Street

Client(s): Hamilton Ridge Asset Management, Inc.    Property ID: 31572301    Effective: 11/09/2021    Page: 6 of 14

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
◇ As-Is Value

## Subject Photos



Other

# DRIVE-BY BPO
by ClearCapital

## Listing Photos



882 Harpster Drive
Mountain View, CA 94040



Front

372 Loreto Street
Mountain View, CA 94041



Front

1155 W Mc Kinley Avenue
Sunnyvale, CA 94086



Front

## Sales Photos

 1626 Tyler Park Way
Mountain View, CA 94040



Front

 1104 Phyllis Avenue
Mountain View, CA 94040



Front

 1602 Tyler Park Way
Mountain View, CA 94040



Front

Client(s): Hamilton Ridge Asset Management, Inc.    Property ID: 31572301    Effective: 11/09/2021    Page: 9 of 14

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
⬨ As-Is Value

## ClearMaps Addendum

**Address** ☆ 1226 Phyllis Ave, Mountain View, CA 94040
**Loan Number** TS85418    **Suggested List** $2,077,000    **Suggested Repaired** $2,077,000    **Sale** $2,036,000



| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ★ | Subject | 1226 Phyllis Ave, Mountain View, CA 94040 | -- | Parcel Match |
| L1 | Listing 1 | 882 Harpster Drive, Mountain View, CA 94040 | 0.61 Miles ¹ | Parcel Match |
| L2 | Listing 2 | 372 Loreto Street, Mountain View, CA 94041 | 0.79 Miles ¹ | Parcel Match |
| L3 | Listing 3 | 1155 W Mc Kinley Avenue, Sunnyvale, CA 94086 | 1.41 Miles ¹ | Parcel Match |
| S1 | Sold 1 | 1626 Tyler Park Way, Mountain View, CA 94040 | 0.30 Miles ¹ | Parcel Match |
| S2 | Sold 2 | 1104 Phyllis Avenue, Mountain View, CA 94040 | 0.17 Miles ¹ | Parcel Match |
| S3 | Sold 3 | 1602 Tyler Park Way, Mountain View, CA 94040 | 0.29 Miles ¹ | Parcel Match |

¹ The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
² The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

---

## Addendum: Report Purpose

### Market Approach and Market Time

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

Definitions:

| | |
|---|---|
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts. |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

Case: 21-51255   Doc# 59-2   Filed: 11/18/21   Entered: 11/18/21 11:03:12   Page 34 of 37

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
⊕ As-Is Value

---

Addendum: Report Purpose - cont.

## Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
*** Please Note: This is a RUSH assignment. Do not accept if you cannot meet the current due date and time. Please reference the set terms and contact Clear Capital at 530.582.5011 if you require any changes. Thanks! ***

Instructions last updated: 8/16/2017

Purpose:
Please determine a Fair market price for this property at which it would sell in a typical marketing time for the area.
Comparable Requirements:

If any of the following comparable criteria cannot be met, the commentary is required as to why you expanded your search, and what the effect on price will be.

1. Use comps from the same neighborhood, block or subdivision.
2. Use REO comparables only if the market is driven by REOs and they are comparable in characteristics and condition.
3. Use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.
Property Condition Definitions:

1. Poor: Uninhabitable or severely damaged from fire, flood, vandalism or mold
2. Fair: Repairs needed, may not be eligible for all forms of financing, below the neighborhood average
3. Average: Minor cosmetic or no repairs needed; typical for the neighborhood, move-in ready but no significant updates or renovations
4. Good: Above average, move in ready, no repairs necessary and has recent and significant updates and/or renovations (or, for customers that do not provide for 'Average', any move-in ready property)
5. Excellent: Newer construction (1-5 years) or high end luxury
Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as neighborhood desirability, amenities, parks, schools, commercial or industrial influences, REO activity, traffic, board-up-homes, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.
7. Please do not accept if you or your office has completed a report on this property in the last month, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.

Due to the importance of an independent opinion of price, please do not discuss your price with anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.
Photo Instructions:

In the case of camera malfunction and/ or if an inspector fails to inspect the property, it is prohibited to request another individual for photos.

1.

Client(s): Hamilton Ridge Asset Management, Inc.        Property ID: 31572301        Effective: 11/09/2021        Page: 12 of 14

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
As-Is Value

## Report Instructions - cont.

Photos should be clear of car window glare, door frames, and mirrors.
- Current and original photos of all sides of the subject (back of the subject in available)
- Damages (upload enough photos to support your repair cost estimates)
- Please provide close up photos of the subjects roof
- Two street scene photos, one looking each direction down the street
- One view photo looking across the street from the subject
- One address verification photo
- MLS photos of all (3) sold comparables, if available
- MLS photos of all (3) listing comparables, if available

# DRIVE-BY BPO
by ClearCapital

**1226 PHYLLIS AVE**
MOUNTAIN VIEW, CA 94040

**TS85418**
Loan Number

**$2,036,000**
⊙ As-Is Value

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Sirima Chantalakwong | **Company/Brokerage** | Insync Realty, Inc. |
| **License No** | 01460948 | **Address** | 1281 Laveille Court San Jose CA 95131 |
| **License Expiration** | 06/15/2022 | **License State** | CA |
| **Phone** | 4084393525 | **Email** | photo4work@p5site.com |
| **Broker Distance to Subject** | 10.39 miles | **Date Signed** | 11/11/2021 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

### Disclaimer

**This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**