MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
ELVINA ROFAEL (SBN 333919)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
280 South First St., Suite 268
San Jose, CA 95113
Telephone: (408) 535-5525
Facsimile: (408) 535-5532
Email: Elvina.Rofael@usdoj.gov

Attorneys for TRACY HOPE DAVIS
United States Trustee for Region 17

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No: 21-51255-MEH |
| DUTCHINTS DEVELOPMENT, LLC, | Chapter 7 |
| Debtor. | |

## UNITED STATES TRUSTEE'S REPORT OF <u>DISPUTED CHAPTER 7 TRUSTEE ELECTION</u>

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF THE DISPUTED ELECTION ......................................................4

BACKGROUND ..............................................................................................5

   A. General ..............................................................................................5

   B. The Debtor's Schedules…………………………………………6

   C. Section 341(a) Meeting Called & Relevant Appearances ....................6

   D. The Election.........................................................................................9

   E. Objections............................................................................................11

I.    RELEVANT AUTHORITIES…………………………………...............12

II.   ANALYSIS, DISCUSSION AND SUMMARY OF ALTERNATIVE OUTCOMES…….15

   A. Did a Quorum Request an Election?......................................................16

     i.  Calculation of the Universe of Claims and the 20 Percent Requirement .. ....................17

     ii.  Election Scenarios…………………………………………...18

       1. Scenario #1…………………………………….…………….....19

         a. Scenario #1A…………………………….…………………19

         b. Scenario #1B……………………….……………………20

       2. Scenario #2…………………………………………….........21

         a. Scenario #2A…………………………………………22

         b. Scenario #2B…………………………………………22

       3. Scenario #3…………………………………………….........23

         a. Scenario #3A…………………………………………24

         b. Scenario #3B…………………………………………25

   B. Continued Meeting of Creditors…………………………………….25

III.   CONCLUSION…………………………………………………...…..25

# **TABLE OF AUTHORITIES**

**Cases**                                                                                  **Page(s)**

*Am. Eagle Mfg., Inc. v. N.C. Mach., Inc. (In re Am. Eagle Mfg., Inc.)*,
   231 B.R. 320 (B.A.P. 9th Cir. 1999).................................................................. 18

*In re Barkany*,
   542 B.R. 662 (Bankr. E.D.N.Y. 2015)........................................................... 14,15

*In re Blanchard Mgmt. Corp.*,
   10 B.R. 186 (Bankr. S.D.N.Y. 1981).............................................................. 13,15

*In re Lake State Commodities, Inc.*,
   173 B.R. 642 (Bankr. N.D. Ill. 1994) ............................................................. 18,21

*Waldschmidt v. Siva Truck Leasing, Inc. (In re Lang Cartage Corp.)*,
   20 B.R. 534 (Bankr. E.D. Wis. 1982) ................................................................. 13

*In re Magallanes*,
   96 B.R. 253 (9th Cir. BAP 1988)......................................................................... 19

*In re Michelex*,
   195 B.R. 993 (Bankr. W.D. Mich. 1996)..................................................... *passim*

*In re Qmect Inc.*,
   2007 WL 219942 (Bankr. N.D. Cal. 2007)................................................... 13,17

*In re San Diego Symphony Orchestra Assn.*,
   201 B.R. 978, (Bankr. S.D. Cal. 1996) ............................................................... 21

*In re Sforza*,
   174 B.R. 656 (Bankr. D. Mass 1994) ............................................................. 14,17

*In re Valentine*,
   296 B.R. 384 (Bankr. E.D. Va. 2001) ................................................................. 17

**Statutes**

11 U.S.C. § 101....................................................................................................... 5
11 U.S.C. § 341.................................................................................... 6,12,18,23
11 U.S.C. § 502..................................................................................................... 14
11 U.S.C. § 702............................................................................................ *passim*
11 U.S.C. § 702(a) ....................................................................................... *passim*
11 U.S.C. § 702(b) ............................................................................ 16,20,22,24
11 U.S.C. § 702(d) ............................................................................................... 16
11 U.S.C. § 1532..................................................................................................... 5
28 U.S.C. § 586(a)(3)....................................................................................... 4,25

**Rules**

Fed. R. Evid. 201 ................................................................................................... 5
Fed. R. Evid. 801(d).............................................................................................. 5
Fed. R. Bankr. P. 2003 ...................................................................................... 4,11
Fed. R. Bankr. P. 2003(b) .......................................................................... *passim*
Fed. R. Bankr. P. 2003(d) .......................................................................... *passim*

**Other Authorities**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 102 (1977) ..................................... 16

Tracy Hope Davis, the United States Trustee for Region 17 (the "U.S. Trustee"), by and through her undersigned counsel, hereby files this Report of Disputed Chapter 7 Trustee Election (the "Report"), under 28 U.S.C. § 586(a)(3), 11 U.S.C. § 702, and Fed. R. Bankr. P. 2003, with respect to a trustee election (the "Chapter 7 Trustee Election") conducted on March 25, 2022, at 12:00 p.m., in the above-captioned case of Dutchints Development, LLC (the "Debtor").

In support of this Report, the U.S. Trustee requests that the Court consider the Declaration of Kristin McAbee ("McAbee Declaration") filed concurrently herewith.

## SUMMARY OF THE DISPUTED ELECTION

This is a disputed election. For the reasons discussed more fully below, it is unclear whether the election was valid within the meaning of Section 702 of the Bankruptcy Code. In order for a determination to be made regarding whether the election was valid, the following threshold issues require adjudication:

a. Do the creditors who requested the election meet the eligibility requirements under 11 U.S.C. § 702(a)(2) and Fed. R. Bankr. P. 2003(b)(3)?

b. If the election was properly requested and the creditors who requested the election met the eligibility requirements, did qualified creditors holding at least 20 percent in amount of the claims specified in Section 702(a) actually vote in the election?

c. Did any candidate receive the votes of creditors holding a majority in amount of the claims held by qualified creditors that voted?

d. Has the Debtor raised any meritorious objections to the election?

In accordance with Fed. R. Bankr. P. 2003(d)(2), Kari Bowyer, P.O. Box 700096 San Jose, CA 95170, will serve as the interim trustee pending resolution of this disputed election. Section II below and the accompanying McAbee Declaration provide analyses of these issues and scenarios of voting outcomes. Under Rule 2003(d)(2), unless a motion for resolution of the issues underlying the

4

dispute is timely filed within fourteen (14) days of the filing of this Report, Kari Bowyer will serve as the trustee in this case.

## BACKGROUND

### A. General

The Debtor commenced this case by filing a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") on September 29, 2021 (the "Petition Date").[1] *See* ECF No. 1.

The Debtor is a real estate development company, focused on the Bay Area, particularly Los Altos and Mountain View. *See* ECF Docket generally. Since the Petition Date, the Court has: (1) rejected the lease for real property located at 10100 Bubb Road, Cupertino, California 95014 and ordered the Debtor to surrender the property to Verse Two Properties, LLC (ECF No. 52); (2) granted relief from the automatic stay in connection with real property located at 5150 El Camino Real, Los Altos, California 94022 (ECF No. 69); and (3) granted relief from the automatic stay in connection with the Debtor's 10% interest in real property located at 1226 Phyllis Avenue, Mountain View, California 94040 (ECF No. 72).

On November 22, 2021, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee"). ECF No. 63. On December 20, 2021, the U.S. Trustee amended the Committee appointment to add additional members. ECF No. 83. The Committee retained Shulman Bastian Friedman & Bui LLP as counsel. ECF Nos. 78 and 104.

On January 12, 2022, the U.S. Trustee filed a motion to appoint a chapter 11 trustee, or in the alternative, to convert the case to chapter 7 (the "U.S. Trustee's Motion"). ECF No. 95. The U.S. Trustee's Motion was not opposed. *See* ECF Docket generally. On February 11, 2022, following a

---

[1] The U.S. Trustee respectfully requests that the Court take judicial notice under Fed. R. Evid. 201, as made applicable by Fed. R. Bankr. P. 9017, of the Debtor's Petition, Schedules, Statement of Financial Affairs, and other documents filed therewith, and any amendments thereto which are in the Court's file in this case. The information contained in these documents, signed under penalty of perjury by Debtor's representatives, are admissions of the Debtor pursuant to Fed. R. Evid. 801(d).

Case: 21-51255    Doc# 159    Filed: 04/11/22    Entered: 04/11/22 16:24:12    Page 5 of 26

hearing, the Court granted the U.S. Trustee's Motion and entered an order converting the case to chapter 7. ECF No. 127.

Upon conversion of the case to chapter 7, Kari Bowyer was duly appointed as the interim chapter 7 trustee.[2] *Id.*

### B. The Debtor's Schedules

The Debtor filed its schedules on October 28, 2021. ECF No. 39. Before conversion to chapter 7, the Debtor filed amended schedules, including Schedule E/F (the "First Amended Schedules"). ECF No. 66. On March 25, 2022, following conversion, the Debtor amended its Schedule E/F a second time (the "Second Amended Schedules"). ECF No. 147. The Second Amended Schedules include twenty-four claims listed as either contingent, unliquidated, or disputed. *Id.* These claims were not previously disclosed on the Debtor's Schedules. *Id.*

### C. Section 341(a) Meeting Called & Relevant Appearances

The 11 U.S.C. § 341 meeting of creditors in the Debtor's chapter 7 case was scheduled for March 10, 2022 and was adjourned to March 25, 2022. *See* ECF Docket generally.

On March 25, 2022, at approximately 12:00 p.m., the duly appointed interim trustee, Kari Bowyer, called the meeting of creditors, at which the Chapter 7 Trustee Election was requested. U.S. Trustee Trial Attorney Elvina Rofael presided over the telephonic meeting and conducted the Chapter 7 Trustee Election pursuant to 11 U.S.C. § 702 and Fed. R. Bankr. P. 2003(b). The following individuals were present at the meeting during the election:

1) Elvina Rofael, Trial Attorney with the Office of the U.S. Trustee;

2) Kristin McAbee, Bankruptcy Analyst with the Office of the U.S. Trustee;

---

[2] On February 9, 2022, seller and third parties in interest, John H. Bellicitti, as Trustee; Mary F. Driggs, as Trustee; Robert J. Bellicitti, as Trustee; and Harry L. Bellicitti, Jr., as Trustee (the "Bellicitti Trustees") filed a motion for a "comfort order" affirming that the automatic stay does not bar them from exercising rights and remedies under the purchase agreement entered into on October 18, 2018 between the Bellicitti Trustees and the Debtor (the "Bellicitti Trustees's Motion for Relief from Stay"). ECF No. 121. On April 6, 2022, Interim Trustee Bowyer filed an opposition to the Bellicitti Trustees's Motion for Relief from Stay, seeking relief that will allow the estate to preserve its rights and remedies to the extent they exist. ECF No. 157. On April 7, 2022, the Court granted the Bellicitti Trustees's Motion for Relief from Stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2). *See* ECF Docket generally.

Case: 21-51255    Doc# 159    Filed: 04/11/22    Entered: 04/11/22 16:24:12    Page 6 of 26

3) Amber K. Gill of Macdonald Fernandez LLP, counsel for the Debtor;

4) Vahe Tashjian, the Debtor's responsible individual;

5) Kari Bowyer, interim chapter 7 trustee;

6) Jack Praetzellis of Fox Rothschild, counsel for the interim chapter 7 trustee;

7) Michael Sweet of Fox Rothschild, counsel for the interim chapter 7 trustee;

8) Robert N. Burmeister of Robert N. Burmeister Law Offices, on behalf of Richard Tod Spieker and Catherine R. Spieker;

9) Wendy W. Smith of Binder & Malter LLP, on behalf of Thomas Paré, Paul Harms, Johanna Fogl, and Catherine Hung;

10) Thomas Paré;

11) Catherine Hung;

12) Johanna Fogl;

13) Paul Harms;

14) Badi Enayati;

15) Cathy Ettenger;

16) Sandra Clow;

17) Biao Chen;

18) Gary B. Laine;

19) James Payne on behalf of Verse Two Properties, LLC;

20) Kent Fritz;

21) Jiang Bian;

22) Wei Bi on behalf of Ruyi International, LLC;

23) Milton Grinberg, Trustee of the Grinberg Family Trust;

24) Meyer Grinberg;

25) Yuqing Zhou;

Case: 21-51255   Doc# 159   Filed: 04/11/22   Entered: 04/11/22 16:24:12   Page 7 of 26

26) Irene Jeanette Gary;

27) Hui Chen;

28) Janet Bocek on behalf of herself and APN4, LLC;

29) Chunqing Cheng;

30) Michael Leong;

31) Kim Parker;

32) Leonard Trejo;

33) Kathryn Morton;

34) Farshid Sabet on behalf of The Sabet Revocable Family Trust;

35) Yakira Heyman;

36) Rebecca Heyman;

37) David Heyman;[3]

38) Tod Fukushima and Lourdes Martinez;[4]

39) Susan B. Luce of Diemer & Wei, LLP on behalf of Rishi Bhargava and Shweta Goyal;

40) Monique D. Jewett-Brewster of Hopkins & Carley, counsel for the Bellicitti Trustee;

41) Grace Lee of Meylan Davitt Jain Arevian & Kim LLP, counsel for Interested Parties Eric Kutcher and Lauren Kutcher; and

42) Stephanie A. Pittaluga of Hall Griffin LLP, counsel for Orange Coast Title Company of Northern California.

The Chapter 7 Trustee Election was conducted using Ms. Bowyer's conference line listed on the Court's website and the election concluded at approximately 4:40 p.m.[5] A copy of the transcript

---

[3] David Heyman left the Chapter 7 Trustee Election early, citing a pre-existing conflict and time constraint.

[4] Tod Fukushima and Lourdes Martinez left the Chapter 7 Trustee Election early, citing a pre-existing conflict and time constraint.

[5] There was one issue with the technology during the Chapter 7 Trustee Election. Towards the end of the call, the conference line disconnected while Ms. Ettenger, Ms. Gill, and Ms. Luce were discussing the candidates. *See* Dutchints Election Transcript, **Exhibit A**, pp. 157-159 and McAbee Declaration ¶ 5. However, Ms. Ettenger, Ms. Gill, and Ms. Luce rejoined the conference call and continued with their discussion. *Id*. The Chapter 7 Trustee Election concluded shortly thereafter. *See* Dutchints Election Transcript, **Exhibit A**, generally.

8

for the Chapter 7 Trustee Election is attached as **Exhibit A** to the McAbee Declaration (the "Dutchints Election Transcript").

**D. The Election**

At the meeting, the following creditors voted for Richard Marshack, 870 Roosevelt, Irvine, CA 92620, to serve as the permanent chapter 7 trustee:

| Creditor | Proof of Claim Amount | Ballot Amount |
|---|---|---|
| APN4, LLC | $2,747,000 | $2,747,000 |
| Badi Enayati | $772,584 | $772,584 |
| Biao Chen | $205,000 | $205,000 |
| Catherine Hung | $545,286.46[6] | $545,286.46 |
| Cathy Ettenger | $500,741.09 | $500,741.09 |
| Chunqing Cheng | $212,500 | $212,500[7] |
| Jiang Bian | $531,500 | $531,500 |
| David Heyman | $100,000 | $100,000 |
| Gary B. Laine | $868,958 | $868,958 |
| Hui Chen | $170,000 | $170,000 |
| Irene Jeanette Gary | $222,765.46 | $222,765.46 |
| Irwin and Yakira Heyman | $1,119,328 | $1,119,328 |
| Janet Bocek | $1,492,037 | $1,492,037 |
| Johanna Fogl | POC #28: $300,000<br>POC #33: $425,000 | POC #28: $300,000[8]<br>POC #33: $425,000 |
| Kathryn Morton[9] | $100,000 | $100,000 |

---

[6] According to Ms. Hung, POC #34 was amended by POC #52. *See* Dutchints Election Transcript, **Exhibit A**, pp. 38-39.

[7] The Debtor verbally disputed this claim at the Chapter 7 Trustee Election. *See* Dutchints Election Transcript, **Exhibit A**, pp. 145-149. However, the claim is not listed on the Debtor's First or Second Amended Schedules. *See* ECF Nos. 66 and 147.

[8] The Debtor listed POC #28 as an unliquidated and disputed claim on the Second Amended Schedules. ECF No. 147. At the Chapter 7 Trustee Election, the Debtor verbally objected to POC #33. *See* Dutchints Election Transcript, **Exhibit A**, pp. 58-63. The Debtor did not verbally object to POC #28. *Id.*

[9] Ms. Morton returned a ballot without a nominee/candidate listed. *See* **Exhibit B**, p. 16. However, she appeared at the Chapter 7 Trustee Election and verbally voted for Mr. Marshack. *See* Dutchints Election Transcript, **Exhibit A**, pp. 101-107.

9

| | | |
|---|---|---|
| Kent Fritz | $171,870 | $171,870 |
| Kim Parker | $1,195,000 | $1,195,000 |
| Leonard Trejo and Shenghua Liu | $437,500 | $437,500 |
| Meyer Grinberg | $75,000 | $75,000 |
| Michael Leong | $382,025.78 | $382,025.78 |
| Milton Grinberg, Trustee of the Grinberg Family Trust | $200,000 | $200,000 |
| Paul Harms | $356,619.08 | $356,619[10] |
| Rebecca Heyman | $170,000 | $170,000 |
| Richard Tod Spieker and Catherine R. Spieker[11] | $2,838,745.60 | $2,838,745.60 |
| Ruyi International, LLC | $212,500 | *No ballot returned*[12] |
| Sandra Clow | $717,252 | $717,252 |
| Farshid Sabet (The Sabet Revocable Family Trust) | $2,396,203 | $2,396,203 |
| Tod Fukushima and Lourdes Martinez | $114,683.27 (unsecured amount) | $114,683.27 (unsecured amount) |
| Thomas Paré | POC #7: $118,333.33 POC #23: $662,664.77 | POC #7: $118,333.33 POC #23: $522,664.77[13] |
| Verse Two Properties, LLC | $3,533,897.84 | $3,533,897.84 |
| Yuqing Zhou | $196,250 | $196,250 |

Copies of the above-referenced ballots are attached as **Exhibit B** to the McAbee Declaration. Mr. Marshack was not present at the meeting.

The following creditor voted for Kari Bowyer, P.O. Box 700096 San Jose, CA 95170, the interim chapter 7 trustee:

---

[10] The Debtor did not object to Paul Harms's claim at the Chapter 7 Trustee Election. *See* Dutchints Election Transcript, **Exhibit A**, pp. 49-52.

[11] Counsel Robert Burmeister of Robert N. Burmeister Law Offices appeared on behalf of creditors Richard Tod Spieker and Catherine R. Spieker. The returned ballot was signed by Mr. and Ms. Spieker. *See* Dutchints Election Transcript, **Exhibit A**, pp. 131-136 and **Exhibit B**, p. 25.

[12] This Office reached out to Wei Bi to inquire about the outstanding ballot. *See* McAbee Declaration ¶ 6. As of the filing of this Report, Mr. Bi has not returned a ballot. *Id.*

[13] Mr. Paré's ballot lists the claim amount for POC #23 as $522,664.77. *See* **Exhibit B**, p. 29. POC #23 is listed as $662,664.77. *See* claims register generally. Where discrepancies arise, this Report used the amount listed on the proof of claim.

10

| Creditor | Proof of Claim Amount | Ballot Amount |
|---|---|---|
| Rishi Bhargava | $944,188 (unsecured amount) | $944,188[14] (unsecured amount) |

A copy of the above-referenced ballot is attached as **Exhibit C** to the McAbee Declaration.

### E. Objections

Several verbal objections were raised by the Debtor regarding the creditors' eligibility to request an election. *See* **Exhibit A**. Specifically, the Debtor largely disputed the claims as: (i) being owed by a separate entity that is not the Debtor or (ii) being litigated in state court, with counterclaims pending.[15] *See* Dutchints Election Transcript, **Exhibit A**, pp. 17-20; 25-28; 32; 36-37; 41-43; 45-46; 49; 56-58; 61-63; 66-68; 71-72; 77-80; 86; 90-92; 95-97; 100-101; 104-107; 112; 118-119; 122; 127-130; 134-136; 139-143; 144-145; 148; 151; and 164-165. According to the Debtor, several creditors invested into other entities, not the Debtor, such as 5150 ECR Group, LLC;[16] DD 570 S. Rengstorff Group, LLC; and Flip Fund, LLC. *Id*. Therefore, according to the Debtor, the debts may be owed by another entity. *Id*. The Debtor has not filed a formal objection to any of these claims. *See* ECF Docket generally. While the Debtor listed the claim held by Rishi Bhargava and Shweta Goyal as disputed on the Second Amended Schedules, the Debtor did not object to the election request, the proof of claim, or proxies submitted by these creditors. *See* Dutchints Election Transcript, **Exhibit A**, pp. 154-161. The Debtor also did not object to Paul Harms's election request, or Johanna Fogl's claim #28. *See* Dutchints Election Transcript, **Exhibit**

---

[14] The Debtor did not verbally object to this creditor's request to vote at the Chapter 7 Trustee Election, but the Debtor listed this creditor's claim as "disputed" on the Second Amended Schedules. ECF No. 147 *and see* Dutchints Election Transcript, **Exhibit A**, pp. 154-161. Additionally, counsel Susan Luce of Diemer & Wei, LLP was present at the Chapter 7 Trustee Election. The returned ballot was signed by Rishi Bhargava. *See* Dutchints Election Transcript, **Exhibit A**, pp. 154-161 and **Exhibit C**.

[15] Ms. Gill objected to Hui Chen; Verse Two Properties, LLC; and Sandra Clow's eligibility to request and vote in an election on the grounds that the Debtor did not receive advance notice of their intent to request an election; however, she did not provide any legal authorities in support of this objection. *See* Dutchints Election Transcript, **Exhibit A**, pp 118-119; 127-129; and 139-140. *See also* 11 U.S.C. § 702, and Fed. R. Bankr. P. 2003 (no mention that parties must provide advance notice to the debtor that they intend to request an election of a trustee).

[16] On September 14, 2021, 5150 ECR Group, LLC filed for bankruptcy in the Northern District of California. *See* ECF Docket generally, case no. 21-51196. On October 13, 2021, Judge Johnson dismissed the bankruptcy case with a 180-day bar to refiling. *Id* at ECF No. 46.

**A**, pp. 49-52 and 58-63. Further, the Debtor raised concerns over the nomination of Mr. Marshack after several creditors disclosed at the Chapter 7 Trustee Election that former counsel to the Committee, Leonard Shulman, had recommended Mr. Marshack as the chapter 7 trustee and circulated Mr. Marshack's resume to the Committee. *See e.g.*, Dutchints Election Transcript, **Exhibit A**, pp. 11-16; 49-52; 69-72; 112; and 155-161.

The Office of the United States Trustee presided over the meeting and informed parties in attendance that the U.S. Trustee would be filing a report of disputed election. *See* Dutchints Election Transcript, **Exhibit A**, pp. 167-168.

## I.     RELEVANT AUTHORITIES

Section 702 of the Code governs requests to elect a chapter 7 trustee.  It provides:

(a) A creditor may vote for a candidate for trustee only if such creditor –

> (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under sections 726(a)(2), 726(a)(3), 726(a)(4), 752(a),766(h), or 766(i) of this title;

> (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

> (3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under  subsection (a) of this section.

(c) A candidate for trustee is elected trustee if –

> (1) creditors holding at least 20 percent in amount of the claims of a
>
> kind specified in subsection (a)(1) of this section that are held by
>
> creditors that may vote under subsection (a) of this section vote; and
>
> (2) such candidate receives the votes of creditors holding a majority in
>
> amount of claims specified in subjection (a)(1) of this section that are
>
> held by creditors that vote for a trustee.

11 U.S.C. § 702. The purpose of Section 702 is to ensure that an election is creditor-driven, rather than attorney-driven. *In re Michelex*, 195 B.R. 993, 1003 (Bankr. W.D. Mich. 1996); *In re Blanchard Mgmt. Corp.*, 10 B.R. 186, 188 (Bankr. S.D.N.Y. 1981) ("[t]he procedure under the Code makes it more difficult for a trustee to be elected unless there is actual creditor interest in the case. The Code's 20 percent requirement discourages attorney control and attempts to revitalize the idea of true creditor control"). Materially adverse interests may include a setoff claim or substantial equity interest. *See Waldschmidt v. Siva Truck Leasing, Inc. (In re Lang Cartage Corp.)*, 20 B.R. 534, 536 (Bankr. E.D. Wis. 1982) (creditors ineligible after receiving a voidable preferential transfer); *In re Qmect, Inc.*, No. 04–41044, 2007 WL 219942, at *7-8 (Bankr. N.D. Cal. 2007) (holder of substantial equity interest in relation to holder's creditor interest may not vote).

In chapter 7 cases, Fed. R. Bankr. P. 2003(b)(3) governs the right to vote in a trustee election. Bankruptcy Rule 2003(b)(3) provides:

> (3) Right to Vote. In a chapter 7 liquidation case, a creditor is entitled
>
> to vote at a meeting if, at or before the meeting, the creditor has filed a
>
> proof of claim or a writing setting forth facts evidencing a right to vote
>
> pursuant to § 702(a) of the Code unless objection is made to the claim
>
> or the proof of claim is insufficient on its face. ….  In the event of an
>
> objection to the amount or allowability of a claim for the purpose of
>
> voting, unless the court orders otherwise, the United States trustee shall

> tabulate the votes for each alternative presented by the dispute and, if resolution of such dispute is necessary to determine the result of the election, the tabulation for each alternative shall be reported to the court.

Fed. R. Bankr. P. 2003(b)(3).

In chapter 7 cases, a creditor must file a proof of claim for the claim to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005. *See* Fed. R. Bankr. P. 3002(a). A claim for which a proof of claim is filed pursuant to Section 501 is deemed allowed, unless a creditor or party in interest objects to it. *See* 11 U.S.C. § 502. A properly filed and executed proof of claim constitutes *prima facie* evidence of that claim's validity. Fed. R. Bankr. P. 3001(f); 3003(b)(1). Section 702 requires for voting purposes that the claim be (*inter alia*) allowable, undisputed, fixed, liquidated, and unsecured. *See* 11 U.S.C. § 502(a). When a proof of claim is filed before or at a meeting of creditors, the proof of claim supersedes the schedules. *See Michelex*, 195 B.R. at 1008. A claim is disputed if the debtor has listed it as such on the bankruptcy schedules or if a party in interest has filed a written objection to the claim and that objection has not been overruled or the claim temporarily allowed. *Id.* However, because claims are often not filed or presented until the meeting of creditors, a written objection may not be necessary for the claim to be deemed disputed, provided an oral objection is made to the claim at the meeting or prior to voting. *See, e.g., In re Sforza*, 174 B.R. 656, 658 (Bankr. D. Mass 1994) (holding that debtor's attorney's statement at meeting of creditors that creditor's claim was subject to counterclaim in state court litigation rendered claim disputed for voting purposes, but that a frivolous objection cannot be allowed to deprive a creditor of the right to call for an election of a trustee).

Once the election is properly requested, Section 702(c)(1) requires that qualified creditors holding at least 20 percent in amount of the claims specified in Section 702(a) actually vote in the election for the election to be valid. *In re Barkany*, 542 B.R. 662, 682 (Bankr. E.D.N.Y. 2015);

14

*Michelex*, 195 B.R. at 998-99. If the election is valid, the candidate who receives a majority of the votes by amount of claim is elected trustee. *Barkany*, 542 B.R. at 682; *Blanchard Mgmt.*, 10 B.R. at 188.

Federal Rule of Bankruptcy Procedure 2003(d)(2) governs "disputed elections" and provides, in relevant part:

> (2) Disputed Election. If the election is disputed, the United States [T]rustee shall promptly file a report stating that the election is disputed, informing the court of the nature of the dispute, and listing the name and address of any candidate elected under any alternative presented by the dispute …. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. Unless a motion for resolution of the dispute is filed no later than 14 days after the United States trustee files a report of disputed election, the interim trustee shall serve as trustee in the case.

Fed. R. Bankr. P. 2003(d)(2).

## II. ANALYSIS, DISCUSSION AND SUMMARY OF ALTERNATIVE OUTCOMES

To determine whether the election was properly requested, the Court must ascertain:

a. Do the creditors who requested the election meet the eligibility requirements under 11 U.S.C. § 702(a)(2) and Fed. R. Bankr. P. 2003(b)(3)?

b. If the election was properly requested and the creditors who requested the election met the eligibility requirements, did qualified creditors holding at least 20 percent in amount of the claims specified in Section 702(a) actually vote in the election?

c. Did any candidate receive the votes of creditors holding a majority in amount of the claims held by qualified creditors that voted?

d. Has the Debtor raised any meritorious objections to the election?

If the Court determines that the election was not properly requested, its analysis may stop and the interim trustee will become the permanent chapter 7 trustee. *See* 11 U.S.C. § 702(d); Fed. R. Bankr. P. 2003(d)(2). If, however, the Court determines that the election was properly requested, it must then resolve whether the creditors voting in the election were eligible to vote and whether the claims voted are at least 20 percent of all claims held by eligible creditors. *Id.* In calculating the universe of claims eligible to vote in a trustee election and the 20 percent threshold, the Court must determine the eligibility of creditors not only requesting the election, but also those creditors who voted or did not participate at all. *Id.* Next, the Court must determine whether any candidate won a majority in amount of the claims held by eligible voting creditors. *Id.* In addition, if the Debtor has raised any other objections to the election, the Court must determine whether such objections are valid.

## A. <u>Did a Quorum Request an Election?</u>

In order to determine if an election request is sufficient, the Court must first determine the universe of eligible claims (generally, allowable, undisputed, fixed, liquidated, unsecured claims). Next, the Court has to determine if the creditors requesting an election hold claims aggregating 20% of the amount of the universe of such claims. *See* 11 U.S.C. § 702(b). This interpretation also comports with the policy underlying the enactment of Section 702(b), namely, "to insure that a trustee is elected only in cases in which there is true creditor interest, and to discourage election of a trustee by attorneys for creditors." H.R. Rep. No. 595, 95th Cong., 1st Sess. 102 (1977).

Here, the Debtor verbally objected to all but three creditors' eligibility to request an election. *See* Dutchints Election Transcript, **Exhibit A**, pp. 49-52; 58-63; and 154-161. Specifically, the only election requests to which the Debtor did not verbally object to were those made by: (1) Paul Harms, claim #8; (2) Johanna Fogl, claim #28; and (3) Rishi Bhargava and Shweta Goyal, claim #32. *Id*. The Debtor verbally objected to the remaining creditors' requests for an election and/or listed those creditors' claims as either contingent, unliquidated, or disputed on the Second Amended Schedules.

16

*See* ECF No. 147. The issue of whether a quorum requested an election is dependent upon whether the Court sustains the Debtor's articulated objections to the creditors' eligibility to request an election. If the objected claims are not included in the universe of claims, the quorum requirement is not met and there is not a proper election request.

The Debtor has not filed a formal objection to any of these claims. *See* ECF Docket generally. However, some courts have found that no formal objection is required so long as the objection is not frivolous. *See, e.g., In re Sforza*, 174 B.R. at 658 (holding that debtor's attorney's statement at meeting of creditors that creditor's claim was subject to counterclaim in state court litigation rendered claim disputed for voting purposes, but a frivolous objection cannot be allowed to deprive a creditor of its right to call for an election of a trustee); *In re Valentine*, 296 B.R. 384, 386 (Bankr. E.D. Va. 2001) ("a written objection is not required because raising an oral objection merely preserve[s] determination of the issue of eligibility for the Court by way of the [U.S.] Trustee's report of the disputed election and a motion timely filed, both as provided in Rule 2003(d)") (quoting *In re Sforza*, 174 B.R. at 658). Further, Fed. R. Bankr. P. 2003(b)(3) provides that "a creditor is entitled to vote at a meeting if, *at or before the meeting*, the creditor has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face." Fed. R. Bankr. P. 2003(b)(3) (emphasis added). Similarly, courts have acknowledged that "even an oral objection made at the meeting of creditors is sufficient to place the claim in dispute as long as the court finds that the basis for the objection is not frivolous." *In re Qmect, Inc.*, 2007 WL219942, at *7-8 (citing *In re Valentine*, 296 B.R. at 386).

### i. Calculation of the Universe of Claims and the 20 Percent Requirement

To determine whether the eligible requesting creditor(s) meet the 20 percent threshold of Section 702(a), a universe of eligible creditors must be established. In determining whether the 20% requirement to elect a trustee has been met, courts have adopted a variety of methodologies. For

Case: 21-51255    Doc# 159    Filed: 04/11/22    Entered: 04/11/22 16:24:12    Page 17 of 26

example, one view is that the 20% is determined simply by reference to the proofs of claims actually on file as of the meeting. *In re Lake State Commodities, Inc*., 173 B.R. 642 (Bankr. N.D. Ill. 1994). The other view not only considers the filed claims, but also the debtor's schedules. *In re Michelex*, 195 B.R. at 993 (finding that "[w]hen a proper proof of claim is filed before, or at, the § 341 meeting, it supersedes the debtor's schedules. The universe of claims must be adjusted by the proofs of claims actually filed"); *see also Am. Eagle Mfg., Inc. v. N.C. Mach., Inc. (In re Am. Eagle Mfg., Inc.)*, 231 B.R. 320, 329-31 (B.A.P. 9th Cir. 1999) (affirming bankruptcy court's use of the *Michelex* approach in calculating the "universe of claims" for purposes of § 702 by using the debtor's schedules as modified by proofs of claim on file).

Here, the U.S. Trustee cannot determine if 20% of eligible voters called for the trustee election as required under § 702 because the Debtor objected to all but three creditors' election requests at the Chapter 7 Trustee Election. *See* Dutchints Election Transcript, **Exhibit A**, pp. 49-52; 58-63; and 154-161. Further, the Debtor noted on the record that the election was disputed on the grounds that most of the claims filed in the case were debts owed by another entity, not the Debtor, or were subject to ongoing litigation. *See e.g.*, Dutchints Election Transcript, **Exhibit A**, pp. 17-20; 25-28; 32; 36-37; 41-43; 45-46; 49; 56-58; 61-63; 66-68; 71-72; 77-80; 86; 90-92; 95-97; 100-101; 104-107; 112; 118-119; 122; 127-130; 134-136; 139-143; 144-145; 148; 151; and 164-165. These factual and legal issues must be adjudicated in order to determine whether the 20 percent threshold was met.

### ii. **Election Scenarios**

While not possible to present every conceivable scenario given the fact that the Court may reach different conclusions, below are a few possible scenarios based on the facts of this case and the information obtained from creditors in connection with this election to calculate the threshold percentages:

### 1. Scenario #1

Under the first scenario, reference is made solely to the Second Amended Schedules filed on March 25, 2022, pursuant to Fed. R. Bankr. P. 1009. Rule 1009(a).

Fed. R. Bankr. P. 1009(a) provides that "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." The 1983 Advisory Committee Note accompanying the rule explains that the rule demonstrates a "permissive approach" to amendments. *See also In re Magallanes*, 96 B.R. 253, 256 (9th Cir. BAP 1988) ("[a]mendments are and should be liberally allowed at any time absent a showing of bad faith or prejudice to third parties").

Under this scenario, the U.S. Trustee calculates the minimum threshold for requesting the election and voting in the election to be 20% of the amount of non-priority unsecured debts not held by insiders, as set forth only on Schedule F, and not including debts designated as contingent, unliquidated, or disputed. *See* McAbee Declaration ¶ 8 and **Exhibit D**, **Scenario #1**.

According to the U.S. Trustee's calculations, total qualifying scheduled unsecured claims aggregate $7,274,981.42. *Id.* Twenty percent of that amount equals $1,454,996.28. *Id.* Under this scenario, the only eligible claim was a $300,000 claim held by Paul Harms, which claim amount does *not* satisfy the 20% minimum threshold or the approximately $1,454,996.28 minimum dollar amount of eligible claims requesting the election and voting under Section 702. *Id.* Under scenario #1, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id.*

### a. Scenario #1A

Alternatively, if the Court determines that the Debtor's verbal objections are invalid, then it appears that all scheduled unsecured non-priority and non-insider claims were eligible to request the election and vote under Section 702. *See* McAbee Declaration ¶ 8 and **Exhibit D, Scenario #1A**. According to the U.S. Trustee's calculations, total qualifying scheduled unsecured claims under this

Case: 21-51255   Doc# 159   Filed: 04/11/22   Entered: 04/11/22 16:24:12   Page 19 of 26

scenario aggregate $27,795,270.47.[17] *Id*. Twenty percent of that amount equals approximately $5,559,054.09. *Id*. Under this scenario, all scheduled, unsecured, non-priority, and non-insider claims were deemed eligible to request and vote in the election.[18] *Id*. The aggregate claim amount for the voting creditors is $15,409,616.51, which *does* satisfy the $5,559,054.09 minimum threshold. *Id*. Under scenario #1A, the election would have been authorized under Section 702 and Richard Marshack would become the permanent chapter 7 trustee. *Id*.

### b. Scenario #1B

The Court could also determine that, although the Debtor listed the claims of Johanna Fogl, claim #28 and Rishi Bhargava and Shweta Goyal, claim #32 as disputed and unliquidated on the Second Amended Schedules, the Debtor did not verbally object to these claims. In fact, when asked whether anyone objected to these claims, the Debtor responded that it has no objection to the Fogl claim #28. *See* Dutchints Election Transcript, **Exhibit A**, pp. 58-63. In addition, the Debtor was silent and did not object to the Bhargava and Goyal claim #32. *See* Dutchints Election Transcript, **Exhibit A**, pp. 154-161.

According to the U.S. Trustee's calculations, total qualifying scheduled unsecured claims under this scenario aggregate $8,525,219.42. *See* McAbee Declaration ¶ 8 and **Exhibit D, Scenario #1B**. Twenty percent of that amount equals approximately $1,705,043.88. *Id*. Under this scenario, eligible claims were: (1) a $300,000 scheduled claim held by Paul Harms; (2) a $300,000 scheduled claim held by Johanna Fogl; and (3) a $950,238 scheduled claim held by Rishi Bhargava and Shweta Goyal. *Id*. The aggregate claim amount for these three claims is $1,550,238.00, which does *not* satisfy the 20% minimum threshold or the approximately $1,705,043.88 minimum dollar amount of

---

[17] The "voting creditors' claims" calculation of $27,795,270.47 includes ballots provided by David Heyman and Tod Fukushima/Lourdes Martinez. These votes are counted because, while these creditors attended the Chapter 7 Trustee Election and left early without verbally requesting an election and voting, they returned a ballot. Although the U.S. Trustee is including these claims under scenario #1A, under a strict reading of 11 U.S.C. § 702(b), the Court may determine that these votes should not be included. *See* McAbee Declaration ¶ 8 n.1.

[18] For purposes of Scenario #1A, votes by Chunqing Cheng and Johanna Fogl, claim #33 were not counted because these claims were not scheduled. However, the twenty percent minimum threshold is met even without considering these two claims. *See* McAbee Declaration ¶ 8 n.2.

Case: 21-51255    Doc# 159    Filed: 04/11/22    Entered: 04/11/22 16:24:12    Page 20 of 26

eligible claims requesting the election and voting under Section 702. *Id*. Under scenario #1B, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id*.

### 2. Scenario #2

The second scenario for determining whether the threshold has been met relies solely on the actual proof of claims filed as of the date of the Chapter 7 Trustee Election. *See In re Lake State Commodities, Inc.* 173 B.R. at 642 (in determining the amount that should be used to calculate the base of eligible claims, the court found that the "amount listed on the face of the proofs of claim should govern"). *But see In re San Diego Symphony Orchestra Assn*., 201 B.R. 978, (Bankr. S.D. Cal. 1996) (the court disagreed with *Lake State Commodities* finding that "[s]uch a result is contrary to the congressional purpose of ensuring meaningful creditor participation in the process because the fewer claims are filed, the smaller the universe, and the smaller number of votes actually cast would be necessary for an election"). Under this scenario, in calculating the universe of claims, the Court does not consider or rely on schedules to compute the base of eligible claims. *See In re Lake State Commodities, Inc.* 173 B.R. 642 at 648 (court finding that "although some courts may rely on the debtor's schedules to compute the base of eligible claims, there is nothing in Section 702 or the Bankruptcy Code to indicate that the schedules are more accurate than the proofs of claims"). *See also In re Michelex*, 195 B.R. at 993 ("[t]he opinion in *Lake States Commodities,* which adopts a restrictive universe of claims, completely disregards the legislative history which refers to "scheduled" claims."). In this case, the deadline for filing claims is April 22, 2022. *See* ECF Docket generally.

Under this scenario, the U.S. Trustee calculates the minimum threshold for requesting the election and voting in the election to be 20% of the amount of non-priority unsecured debt not held by insiders, as set forth only on the claims register, not including claims designated as contingent, unliquidated, or disputed. *See* McAbee Declaration ¶ 8 and **Exhibit D**, **Scenario #2**.

Case: 21-51255    Doc# 159    Filed: 04/11/22    Entered: 04/11/22 16:24:12    Page 21 of 26

Excluding priority, secured, or duplicated claims, the total claims filed aggregate $7,515,532.21. *Id*. Twenty percent of this amount was calculated to be $1,503,106.44. *Id*. Under this scenario, the only eligible claim was the $356,619.08 claim filed by Paul Harms, which claim amount does *not* satisfy the 20% minimum threshold or the approximately $1,503,106.44 minimum dollar amount of eligible claims requesting the election and voting under Section 702. *Id*. Under scenario #2, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id*.

### a. Scenario #2A

Alternatively, if the Court determines that the Debtor's verbal objections are invalid, then it appears that all claims as filed were eligible to request the election and vote under Section 702. *See* McAbee Declaration ¶ 8 and **Exhibit D**, **Scenario #2A**. According to the U.S. Trustee's calculations, excluding priority, secured, or duplicated claims, the total claims filed under this scenario aggregate $37,468,912.58.[19] *Id*. Twenty percent of this amount was calculated to be $7,493,782.52. *Id*. Under this scenario, all proof of claims as filed were deemed eligible to request and vote in the election to the extent they were not asserting priority, secured, or duplicated claim. *Id*. The aggregate claim amount for the voting creditors is $24,822,932.68, which *does* satisfy the $7,493,782.52 minimum threshold. *Id*. Under scenario #2A, the election would have been authorized under Section 702 and Richard Marshack would become the permanent chapter 7 trustee. *Id*.

### b. Scenario #2B

Again, the Court could also determine that, although the Debtor listed the claims of Johanna Fogl, claim #28 and Rishi Bhargava and Shweta Goyal, claim #32 as disputed and unliquidated on the Second Amended Schedules, the Debtor did not verbally object to these claims. In fact, when

---

[19] The "voting creditors' claims" calculation of $37,468,912.58 includes ballots provided by David Heyman and Tod Fukushima/Lourdes Martinez. These votes are counted because while these creditors attended the Chapter 7 Trustee Election and left early without verbally requesting an election and voting, they returned a ballot. Although the U.S. Trustee is including these claims under scenario #2A, under a strict reading of 11 U.S.C. § 702(b), the Court may determine that these votes should not be included. *See* McAbee Declaration ¶ 8 n.3.

Case: 21-51255     Doc# 159     Filed: 04/11/22     Entered: 04/11/22 16:24:12     Page 22 of 26

asked whether anyone objected to these claims, the responded that it has no objection to the Fogl claim #28. *See* Dutchints Election Transcript, **Exhibit A**, pp. 58-63. In addition, the Debtor was silent and did not object to the Bhargava and Goyal claim #32. *See* Dutchints Election Transcript, **Exhibit A**, pp. 154-161.

According to the U.S. Trustee's calculations, excluding priority, secured, or duplicated claims, the total claims filed under this scenario aggregate $8,759,720.21. *See* McAbee Declaration ¶ 8 and **Exhibit D, Scenario #2B**. Twenty percent of that amount equals approximately $1,751,944.04. *Id*. Under this scenario, eligible claims were: (1) a $356,619.08 proof of claim filed by Paul Harms; (2) a $300,000 proof of claim filed by Johanna Fogl; and (3) a $944,188 proof of claim (not including the priority amount) filed by Rishi Bhargava and Shweta Goyal. *Id*. The aggregate claim amount for these three claims is $1,600,807.08, which does *not* satisfy the 20% minimum threshold or the approximately $1,751,944.04 minimum dollar amount of eligible claims requesting the election and voting under Section 702. *Id*. Under scenario #2B, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id*.

### 3. Scenario #3

A third scenario for determining the universe of claims relies upon the Second Amended Schedules, with further adjustments made by the proofs of claims actually filed. *See In re Michelex*, 195 B.R. at 993 ("[w]hen a proper proof of claim is filed before, or at, the § 341 meeting, it supersedes the debtor's schedules. The universe of claims must be adjusted by the proofs of claims actually filed"). Under this scenario, the U.S. Trustee calculates the minimum threshold for requesting the election and voting in the election to be 20% of the amount of unsecured debts not held by insiders, as set forth on Schedule F, with further adjustments made by the proofs of claims actually filed, not including debts designated as contingent, unliquidated, or disputed, or were

disputed at the Chapter 7 Trustee Election. *See* McAbee Declaration ¶ 8 and **Exhibit D**, **Scenario #3.**

Using this analysis, the total qualifying claims aggregate $11,815,283.13. *Id.* Twenty percent of that amount was calculated to be $2,363,056.63. *Id.* Under this scenario, the only eligible claim was the $356,619.08 proof of claim filed by Paul Harms. *Id.* This amount does *not* satisfy the 20% minimum threshold that requires at least $2,363,056.63 of eligible claims requesting the election and voting under Section 702. *Id.* Under scenario #3, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id.*

### a. Scenario #3A

Alternatively, if the Court determines that the Debtor's verbal objections are invalid, then it appears that all claims were eligible to request the election and vote under Section 702. *See* McAbee Declaration ¶ 8 and **Exhibit D**, **Scenario #3A.** According to the U.S. Trustee's calculations, excluding priority, secured, or duplicated claims, the total of all qualifying claims filed under this scenario aggregate $41,768,663.50.[20] *Id.* Twenty percent of this amount was calculated to be $8,353,732.70. *Id.* Under this scenario, all claims as filed were deemed eligible to request and vote in the election. *Id.* The aggregate claim amount for the voting creditors is $24,822,932.68, which *does* satisfy the $8,353,732.70 minimum threshold. *Id.* Under scenario #3A, the election would have been authorized under Section 702 and Richard Marshack would become the permanent chapter 7 trustee. *Id.*

---

[20] The "voting creditors' claims" calculation of $41,768,663.50 includes ballots provided by David Heyman and Tod Fukushima/Lourdes Martinez. These votes are counted because while these creditors attended the Chapter 7 Trustee Election and left early without verbally requesting an election and voting, they returned a ballot. Although the U.S. Trustee is including these claims under scenario #3A, under a strict reading of 11 U.S.C. § 702(b), the Court may determine that these votes should not be included. *See* McAbee Declaration ¶ 8 n.4.

24

#### b. Scenario #3B

As stated above, the Court could also conclude under this scenario that, although the Debtor listed the claims of Johanna Fogl, claim #28 and Rishi Bhargava and Shweta Goyal, claim #32 as disputed and unliquidated on the Second Amended Schedules, the Debtor did not object to these claims. In fact, when asked whether anyone objected to these claims, the Debtor responded that it has no objection to the Fogl claim #28. *See* Dutchints Election Transcript, **Exhibit A**, pp. 58-63. In addition, the Debtor was silent and did not object to the Bhargava and Goyal claim #32. *See* Dutchints Election Transcript, **Exhibit A**, pp. 154-161.

According to the U.S. Trustee's calculations, excluding priority, secured, or duplicated claims, total qualifying claims aggregate $13,059,471.13. *See* McAbee Declaration ¶ 8 and **Exhibit D, Scenario #3B**. Twenty percent of that amount equals approximately $2,611,894.23. *Id*. Under this scenario, eligible claims were: (1) a $356,619.08 proof of claim filed by Paul Harms; (2) a $300,000 proof of claim filed by Johanna Fogl; and (3) a $944,188 proof of claim (not including the priority amount) filed by Rishi Bhargava and Shweta Goyal. *Id*. The aggregate claim amount for these three claims is $1,600,807.08, which does *not* satisfy the 20% minimum threshold or the approximately $2,611,894.23 minimum dollar amount of eligible claims requesting the election and voting under Section 702. *Id*. Under scenario #3B, the election would not have been authorized under Section 702 and the interim trustee, Kari Bowyer would become the permanent chapter 7 trustee. *Id*.

### B. Continued Meeting of Creditors

As stated on the record, the meeting was adjourned to April 26, 2022, at 1:00 p.m.

## III. CONCLUSION

For the foregoing reasons, the U.S. Trustee submits this Report of Disputed Election of Trustee as required by 28 U.S.C. § 586(a)(3) and Rule 2003(d) and has caused this report to be delivered to all parties who requested it. If a motion to resolve the election controversy set forth in

25

this report is not filed within the requisite time, Kari Bowyer shall serve as the permanent trustee in this case, pursuant to Rule 2003(d)(2).

Date: April 11, 2022

Respectfully Submitted,
TRACY HOPE DAVIS
United States Trustee for Region 17

By:     */s/ Elvina Rofael*
Elvina Rofael
Trial Attorney for the United States Trustee