1  MICHAEL A. SWEET (SBN 184345)
   msweet@foxrothschild.com
2  JACK PRAETZELLIS (SBN 267765)
   jpraetzellis@foxrothschild.com
3  **FOX ROTHSCHILD LLP**
   345 California Street, Suite 2200
4  San Francisco, California 94104
   Telephone:    (415) 364-5540
5  Facsimile:    (415) 391-4436

6  Attorneys for Chapter 7 Trustee Richard Marshack

7              UNITED STATES BANKRUPTCY COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10 In re:                              Case No. 21-51255-MEH

11 DUTCHINTS DEVELOPMENT LLC,          Chapter 7

12              Debtor.                **DECLARATION OF JOHN BELLICITTI**
                                       **IN SUPPORT OF MOTION TO APPROVE**
13                                     **COMPROMISE WITH OWNERS OF 18500**
                                       **AND 18520 MARSHALL LANE,**
14                                     **SARATOGA, CA**

15                                     [No Hearing Unless Timely Requested Under
                                       Bankruptcy Local Rule 9014-1(B)(3)]
16
                                       The Honorable M. Elaine Hammond,
17                                     United States Bankruptcy Judge

18

19 I, John Bellicitti, declare as follows:

20      1.      I am one of the owners of the Property[1]. I submit this declaration in support of the

21 concurrently filed Motion to Approve Compromise with Owners of 18500 and 18520 Marshall Lane,

22 Saratoga, CA (the "Motion"). Except as otherwise indicated herein, this Declaration is based on my

23 personal knowledge. I am over the age of 18 and mentally competent. If called upon to testify, I

24 would testify competently to the facts set forth in this Declaration.

25

26

27

28 ─────────────────────
   [1] Unless otherwise indicated, this Declaration adopts the definitions set forth in the Motion.

1   2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Agreement for Purchase

2   and Sale and Joint Escrow Instructions effective as of October 18, 2018 entered into between Owner

3   as Seller and Debtor as Buyer.

4   3.      Attached hereto as **Exhibit 2** is a true and correct copy of the First Amendment to and

5   Restatement of Agreement for Purchase and Sale and Joint Escrow Instructions entered into as of

6   December 4, 2018 between Owner as Seller and Debtor as Buyer.

7   4.      Attached hereto as **Exhibit 3** is a true and correct copy of Second Amendment to

8   Agreement for Purchase and Sale and Joint Escrow Instructions entered into as of December 14,

9   2018, between Owner as Seller and Debtor as Buyer.

10  5.      Attached hereto as **Exhibit 4** is a true and correct copy of the Third Amendment to

11  Agreement for Purchase and Sale and Joint Escrow Instructions entered into as of January 2019

12  between Owner as Seller and Debtor as Buyer.

13  6.      Attached hereto as **Exhibit 5** is a true and correct copy of the Fourth Amendment to

14  Agreement for Purchase and Sale and Joint Escrow Instructions entered into as of March 31, 2020

15  between Owner as Seller and Debtor as Buyer.

16  7.      Attached hereto as **Exhibit 6** is a true and correct copy of the Fifth Amendment to

17  Agreement for Purchase and Sale and Joint Escrow Instructions effective as of June 30, 2020

18  between Owner as Seller and Debtor as Buyer.

19  8.      Attached hereto as **Exhibit 7** is a true and correct copy of the Sixth Amendment to

20  and Restatement of Agreement for Purchase and Sale and Joint Escrow Instructions effective as of

21  November 2020 between Owner as Seller and Debtor as Buyer.

22  9.      Attached hereto as **Exhibit 8** is a true and correct copy of the Seventh Amendment to

23  Agreement for Purchase and Sale and Joint Escrow Instructions entered into as of March 22, 2021

24  between Owner as Seller and Debtor as Buyer.

25  ///

26  ///

27  ///

28  ///

1   ///

2   ///

3   ///

4          10.     On or about November 2, 2021, Owner, through counsel, demanded performance

5   under the PSA and for the sale to close by November 17, 2021.  The sale did not close on November

6   17, 2021.  Thereafter, and again through counsel, Owner demanded that Escrow pay the Deposit to

7   Owner.  Notwithstanding the Owner's demand Escrow has not paid the Deposit to Owner.

8          I declare under penalty of perjury under the laws of the United States that the foregoing is

9   true and correct and this declaration was executed on September 21, 2022.

                                                        John Bellicitti

# EXHIBIT 1

## AGREEMENT FOR PURCHASE AND SALE
## AND JOINT ESCROW INSTRUCTIONS

This Agreement for Purchase and Sale and Joint Escrow Instructions (the "Agreement") is made and entered into effective as of October 18, 2018, which is the date that this Agreement has been fully executed by all of those persons required to sign it (the "Effective Date"), by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti ("Robert"); and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. ("Harry") (collectively, "Seller"), and Dutchints Development LLC, a California limited liability company ("Buyer").  Buyer and Seller are collectively referred to herein as the "parties," and each of them is individually referred to herein as a "party."

### R E C I T A L S :

This Agreement is made with reference to the following facts:

A.      Seller is the owner of that certain agricultural real property located in the City of Saratoga, County of Santa Clara, State of California, more commonly known as 18500 and 18520 Marshall Lane, Saratoga, California, A.P.N. 397-02-110 and 397-02-111, and more particularly described in Exhibit "A" attached hereto and incorporated herein by reference (the "Property").

B.      Seller wishes to sell, and Buyer wishes to purchase, the Property, on the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

### A G R E E M E N T :

1.      Sale and Purchase.  In consideration of the Purchase Price and on the terms and conditions hereinafter set forth, Seller shall sell and convey to Buyer, and Buyer shall purchase from Seller, the Property, on the terms and subject to the conditions set forth in this Agreement.

Case: 21-51255    Doc# 153-1 Filed: 09/22/2022 Entered: 09/22/2022 15:10:18 Page 5 of 100

2.    Purchase Price. The purchase price of the Property is Sixteen Million and No/100ths Dollars ($16,000,000.00) (the "Purchase Price"), paid by Buyer as follows:

### 2.1    Deposits; Independent Consideration; Liquidated Damages.

2.1.1    Deposits. Immediately upon the Effective Date, Buyer and Seller shall cause an escrow (the "Escrow") to be opened with First American Title Insurance Company, 1737 North First Street, Suite 500, San Jose, CA 95112, Attention: Teresa Woest ("Escrow Holder"), for the purpose of facilitating the consummation of this Agreement. Buyer and Seller shall open the Escrow by delivering to Escrow Holder a fully executed original (or executed counterparts) of this Agreement, and Escrow Holder shall execute this Agreement where indicated and fill in the blank Effective Date on the first page of this Agreement; Buyer shall deposit into Escrow by wire transfer payable to Escrow Holder, within three (3) business days after the Effective Date, immediately available funds, in the amount of One Hundred Sixty Thousand and No/100 Dollars ($160,000.00) (the "First Deposit"). Upon Buyer's approval of the Condition of the Property on or before the Approval Date (as defined and provided in Section 4.1.1, below), then: (i) within two (2) business days after such approval is made, Buyer shall deposit into Escrow, by wire transfer payable to Escrow Holder, in immediately available funds, an additional Three Hundred Twenty Thousand and No/100 Dollars ($320,000.00) (the "Second Deposit"); and (ii) the First Deposit, together with all interest, and the Second Deposit shall immediately become nonrefundable and applicable to the Purchase Price. Buyer shall also deliver to Seller written verification of good funds for all amounts required for Close of Escrow within ten (10) days after the Approval Date. As used herein, the term "Deposit" shall refer to the First Deposit until the Second Deposit is made, at which time the term "Deposit" shall refer to both the First Deposit and the Second Deposit. Upon Buyer's written request, Escrow Holder shall immediately place such funds in an interest bearing account acceptable to Buyer, and all interest earned on such funds shall be for Buyer's benefit except as otherwise provided herein. The Deposit shall constitute liquidated damages as provided in Section 2.1.3 below. If Close of Escrow should occur, the Deposit and all interest thereon shall be applied to the Purchase Price. If Buyer is entitled to the return of the Deposit under the terms of this Agreement, the Deposit and all interest thereon shall be promptly returned to Buyer (and Seller shall instruct Escrow Holder to so return the Deposit to the extent required by Escrow Holder). At all times prior to the Approval Date, the Deposit and all interest thereon shall be refundable to Buyer. If Buyer fails timely to deliver the Deposit into Escrow, such failure may be treated by Seller as a material breach of this Agreement.

2.1.2    Independent Consideration. Buyer shall deposit into Escrow, concurrently with and in addition to the Deposit, the sum of One Hundred and No/100ths Dollars ($100.00) (the "Independent Consideration"). The Independent Consideration shall be nonrefundable to Buyer as independent consideration for Buyer's exclusive right to inspect and purchase the Property pursuant to this Agreement and for Seller's execution, delivery and performance of this Agreement. The Independent Consideration shall be disbursed to Seller immediately following Buyer's deposit thereof into Escrow. In all instances under this Agreement in which Buyer elects to terminate or is deemed to have terminated this Agreement and the Deposit is returned to Buyer, Seller shall retain the Independent Consideration when the Deposit is returned to Buyer. The Independent Consideration shall not be applicable to the

2

Purchase Price or treated as consideration given by Buyer for any purpose other than as expressly provided in this Section 2.1.3. The parties intend and agree that the amount of the Independent Consideration is sufficient consideration for the rights and options extended to Buyer hereunder and that it satisfies the threshold for sufficient consideration for such rights and options as articulated in *Steiner v. Thexton* (2010) 48 Cal.4th 411.

        2.1.3  Seller's Liquidated Damages.  SELLER AND BUYER HAVE DISCUSSED THE POSSIBLE CONSEQUENCES TO SELLER IF THE ESCROW FAILS TO CLOSE ON OR BEFORE THE CLOSING DATE (DEFINED IN SECTION 3.2 BELOW) DUE TO BUYER'S DEFAULT. THE DEPOSIT SHALL BE PAID TO AND RETAINED BY SELLER AS LIQUIDATED DAMAGES, AND NOT AS A PENALTY, IF BUYER BREACHES THIS AGREEMENT AND THIS TRANSACTION FAILS TO CLOSE BY REASON THEREOF (AND BUYER HEREBY IRREVOCABLY INSTRUCTS ESCROW HOLDER, UPON WRITTEN DEMAND BY SELLER DELIVERED TO BOTH ESCROW HOLDER AND BUYER, WITHOUT FURTHER AUTHORIZATION BY BUYER, TO DIRECTLY PAY SELLER THE DEPOSIT IN THE EVENT OF SUCH BREACH BY BUYER). BUYER AND SELLER ACKNOWLEDGE AND AGREE THAT SELLER'S DAMAGES IN THE EVENT OF SUCH BREACH BY BUYER WOULD BE EXTREMELY DIFFICULT OR IMPOSSIBLE TO DETERMINE, THAT THE AMOUNT OF THE DEPOSIT PLUS SUCH INTEREST AS MAY BE EARNED THEREON WHILE IN ESCROW IS THE PARTIES' BEST ESTIMATE OF THE DAMAGES SELLER WOULD SUFFER IN THE EVENT THIS TRANSACTION FAILS TO CLOSE BY REASON OF BUYER'S BREACH OF THIS AGREEMENT, AND THAT SUCH ESTIMATE IS REASONABLE UNDER THE CIRCUMSTANCES EXISTING ON THE EFFECTIVE DATE.  BUYER AND SELLER AGREE THAT SELLER'S RIGHT TO BE PAID AND RETAIN THE DEPOSIT AND SAID INTEREST ACCRUED THEREON SHALL BE THE SOLE REMEDY OF SELLER AT LAW OR IN EQUITY IN THE EVENT OF SUCH BREACH OF THIS AGREEMENT BY BUYER WHERE THIS TRANSACTION FAILS TO CLOSE; PROVIDED, HOWEVER, THAT THIS LIQUIDATED DAMAGES PROVISION SHALL NOT COVER AND SHALL NOT LIQUIDATE THE DAMAGES FOR ANY BREACH BY BUYER OF ANY OF THE COVENANTS SET FORTH IN SECTIONS 4.1.3 OR 13.16, BELOW. IT IS THE INTENTION OF THE PARTIES THAT THIS SECTION 2.1.3 COMPLY WITH THE PROVISIONS OF SECTIONS 1671(b) AND 1677 OF THE CIVIL CODE OF CALIFORNIA.

ACCEPTED AND AGREED TO:

_____SELLER     _____BUYER

        2.1.4  Buyer's Remedies; Memorandum.  In the event the Close of Escrow and the transactions contemplated hereby do not occur as herein provided by reason of any default by Seller, Buyer, as Buyer's sole and exclusive remedy, may elect by written notice to Seller, either of the following: (a) to terminate this Agreement, in which event (i) the Escrow Holder (and, to the extent that the Deposit, the One-Year Deposit or any Extension Deposit, as

3

those terms are defined in Section 3 below, has been released to Seller, Seller) shall return the Deposit (and, to the extent that any of the One-Year Deposit and any Extension Deposit has been deposited, the One-Year Deposit and any Extension Deposit) to Buyer, (ii) Seller shall pay the Cancellation Charges (as defined in Section 13.14 below), (iii) Seller shall within thirty (30) days after such termination reimburse Buyer for all of Buyer's actual, out of pocket costs paid to third parties in connection with this Agreement and/or the Property (including feasibility costs and costs for Buyer's Entitlement Activities); provided, however, that Seller's liability to Buyer for such costs shall not exceed Three Hundred Thousand Dollars ($300,000.00) ("Buyer's Costs"), and (iv) this Agreement shall automatically terminate and be of no further force or effect and neither party shall have any further rights or obligations hereunder, other than pursuant to any provision hereof that expressly survives the termination of this Agreement; or (b) to notify Seller that Buyer intends to seek specific performance of this Agreement, provided, however, that if Buyer elects to seek specific performance of this Agreement and specific performance is unavailable to Buyer as the result of Seller having sold the Property to a third party, Buyer shall be entitled to avail itself of the remedy set forth in sub-clause (a) above. Within three (3) business days after the execution of this Agreement, Buyer and Seller shall sign, acknowledge and deliver to Escrow Holder a Memorandum of Agreement in substantially the form attached hereto as <u>Exhibit "B"</u> (the "Memorandum"). As a condition precedent to the release of the first funds to be released to Seller under this Agreement, Escrow Holder shall record the Memorandum of Agreement in the Official Records of Santa Clara County, California. Concurrently with recording the Memorandum, Buyer shall sign, acknowledge and deliver to Escrow Holder a Termination of Memorandum in substantially the form attached hereto as <u>Exhibit "C"</u> (the "Termination of Memorandum"), together with instructions to the Escrow Holder authorizing recordation of the Termination of Memorandum upon a termination of this Agreement which is not the fault of Seller.

   2.2 <u>Payment of Purchase Price.</u> The balance of the Purchase Price after application of the Deposit and all other applicable funds shall be paid by Buyer to Seller through Escrow at Close of Escrow in cash or other immediately available U.S. funds.

   3. <u>Escrow, Close of Escrow, One-Year Deposit, and Extension Deposits.</u>

   3.1 <u>Escrow.</u> As used herein, the "Close of Escrow" shall mean the consummation of the purchase and sale transaction contemplated hereby as evidenced by the recordation of the Grant Deed (defined in Section 5.1 below) in the Official Records of Santa Clara County. Each party shall timely deposit with Escrow Holder such funds, documents and supplementary written escrow instructions as may be necessary to consummate this transaction in accordance with this Agreement. To the extent any such instructions are inconsistent with this Agreement, the terms of this Agreement shall control.

   3.2 <u>Closing Date.</u> Unless extended as provided in Section 3.4 below, the Close of Escrow shall take place on or before the date that is no more than four hundred fifty-five (455) days after the Effective Date (the "Closing Date"). Time is of the essence with respect to the Closing Date and all other provisions of this Agreement.

4

3.3    One-Year Deposit.  Provided that Buyer has not terminated this
Agreement before the Approval Date pursuant to Section 4.1.1 below, then on or before the date
that is one (1) year after the Effective Date, Buyer shall deposit into Escrow, by wire transfer
payable to Escrow Holder, in immediately available funds, an additional Two Hundred Fifty
Thousand and No/100 Dollars ($250,000.00) (the "One-Year Deposit").  The One-Year Deposit
shall be immediately nonrefundable, shall be released to Seller immediately following Buyer's
deposit thereof into Escrow, and shall be applied against the Purchase Price.  If Buyer fails
timely to deliver the One-Year Deposit into Escrow, such failure may be treated by Seller as a
material breach of this Agreement.

3.4    Extension of Closing Date.  In the event that either (1) Seller is unable to
relocate or otherwise remove the Barn from the Property (as defined and required under Section
13.24) by the Closing Date, or (2) Buyer is unable obtain the cancellation of the Williamson Act
Contracts (as defined and required under Section 13.26) by the Closing Date, Seller may extend
the Closing Date for an additional ninety (90) day period.  Seller may exercise its right to extend
the Closing Date by providing written notice to Buyer and Escrow Holder at least ten (10) days
before the Closing Date then in effect.  In the event that Buyer is unable to obtain Final Approval
of the Tentative Map (as both are defined in Section 13.23 below) by the Closing Date, Buyer
may extend the Closing Date for no more than two (2) additional ninety (90) day periods.  Buyer
may exercise each of its rights to extend the Closing Date by providing written notice to Seller
and Escrow Holder at least fifteen (15) days before the Closing Date then in effect (an
"Extension Notice").  Concurrently with delivery of each Extension Notice, and as a condition of
extending the Closing Date for ninety (90) additional days, Buyer shall deposit into Escrow by
wire transfer payable to Escrow Holder an additional One Hundred Thousand and No/100
Dollars ($100,000.00) (an "Extension Deposit").  In the event an Extension Deposit is not
delivered to Escrow Holder concurrently with delivery of the Extension Notice, the Extension
Notice shall be of no force and effect.  Each Extension Deposit shall be immediately
nonrefundable, shall be released to Seller immediately following Buyer's deposit thereof into
Escrow, and shall be applied against the Purchase Price.

4.    Contingencies.  Buyer's obligation to purchase the Property and Seller's
obligation to sell the Property are each conditioned upon the satisfaction or express written
waiver of the conditions precedent set forth in Sections 4.1, 4.2 and 4.3 below.

4.1    Inspection and Approval.

4.1.1    Approval of the Property.  Buyer shall have until the date that is
forty-five (45) days after the Effective Date (the "Approval Date") to approve or disapprove, the
following matters pertaining to the Property: (a) the physical condition of the Property including,
without limitation, the condition of the soil and groundwater at or beneath the Property; (b) the
financial condition of the Property including, without limitation, the feasibility, convertibility,
desirability and suitability of the Property for Buyer's intended use and purposes; (c) the legal
condition of the Property including, without limitation, the Property's compliance with any
applicable federal, state or local statutes, ordinances, codes, regulations,
decrees, orders, laws or other governmental requirements (collectively, "Applicable Laws"); (d)
the Property Related Documents (defined in Section 4.1.4 below) and all other Seller Materials

5

(defined in Section 10.2.2 below), if any; (e) the existence or non-existence, and availability or nonavailability, of any governmental, quasi-governmental or private approvals, permits, licenses, or other entitlements, if any, affecting the Property or the use or occupancy thereof, including, without limitation, approval for a Tentative Map pursuant to the Entitlement Activities; (f) the dimensions and specifications of the Property; (g) the zoning, building, and land use restrictions affecting the Property; (h) the condition of title to the Property; (i) the environmental condition of the Property, including, without limitation, the presence or absence of any Hazardous Materials (defined in Section 10.5 below) at or beneath the Property; and (j) all other matters that might affect the value or desirability of the Property or that Buyer deems relevant to its purchase of the Property (the matters described in clauses (a) through (j), above, are collectively referred to herein as the "Condition of the Property").

Buyer acknowledges that the period of time from the Effective Date until the Approval Date affords Buyer sufficient time to make all inspections, tests, analyses, evaluations and reviews Buyer deems necessary and prudent to fully evaluate the Condition of the Property as of the Approval Date. Buyer shall approve or disapprove the Condition of the Property as of the Approval Date by delivering written notice thereof to Seller on or before the Approval Date. If Buyer fails to deliver written notice of its disapproval of the Condition of the Property on or before the Approval Date, such failure shall be conclusively deemed to constitute Buyer's approval of the Condition of the Property. If Buyer disapproves the Condition of the Property in the manner provided in this Section 4.1.1, then this Agreement shall terminate without further action by the parties as provided in Section 13.14, below.

4.1.2    Limited Right of Entry.  Seller hereby grants Buyer the right to enter upon the Property from and after the Effective Date through the earlier to occur of the Close of Escrow or termination of this Agreement before the Close of Escrow, between the hours of 8:00 a.m. and 5:00 p.m., to conduct such inspections, tests, investigations, analyses and evaluations ("Tests") as Buyer deems necessary or prudent to evaluate the Condition of the Property, provided that Buyer shall give Seller at least two (2) business days' prior written notice before the entry of any person possessing mechanic's or materialmen's or other lien rights so as to allow Seller to post the appropriate notices of non-responsibility, and further provided that Buyer may perform Tests on the Property only upon the giving of at least two (2) business days' prior written notice to Seller. Any such requirement shall not delay Buyer's scheduled Tests, provided Buyer has provided Seller with at least two (2) business days' prior written notice of the date, time and location of the scheduled Tests. All Tests of the Property shall be done at Buyer's sole expense in a workmanlike manner in accordance with Applicable Laws. Notwithstanding anything to the contrary herein, Buyer may not perform any Test or carry out any activity at the Property that damages the Property or that is physically intrusive into the ground or any structure or other improvement at the Property, without the prior written consent of Seller, which Seller shall not unreasonably withhold, condition or delay. Buyer shall, at its sole expense, immediately repair any damage to the Property occurring as a result of or in any way connected with any entry by Buyer or any of Buyer's agents, servants, nominees, contractors, consultants, engineers, subcontractors, employees or other persons acting for or on behalf of Buyer (collectively, "Buyer's Representatives") upon the Property, and Buyer shall, at its sole expense, after entry by Buyer or any of Buyer's Representatives on the Property, restore

6

the Property to the same condition it was prior to Buyer's entry onto the Property and Buyer's Tests.

4.1.3 Indemnity; Insurance. Buyer shall indemnify, protect, defend and hold Seller, its employees, agents, successors, and assigns, and the Property free and harmless from and against any and all Claims (defined in Section 10.3.1.1 below) arising out of or in any way connected with any act or omission of Buyer or any of Buyer's Representatives on or about the Property occurring prior to the Close of Escrow. Prior to entering onto the Property, Buyer shall obtain, or cause its agents and representatives that will enter the Property in connection with the investigations pursuant to this Section 4.1 to obtain, (i) workers' compensation in an amount and as otherwise required by applicable law and (ii) general liability insurance (including umbrella or excess policies) in the amount of at least $2,000,000.00 per occurrence, and at least $2,000,000 in the aggregate. The general liability insurance shall name Seller as an additional insured. Upon request, Buyer shall provide Seller with proof of such insurance prior to commencing Buyer's physical inspections of the Property,

4.1.4 Property Related Documents. Within five (5) days after the Effective Date, Seller shall provide Buyer with (i) copies of all of those documents identified on Exhibit "D", attached hereto and incorporated herein by reference. In addition, at the request of Buyer and as soon as reasonably practicable after the Effective Date, Seller shall make available to Buyer for review and photocopying (at Buyer's sole expense), at the office of Seller, between the hours of 8:00 a.m. and 5:00 p.m. of regular working days any other documents, records and information related to the physical condition or operation and maintenance of the Property in Seller's possession. Those documents made available to Buyer at Seller's office, together with those documents provided by Seller as identified on Exhibit "D", are collectively referred to herein as the "Property Related Documents". Whether or not Buyer elects to review the Property Related Documents, so long as a copy of a Property Related Document has been delivered to Buyer, Buyer shall be deemed to have actual knowledge of all of the contents thereof and information contained therein. Buyer hereby agrees that it shall not remove any original Property Related Documents from Seller's office. On the termination of this Agreement for any reason whatsoever, Buyer shall immediately return all photocopies of any Property Related Documents to Seller. Except as set forth in Section 11 below, Seller makes no representation as to the completeness or accuracy of any of the Property Related Documents.

4.2 Review of Title. Following the Effective Date and as soon as the same is available from Escrow Holder, Seller shall cause the delivery to Buyer of Escrow Holder's standard ALTA preliminary title report for the Property (the "Preliminary Report"). No later than 5:00 p.m. Pacific Time on that date that is twenty (20) days after delivery of the Preliminary Report to Buyer, Buyer shall notify Seller in writing of any exception(s) to title shown on Schedule B to the Preliminary Report that Buyer disapproves. If Buyer fails to notify Seller of any disapproved exception(s) by such time, then Buyer shall be deemed to have approved each and every exception to title shown on the Preliminary Report. If Buyer does notify Seller of any disapproved exception(s) by such time as set forth above, then Seller shall immediately notify Buyer, in Seller's sole discretion, either (a) that Seller will remove the disapproved exception(s) prior to the Close of Escrow or (b) that Seller will not remove the disapproved exceptions (and Seller's failure to do either (a) or (b) shall be conclusively deemed to constitute Seller's election

7

not to remove any exception(s) disapproved by Buyer). Buyer acknowledges and agrees that under no circumstances shall Seller have any obligation whatsoever to remove or clear up, or to expend any money or take any action to remove or clear up, any title exception(s) disapproved by Buyer, except that, notwithstanding the foregoing, Seller shall remove at or before the Close of Escrow all monetary liens and monetary encumbrances on the Property, other than current, non-delinquent taxes or assessments, Buyer has no obligation hereunder to object to such items in order to obligate Seller to remove such items, and such items shall not be included in the Permitted Exceptions. If Seller elects not to remove any disapproved exception(s), whether by giving notice thereof or failing to give any notice, then Buyer shall have until 5:00 p.m. Pacific Time on the Approval Date in which to elect (a) to terminate this Agreement by written notice to Seller or (b) to accept such title subject to the Permitted Exceptions. If Buyer gives Seller such written notice of termination by 5:00 p.m. Pacific Time on the Approval Date, then this Agreement shall terminate without further action by the parties on the terms and conditions set forth in Section 13.14, below. Any agreement of the parties on exceptions to title arrived at after disapproval by Buyer shall be set forth in writing, expressly listing the permitted exceptions to title that appear on the Preliminary Report. The exceptions to title approved by Buyer as provided in this Section 4.2 are collectively referred to herein as the "Permitted Exceptions."

4.2.1   If Buyer does not terminate this Agreement on or before the Approval Date, then any time after the Approval Date but prior to the Close of Escrow, Buyer may notify Seller in writing (the "Subsequent Title Defects Notice") of any objection(s) to title exceptions (i) first raised by the Title Company after the Approval Date and prior to the Close of Escrow and (ii) not otherwise known to Buyer prior to the Approval Date, or caused by Buyer, provided that Buyer must notify Seller of such objection(s) to title within five (5) business days after being made aware of the existence of such exception (each, a "Title Report Update Review Period"). Should Buyer fail to provide a Subsequent Title Defects Notice to Seller prior to the expiration of the Title Report Update Review Period, Buyer shall be deemed to have approved such matters which shall then be considered Permitted Exceptions as defined above. If, however, Buyer timely objects to such new exception, then Seller shall have ten (10) business days after Seller's receipt of Buyer's objection in which to notify Buyer, in Seller's sole discretion, either (i) that Seller will remove the disapproved exception(s) prior to the Close of Escrow, provided that Seller may extend the Close of Escrow for such period as shall be required to effect such cure, but not beyond thirty (30) days after the scheduled date of the Close of Escrow or (ii) that Seller will not remove the disapproved exceptions. If Seller does not elect to do either (i) or (ii), such silence shall be conclusively deemed to constitute Seller's election not to remove any exception(s) disapproved by Buyer. If Seller elects not to remove any disapproved exception(s), whether by giving notice thereof or by failing to give notice, then Buyer shall have three (3) business days after Seller's election (or deemed election) not to cure the disapproved exception in which to elect (I) to terminate this Agreement by written notice to Seller or (II) to waive in writing Buyer's previous disapproval of (and thereby accept) any items that Seller does not elect to remove. If Buyer gives Seller such timely written notice of termination, then this Agreement shall thereupon terminate without further action by the parties; provided, however, that if Buyer fails to make an election within the three (3) business day period referenced above, then Buyer shall be deemed to have agreed to accept title subject to the matters first disclosed in the Subsequent Title Defects Notice and such matters shall be deemed to be Permitted Exceptions hereunder. If this Agreement is terminated in accordance with this

8

subsection, then, notwithstanding anything to the contrary contained in this Agreement, this Agreement shall terminate without further action by the parties on the terms and conditions set forth in Section 13.14, below. Notwithstanding any of the foregoing, Seller must remove any exception that is the subject of the Subsequent Title Defects Notice that was caused by Seller or any agent or representative of Seller, or recorded or placed against the Property with Seller's consent or due to or as result of Seller's actions, omissions, or breach or default under any agreement to which Seller is a party, and such exceptions shall not under any circumstances be Permitted Exceptions.

        4.3     Title Insurance. At Close of Escrow, Seller shall pay the cost of the premium for First American Title Insurance Company's ("Title Insurer") standard ALTA owner's policy of title insurance naming Buyer as insured, as owner of the Property in the amount of the Purchase Price showing fee title to the Property vested in Buyer subject to the exceptions described in Section 9, below (the "Title Policy"). Buyer shall also have the right to elect to obtain, for Buyer's use and for the use of the Title Insurer in connection with the issuance of the Title Policy, a current and complete ALTA survey of the Property together with such additional supporting reports or other certificates as the Title Insurer may require to enable the Title Insurer to delete its standard survey exceptions from the Title Policy with respect to the Property, at Buyer's sole cost. In such event, Seller shall cause the Title Insurer, on or before the Close of Escrow, to issue to Buyer an ALTA Extended Owners Coverage policy of title insurance with liability coverage in the amount of the Purchase Price, insuring fee simple title to the Property in Buyer, subject only to the Permitted Exceptions, together with such endorsements as may be reasonably requested by Buyer. Following Buyer's approval of the condition of title to the Property pursuant to Section 4.2, above, Seller shall not voluntarily allow any new encumbrances of the Property. Notwithstanding anything to the contrary in this Agreement, Seller's inability to deliver marketable title to the Property in the condition necessary for Title Insurer to issue the Title Policy as provided in this Section 4.3 for any reason other than Seller's breach of its obligations with respect to title to the Property in this Agreement shall constitute a failure of a condition (which condition is for the benefit of Buyer, and shall not constitute a breach of Seller's obligations under this Agreement. In the event of any such failure of condition, this Agreement shall terminate without further action by the parties as provided in Section 13.14 below, but subject to Section 4.2.1 above.

        4.4     Condition of the Property at the Close of Escrow. Except as caused by Buyer or Buyer's agents, there shall have occurred no material adverse change affecting the physical and/or environmental condition of the Property (exclusive of the improvements thereon) since the Approval Date. From the Effective Date through the Closing Date, Seller shall disc the Property in the same manner as performed by Seller prior to the Effective Date.

        4.5     Benefit of Conditions. The conditions precedent in Sections 4.1 through 4.4 above are solely for the benefit of Buyer. The conditions precedent set forth in Sections 4.1, 4.2, 4.3, and 4.4 above, shall fail or shall be satisfied in accordance with their respective terms. No waiver of any such conditions precedent shall be effective unless expressly set forth in writing by the party or parties receiving the benefit of the condition. Upon the termination of this Agreement for any reason whatsoever, Buyer shall promptly return all Seller Materials to Seller.

9

5. Deliveries to Escrow Holder.

5.1 By Seller. Seller shall deliver to Escrow Holder at least forty-eight (48) hours prior to the Closing Date, the following instruments and documents: (a) a grant deed ("Grant Deed") in Escrow Holder's standard form, executed by Seller and acknowledged, conveying the Property to Buyer; (b) a FIRPTA certificate in Escrow Holder's standard form and California Form 593; (c) originals of the Property Related Documents, unless Seller does not actually possess originals, in which event copies of the Property Related Documents may be deposited; (d) such proof of Seller's authority and authorization to enter into this Agreement, and such proof of the power and authority of the individual(s) executing and delivering any instruments, documents or certificates on behalf of Seller to act for and bind Buyer, as may be reasonably required by Buyer and/or Escrow Holder; (e) reasonable proof that Seller has terminated all agreements (including all services and maintenance contracts) that Buyer shall not assume at Closing with respect to the Property and that Seller has paid in full all amounts owed thereunder; (f) Seller's closing/settlement statement; and (g) such other documents reasonably requested by Escrow Holder as may be reasonably necessary to consummate this transaction in accordance with this Agreement.

5.2 By Buyer. Buyer shall deliver or cause to be delivered to Escrow Holder at least forty-eight (48) hours prior to the Closing Date, the following funds, instruments and documents: (a) immediately available U.S. funds in the amount set forth in Section 2.2.1, above; (b) the cash amount due Seller, if any, after the costs and prorations are computed in accordance with Sections 6 and 7, below; (c) such proof of Buyer's authority and authorization to enter into this Agreement, and such proof of the power and authority of the individual(s) executing and delivering any instruments, documents or certificates on behalf of Buyer to act for and bind Buyer, as may be reasonably required by Seller and/or Escrow Holder; (d) Buyer's closing/settlement statement; (e) a preliminary change of ownership report; and (f) such other documents reasonably requested by Escrow Holder as may be reasonably necessary to consummate this transaction in accordance with this Agreement.

6. Costs and Expenses of Closing. At Close of Escrow, Seller shall pay (a) one-half (½) of the Escrow Holder's recording and escrow fees and charges; (b) the documentary transfer taxes imposed by the County of Santa Clara on recordation of the Grant Deed; (c) the cost of the basic premium for the ALTA Standard Owner's Policy as set forth in Section 4.3, above; (d) the costs of recording instruments to release any Seller financings or mechanics' liens as required under Section 4.2 above or to cure other title matters Seller has elected to cure; and (e) the commission due to Broker, as described in Section 13.2, below. At Close of Escrow, Buyer shall pay (a) one-half (½) of the Escrow Holder's recording and escrow fees and charges; (b) the cost of the ALTA survey and endorsements or policies, if any, obtained as set forth in Section 4.3 above, in excess of the cost of the ALTA Standard Owner's Policy; and (c) Buyer's Charges (defined in Section 8.1.1 below). All other closing costs and prorations shall be allocated between the parties according to the custom and practice in Santa Clara County. All other costs, charges, and expenses shall be borne and paid as provided in this Agreement or in the absence of such provision, in accordance with local custom. In the event the Closing does not occur for any reason other than a breach by either party, Buyer and Seller shall each pay one-half (½) of any

10

escrow fees. Each party shall be responsible for its own attorneys' fees, consultants' fees, and other professional fees.

7.     Prorations and Credits.

7.1     General. For purposes of calculating prorations, Buyer shall be deemed to be in title to the Property, and therefore entitled to the income and responsible for the expenses, as of 11:59 p.m. Pacific time of the day preceding the Closing Date. All items attributable to the period up to the date on which the Close of Escrow occurs shall be credited to Seller. All items attributable to the period on and after the date on which the Close of Escrow occurs shall be credited to Buyer.

7.2     Taxes and Assessments. All real estate taxes and all assessments and/or bonds applicable to the Property or any part thereof, and all personal property taxes applicable to personal property located on the Property, if any, shall be prorated based on the most recently available tax information. Buyer shall be responsible for all such taxes from and after the Close of Escrow. Any refund for real estate taxes applicable to the period preceding the Close of Escrow, whether paid before or after the Close of Escrow, shall be paid to Seller, and Buyer shall have no claim or right thereto.

7.3     Operating Expenses. All utilities including, without limitation, oil, gas, electricity, water, telephone, cable television, sewer, and refuse collection, and other operating expenses of the Property, not separately billed by the provider shall be prorated based upon actual meter readings by the utility company (if metered), upon the monthly or bimonthly statement most recently received by Seller (if charged on a flat-rate monthly or bimonthly basis) or in accordance with standard escrow custom and practice, if not metered or charged on a flat-rate basis. Any refundable utility deposits shall be credited to Seller and debited to Buyer. Fees under service or maintenance contracts to be continued by Buyer after the Close of Escrow, if any, shall be prorated as of the date on which the Close of Escrow occurs. Buyer shall inform Seller by no later than thirty (30) days before the Close of Escrow which service or maintenance contracts, if any, Buyer desires to continue after the Close of Escrow and Seller shall assign same to Buyer at the Close of Escrow.

7.4     Method of Proration; Corrections. All prorations shall be made in accordance with custom and practice in the County of Santa Clara, except as otherwise expressly provided herein. If any errors or omissions are made regarding adjustments and prorations as set forth above, the parties shall make the appropriate corrections promptly upon the discovery thereof, provided the same is discovered within six (6) months after the Close of Escrow. Any error or omission not discovered within that period shall not thereafter be subject to adjustment. The amount necessary to correct any adjustment or proration that is to be corrected hereunder shall be paid in cash to the party entitled thereto. Said six (6) month limitation shall not apply to any real property tax refund relating to the period preceding the Close of Escrow, which shall be paid to Seller regardless of when the refund is made.

8.     Disbursements and Other Actions by Escrow Holder. Upon the Close of Escrow, Escrow Holder shall promptly undertake the following in the manner indicated:

11

8.1    Funds. Disburse all funds deposited with Escrow Holder by Buyer in payment of the Purchase Price as follows:

8.1.1    If, as the result of the costs, prorations and credits pursuant to Sections 6 and 7, above, amounts are to be charged to the account of Seller, deduct the total amount of such charges. If, as a result of the costs, prorations and credits pursuant to Sections 6 and 7, above, amounts are to be charged to the account of Buyer, collect the total amount of such charges ("Buyer's Charges") from Buyer.

8.1.2    Upon the Close of Escrow, immediately disburse the following to Seller in cash or other immediately available U.S. funds: the Deposit, the balance of the Purchase Price, and the amount of Buyer's Charges.

8.1.3    Disburse the remaining balance of the funds in Escrow, if any, to Buyer upon the Close of Escrow.

8.2    Recording. Cause the Grant Deed to be recorded in the Official Records of Santa Clara County.

8.3    Title Policy. Cause issuance of the Title Policy and any ALTA endorsements or policies to Buyer.

8.4    Disbursement of Documents to Buyer. Disburse to Buyer copies or originals of any documents deposited into Escrow to which Buyer is entitled pursuant to the terms of this Agreement.

8.5    Disbursement of Documents to Seller. Disburse to Seller copies or originals of any other documents deposited into Escrow to which Seller is entitled pursuant to the terms of this Agreement.

8.6    Closing Statement. Deliver to each of Buyer and Seller a closing statement showing the distribution, application, and receipt of all funds processed through the Escrow.

9.    Condition of Title. Buyer shall accept title to the Property subject to the following, which acceptance shall survive the delivery and recording of the Grant Deed: (a) all Applicable Laws now or hereafter in effect; (b) the Permitted Exceptions; (c) all covenants, conditions, agreements, reservations, restrictions, easements, encroachments and rights-of-way affecting the Property or any part thereof which are of record and are Permitted Exceptions, or, if not of record, which are disclosed in the Preliminary Report; (d) a state of facts which an accurate current survey and current visual inspection of the Property would reveal (including, without limitation, all existing easements end encroachments, if any); (e) all non-delinquent real estate taxes, assessments and other sums assessed against the Property and unpaid as of the Close of Escrow (subject to proration as provided in Section 7, above); and (f) all public improvement bonds, obligations, conditions and assessments affecting the Property. Nothing in the Grant

12

Deed recorded at Close of Escrow shall be construed as a warranty or representation by Seller concerning Seller's title to or rights in the Property, and, except as expressly set forth in this Agreement, Seller makes no such warranty or representation. Buyer represents and warrants that, except as expressly set forth in this Agreement, Buyer is relying solely upon the Preliminary Report and the Title Policy and Buyer's own investigations respecting Seller's title to or rights in the Property.

10. "As-Is" Sale: Releases and Waivers.

10.1 "As-Is" Sale. Buyer acknowledges that, except for written disclosures delivered to Buyer prior to the Close of Escrow, or as otherwise set forth in Section 11, neither Seller, nor anyone acting or claiming to act for or on behalf of Seller, has made any representations, warranties, promises or statements to Buyer concerning the Condition of the Property. Buyer further acknowledges and agrees that the Condition of the Property will be independently verified by Buyer to its full satisfaction on or before the Approval Date (or Buyer will terminate this Agreement pursuant to Section 4.1.1, above) and again as Buyer is permitted under this Agreement prior to the Close of Escrow, that, except for Seller's representations and warranties in Section 11, Buyer will be acquiring the Property based solely upon and in reliance on its own inspections, analyses and conclusions, and that if Buyer acquires the Property, it will acquire the Property in the Property's "AS-IS" condition and "AS-IS" state of repair inclusive of all faults and defects, whether latent or patent, or known or unknown. Without limiting the scope or generality of the foregoing, as of the Close of Escrow, Buyer expressly assumes the risk that the Property may not now or in the future comply with any Applicable Laws now or hereafter in effect.

Buyer further acknowledges and agrees that the notification given by Seller in the first paragraph of this Section 10.1 is given for disclosure purposes only and that it does not constitute a representation or warranty that the adverse conditions so disclosed to Buyer are the only adverse conditions that may exist at or otherwise affect the Property and, without limiting the scope or generality of this Section 10.1, Buyer expressly accepts the risk that adverse physical, environmental, financial and legal conditions may not be revealed by Buyer's inspection and evaluation of the Property and the Seller Materials.

10.2 Additional Waivers and Disclaimers.

10.2.1 Effective as of the Close of Escrow, and except as set forth in Section 11, Buyer hereby fully and forever waives, and Seller hereby fully and forever disclaims, all warranties of whatever type or kind with respect to the Property, whether express, implied or otherwise including, without limitation, those of fitness for a particular purpose, tenantability, habitability or use.

10.2.2 Buyer further acknowledges that, except as provided in Section 11, any information including, without limitation, the Property Related Documents, any engineering reports, architectural reports, feasibility reports, marketing reports, soils reports, environmental reports, analyses or data, or other similar reports, analyses, data or information of whatever type or kind which Buyer has received or may hereafter receive from Seller, its agents, its consultants,

13

or anyone acting or claiming to act on its behalf (the foregoing are collectively referred to herein as the "Seller Materials") are furnished without warranty of any kind and on the express condition that Buyer shall make its own independent verification of the accuracy, reliability and sufficiency of such information and that Buyer will not rely thereon. Accordingly, Buyer agrees that under no circumstances will it make any claim, directly or indirectly, against, bring any action, cause of action or proceeding against, or assert any liability upon, Seller, its agents, consultants, contractors, or any other persons who prepared or furnished any of the Seller Materials as a result of the inaccuracy, unreliability or insufficiency of, or any defect or mistake in, any of the Seller Materials (including, without limitation, by reason of any person's sole, active, passive or other negligence).

    10.3 <u>Release and Waiver</u>.

      10.3.1 Effective only as of the Close of Escrow, and except to the extent that any of the following constitute a breach of any of Seller's obligation under this Agreement or of Seller's representations and warranties hereunder, Buyer fully and forever releases, acquits and discharges Seller of and from, and hereby fully and forever waives:

        10.3.1.1 Any and all claims, actions, causes of action, suits, proceedings, demands, rights, damages, costs, liabilities, damages, liens, expenses (including, without limitation, attorneys' fees and costs) or other compensation whatsoever, of any type or kind ("Claims"), whether known or unknown, direct or indirect, foreseeable or unforeseeable, absolute or contingent, that Buyer now has or may have or which may arise in the future arising out of, directly or indirectly, or in any way connected with: (A) any condition of environmental contamination or pollution at the Property, however and whenever occurring (including, without limitation, the contamination or pollution of any surface or subsurface soils, subsurface media, surfacewaters or groundwaters at the Property); (B) to the extent not already included in (A), above, the prior, present or future existence, release or discharge, or threatened release, of any Hazardous Materials at the Property, however and whenever occurring (including, without limitation, the release or discharge, or threatened release, of any Hazardous Materials into the air at the Property or into any soils, subsoils, surfacewaters or groundwaters at the Property); (C) the violation of any Applicable Law now or hereafter in effect, however and whenever occurring, with respect to the Property; (D) geologic and seismic conditions at the Property, and soil and subsoil conditions at the Property; or (E) the condition of any structures on the Property (including, without limitation, any structural, foundation, roof, plumbing, heating, air-conditioning, electrical, mechanical and other defects as may exist therein and any non-compliance thereof with building codes, other Applicable Laws, and private restrictions).

        10.3.1.2 Any and all damages; losses; costs; judgments; fines and penalties; fees; expenses; or other compensation whatsoever arising out of, directly or indirectly, or in any way connected with, any of the matters described in clauses (A) through (E) of Section 10.3.1.1, above.

      Without limiting the scope or generality of the foregoing release and waiver provisions, those provisions shall specifically include and cover (1) any claim for or right to indemnification, contribution or other compensation based on or arising under the

14

Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9601, et seq., the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. §§ 6901, et seq., the Carpenter-Presley-Tanner Hazardous Substances Account Act, as amended ("CPTHSA"), Cal. Health & Safety Code §§ 25300, et seq., or any similar or other Applicable Laws now or hereafter in effect, and (2) any Claim for or based on trespass, nuisance, waste, negligence, negligence per se, strict liability, ultrahazardous activity, indemnification, contribution or other theory arising under the common law of the State of California (or any other applicable jurisdiction) or arising under any Applicable Laws now or hereafter in effect. As used in this Section, the word "at" also means on, beneath, in, above, and in the vicinity of.

10.4  Waiver of Civil Code Section 1542. With respect to all releases made by Buyer in this Agreement, Buyer hereby waives the application and benefits of California Civil Code § 1542 and hereby verifies that it has read and understands the following provision of California Civil Code § 1542:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

_____
Buyer's Initials

10.5  Hazardous Materials. For purposes of this Agreement, "Hazardous Materials" means any substance, chemical, waste, material or emission: (a) the presence of which requires investigation, monitoring, removal or remediation under any federal, state or local statute, ordinance, code, regulation, order, decree, policy or common law now or hereafter in effect; (b) which is or becomes defined as a "hazardous substance", "hazardous material", "hazardous waste", "pollutant", or "contaminant" under any federal, state or local statute, ordinance, code, regulation or rule now or hereafter in effect, or under any amendments thereto; (c) which is toxic, explosive, corrosive, flammable, infectious, radioactive, carcinogenic, mutagenic or otherwise hazardous; (d) the presence of which causes or threatens to cause a nuisance or trespass or poses or threatens to pose a hazard to the health or safety of persons on or about the Property; (e) without limitation, which is or contains gasoline, diesel fuel, motor oil, waste oil, grease or any other petroleum hydrocarbons; (f) without limitation, which is or contains asbestos in any form, polychlorinated biphenyls (PCBs), or urea formaldehyde foam insulation; (g) without limitation, which is or contains radon gas; or (h) without limitation, which is electromagnetic or magnetic in nature.

10.6  Materiality. The provisions of this Section 10 shall survive the Close of Escrow and delivery and recordation of the Grant Deed and shall not be merged thereby. Buyer hereby acknowledges and agrees that the provisions of this Section 10 are material and included as a material portion of the consideration given to Seller by Buyer in exchange for Seller's performance under this Agreement and that Seller has given Buyer material concessions regarding this transaction in exchange for Buyer agreeing to the provisions of this Section 10.

15

11.    Seller's Representations and Warranties. Seller hereby represents and warrants to Buyer that, as of the Effective Date, and as of the date on which Close of Escrow occurs, each of the following is and shall be true and correct:

     11.1    Organization. The individuals executing this Agreement as Seller are the trustees of trusts that have been duly created and are in existence and in good standing under the laws of the State of California.

     11.2    Requisite Action. All requisite action has been taken by Seller in connection with Seller's execution of this Agreement, the agreements, instruments or other documents to be executed by Seller pursuant to this Agreement, and the consummation of the transactions contemplated hereby and thereby.

     11.3    Authority. The individuals executing this Agreement and the agreements, instruments or other documents to be executed by Seller pursuant to this Agreement on behalf of Seller each has been duly authorized to bind Seller to the terms and conditions hereof and thereof. This Agreement has been, and all of the documents to be delivered by Seller at the Closing will be, authorized and properly executed and constitutes, or will constitute, as appropriate, the valid and binding obligation of Seller. The entering into this Agreement and the sale of the Property to Buyer does not constitute a violation or breach by Seller of: (i) any contract, agreement, understanding or instrument to which it is a party by which Seller or the Property is subject or bound; or (ii) any judgment, order, writ, injunction or decree issued against or imposed upon them.

     11.4    No Other Agreements. Except as disclosed in the Title Report, Seller has not entered into any other contracts, agreements or understandings, verbal or written, for the sale, transfer or lease of any portion of the Property and no party has a right or option to purchase the Property. Except to the extent disclosed in the Preliminary Report or any other reports or information provided by Seller to Buyer, to Seller's knowledge, there are no parties in possession or occupancy of any of the Property or any parts thereof other than Seller, nor are there any parties who have any leasehold or other possessory rights with respect to any of the Property or any part thereof other than Seller and there are no leases affecting the Property.

     11.5    Eminent Domain. Except to the extent disclosed in any reports or information provided by Seller to Buyer or disclosed to Buyer, Seller has no actual knowledge of, nor has Seller, to Seller's knowledge, received written notice of any lawsuits, condemnation or eminent domain proceedings, or litigation pending, threatened or which have been filed against Seller that would materially affect the Property or use thereof, or Seller's ability to perform hereunder. Seller has not entered, and throughout the Agreement Term will not enter, into any agreements that will affect Buyer or the Property after the Close of Escrow.

     11.6    Hazardous Materials. Except to the extent disclosed in any reports of information provided by Seller to Buyer or disclosed to Buyer through any physical testing or inspection of the Property or otherwise known to or caused by Buyer or any of Buyer's agents, to Seller's actual knowledge: (i) there are no Hazardous Materials on, in or under the Property in violation of any applicable Environmental Laws relating thereto; (ii) Seller has not generated,

16

Case: 21-51255    Doc# 255-1   Filed 09/22/22   Entered 09/22/22 15:10:18   Page 20 of 100

produced, used, reused, sold, stored, transported or disposed of Hazardous Materials on, in or under the Property in violation of any applicable Environmental Laws relating thereto; and, (iii) there are not currently and have not been in the past any underground or other above-ground storage tanks situated on the Property.

11.7    Violation of Laws. Except to the extent disclosed in any reports or information provided by Seller to Buyer or disclosed to Buyer through any physical testing or inspection of the Property or otherwise known to or caused by Buyer, to Seller's knowledge, Seller is not aware of, nor has Seller received, any notice from any governmental authority that any condition at the Property violates any material provision of applicable building codes, zoning or land use laws, other local, state or federal laws and regulations, or restrictive easements or covenants affecting the Property.

11.8    OFAC. Seller is not a "foreign person" within the meaning of Section 1445(f) of the Internal Revenue Code and Seller is not, nor is any person who owns a controlling interest in or otherwise controls Seller, (a) listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or on any other similar list maintained by the OFAC pursuant to any authorizing statute, Executive Order or regulation (collectively, "OFAC Laws and Regulations"); or (b) a person either (i) included within the term "designated national" as defined in the Cuban Assets Control Regulations, 31 C.F.R. Part 515, or (ii) designated under Sections 1(a), 1(b), 1(c) or 1(d) of Executive Order No. 13224, 66 Fed. Reg. 49079 (published September 25, 2001) or similarly designated under any related enabling legislation or any other similar Executive Orders (collectively, the "Executive Orders"). Neither Seller, Tenant, nor any of its principals is (x) a person or entity with which Buyer is prohibited from dealing or otherwise engaging in any transaction by any Anti-Terrorism Law, or that commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Orders, or (y) is affiliated or associated with a person or entity listed in the preceding clause (x). To Seller's knowledge, neither Seller nor any of its principals or affiliates, (I) deals in, or otherwise engages in any transaction relating to, any property or interests in property blocked pursuant to the Executive Orders or (II) engages in or conspires to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.  As used in this Agreement, "Anti-Terrorism Law" means the OFAC Laws and Regulations, the Executive Orders and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001), as amended.

11.9    Seller Materials. Seller has provided to Buyer access to all Seller Materials in Seller's possession or control and, except as otherwise disclosed to Buyer by Seller, to Seller's actual knowledge all contracts, agreements and documents constituting Seller Materials provided to Buyer by Seller are complete; Seller shall notify Buyer of any modifications or additions to, or written information affecting, the matters set forth in the Seller Materials within ten (10) days of Seller's receipt of such modifications, additions or written information, and shall give Buyer access to such modifications, additions or written information in a manner consistent with the provisions of this Agreement governing the Seller Materials.

17

Seller's representations and warranties made in this Section 11 shall be true and correct as of the Effective Date and shall be continuing, true and correct as of the date on which the Close of Escrow occurs with the same force and effect as if remade by Seller in a separate certificate at that time. Seller's representations and warranties made herein shall survive, and shall not merge into, the Close of Escrow and delivery and recordation of the Grant Deed.

       12.    Buyer's Representations and Warranties.  Buyer hereby represents and warrants to Seller that, as of the Effective Date, and as of the date on which Close of Escrow occurs, each of the following is and shall be true and correct:

       12.1    Organization.  Buyer is a limited liability company duly organized and existing under the laws of the State of California, and the execution, delivery and performance of this Agreement and the documents contemplated hereby are not in conflict with the terms of the organizational documents of Buyer.

       12.2    Power.  Buyer has the legal power, right and authority to enter into this Agreement and the agreements, instruments or other documents to be executed by Buyer pursuant to this Agreement, and to consummate the transactions contemplated hereby and thereby.

       12.3    Requisite Action.  All requisite action has been taken by Buyer to duly authorize Buyer to execute this Agreement, the agreements, instruments and other documents to be executed by Buyer pursuant to this Agreement, and to perform the transactions contemplated hereby and thereby. The individuals executing this Agreement and the agreements, instruments and other documents to be executed by Buyer pursuant to this Agreement on behalf of Buyer each has been duly authorized by all requisite action, and all requisite action has been taken by Buyer to duly authorize such individuals to consummate the transactions contemplated hereby and thereby.

       12.4    Inspections.  On or before the Close of Escrow, Buyer will have completed all other inspections, studies, investigations, analyses, reviews and evaluations which Buyer deems necessary or prudent to Buyer's acquisition of the Property.

       12.5    Sophistication.  Buyer is an experienced and sophisticated real estate buyer capable of making or causing to be made the necessary inspections, investigations, studies and evaluations of the Condition of the Property, the Property Related Documents, and the Seller Materials including, without limitation, investigations, studies and evaluations pertaining to soil, seismic and geologic conditions affecting the Property, the environmental condition of the Property (including, without, limitation, the presence or absence of Hazardous Materials), the physical condition and legal compliance or non-compliance of the Improvements, the zoning, building, land use and subdivision requirements affecting the Property, and all other matters relevant to Buyer's decision to acquire the Property. To the extent Buyer is not personally an experienced and sophisticated real estate investor, Buyer is capable of employing or otherwise retaining experienced consultants, advisors and experts capable of making or causing to be made all of such necessary inspections, investigations, studies and evaluations, and capable of advising

18

Buyer concerning all of the matters described in the immediately preceding sentence. Buyer hereby agrees and acknowledges that, in acquiring the Property, it is acting solely in reliance on its own investigations, inspections, analyses, conclusions, and/or advice of its own consultants, advisors and experts and is not relying in any manner on any representations, warranties, statements or promises of Seller or any party acting or claiming to act for or on behalf of Seller.

Buyer's representations and warranties made in this Section 12 shall be true and correct as of the Effective Date and shall be continuing, true and correct as of the date on which the Close of Escrow occurs with the same force and effect as if remade by Buyer in a separate certificate at that time. Buyer's representations and warranties made herein shall survive, and shall not merge into, the Close of Escrow and delivery and recordation of the Grant Deed.

13.    Miscellaneous.

13.1    Possession. Buyer shall have the right to take possession of the Property upon Close of Escrow.

13.2    Brokers and Finders. Buyer hereby represents and warrants to Seller that, except for Buyer's engagement of Intero Real Estate Services, Inc., as a real estate broker representing Buyer in this transaction ("Buyer's Broker"), Buyer has not engaged any real estate broker, salesperson or finder who would be entitled to any type of commission, fee or other compensation based on the sale of the Property to Buyer. Buyer hereby agrees to indemnify, defend, protect and hold Seller free and harmless from and against any and all claims, actions, causes of action, proceedings, judgments, damages, losses, costs, liabilities or expenses (including attorneys' fees and costs) arising out of or in any way connected with Buyer's breach of the foregoing representation and warranty. Seller hereby represents and warrants to Buyer that, except for Seller's engagement of CBRE as a real estate broker representing Seller in this transaction ("Seller's Broker"), Seller has not engaged any real estate broker, salesperson or finder who would be entitled to any type of commission, fee or other compensation based on the sale of the Property to Buyer. Seller hereby agrees to indemnify, defend, protect and hold Buyer free and harmless from and against any and all claims, actions, causes of action, proceedings, judgments, damages, losses, costs, liabilities or expenses (including attorneys' fees and costs) arising or in any way connected with Seller's breach and the foregoing warranty. The commission to Seller's Broker shall be paid by Seller pursuant to a separate agreement between Seller and Seller's Broker. The commission to Buyer's Broker shall be paid by Seller pursuant to a separate agreement between Buyer and Buyer's Broker.

13.3    Exhibits. The following exhibits attached hereto shall be deemed incorporated by this reference as though set forth in full:

Exhibit "A":    Legal Description
Exhibit "B":    Memorandum
Exhibit "C":    Termination of Memorandum
Exhibit "D":    Property Related Documents

19

13.4   Notices. Unless otherwise expressly provided herein, all notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered (including by means of professional messenger service), sent by nationally recognized overnight courier, sent via registered or certified, first class U.S. mail, return receipt requested, sent via facsimile (only if a facsimile number is set forth below for such party), or sent via electronic mail (only if an e-mail address is set forth below for such party), to a party at the appropriate addresses (or e-mail address or facsimile number) set forth below for such party, or to such other place as such party may from time to time designate in a written notice given to the other party in the manner detailed in this Section 13.4; provided, however, in no event shall a party's address for purposes hereof be a P.O. Box. Any notice or other communication will be deemed given on the date of receipted delivery, the date of refusal to accept delivery, or when delivery is first attempted but cannot be made due to a change of address for which no notice was given; except that any notice or communication sent via facsimile or electronic mail, as the case may be, shall be deemed given when transmitted to the facsimile number or e-mail address, as applicable, with proof of transmission, provided that such notice or communication is promptly followed by a copy sent by messenger or overnight courier.

| | |
|---|---|
| Seller: | John H. Bellicitti |
| | 14001 Chester Avenue |
| | Saratoga, CA 95070 |
| | Email: 40plusmxr@sbcglobal.net |
| | |
| With a copy to: | Daniel S. Gonzales, Esq. |
| | Ferrari Ottoboni Caputo & Wunderling LLP |
| | 333 W. Santa Clara Street, Suite 700 |
| | San Jose, CA 95113 |
| | Facsimile: (408) 280-0151 |
| | Email: dgonzales@ferrarilawpartners.com |
| | |
| Buyer: | Dutchints Development LLC |
| | Attention: Vahe Tashjian |
| | 289 S. San Antonio Road, Suite 204 |
| | Los Altos, CA 94022 |
| | Email: contact@dutchints.com |
| | |
| With a copy to: | Karl Foster, Esq. |
| | Archer Norris PLC |
| | 2033 N. Main Street, Suite 800 |
| | Walnut Creek, CA 94596 |
| | Facsimile: (925) 930-6620 |
| | Email: kfoster@archernorris.com |

13.5   Successors and Assigns. Subject to the restrictions on assignment set forth below, this Agreement shall be binding upon and inure to the benefit of Seller and Buyer and their respective estates, personal representatives, heirs, devisees, legatees, successors and assigns. Buyer, without Seller's prior consent, may assign this Agreement and its rights and

20

obligations hereunder to an entity of which Buyer, or a combination of Buyer and any of Buyer's owners or Members, own an equity interest, or of which Buyer, or a combination of Buyer and any of Buyer's owners or Members, control the management and operations. Buyer shall give Seller written notice of any such assignment and any such assignee shall assume all obligations of Buyer under this Agreement. Except as set forth in the preceding sentence, Buyer may not assign any of its rights and/or delegate any of its obligations under this Agreement without first obtaining the prior written consent of Seller, which consent may be withheld by Seller in its sole and absolute discretion. Any assignee as may be consented to by Seller shall expressly assume in writing all obligations of Buyer under this Agreement and shall further acknowledge and agree in writing to be bound by all of the provisions of this Agreement as if the assignee had originally executed this Agreement as the buyer.

13.6 Damage: Destruction: Condemnation. All risk of loss to the Property shall remain with Seller prior to the Closing Date. If, prior to the Close of Escrow, the Property shall be materially damaged or destroyed by fire or other casualty, Buyer may terminate this Agreement upon two (2) days' written notice to Seller. If Buyer elects to close, despite said material damage or destruction, there shall be no reduction in the Purchase Price, and Seller shall assign to Buyer at the Close of Escrow Seller's right, title and interest in and to all insurance proceeds (if assignable), together with a credit for any deductible thereon resulting or to result from said damage or destruction. In the event of less than material damage or destruction to the Property prior to the Close of Escrow, Seller shall, at Seller's option, either repair the same prior to the Close of Escrow, at Seller's expense, or reimburse Buyer for the cost of repairing same by, at Seller's option, assigning any insurance proceeds resulting therefrom (if assignable), together with a credit for any deductible thereon to Buyer. If insurance proceeds are assigned, such amounts shall be placed into an escrow account and disbursed as the repair work is completed, and upon such other terms as Seller may reasonably require. If, prior to the Close of Escrow, any proceedings in eminent domain are contemplated, threatened or instituted by any agency having the power of eminent domain with respect to the Property or any portion thereof, Buyer may, at its option, by notice to Seller given within ten (10) business days after Seller notifies Buyer of such proceedings (and if necessary the Closing Date shall be extended to give Buyer the full ten (10) business day period to make such election): (a) terminate this Agreement, in which event the Deposit shall be immediately returned to Buyer, or (b) proceed under this Agreement, in which event Seller shall, at the Closing, assign to Buyer its entire right, title and interest in and to any condemnation award, and Buyer shall have the sole right during the pendency of this Agreement to negotiate and otherwise deal with the condemning authority in respect of such matter. Any termination of this Agreement by Buyer pursuant to this Section 13.6 shall be governed by the provisions of Section 13.14, below.

13.7 Applicable Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, and according to its fair meaning, and not in favor of or against any party.

13.8 Entire Agreement: Amendment. This Agreement embodies the entire agreement and understanding between the parties relating to the subject matter hereof, and all prior negotiations, agreements and understandings, oral or written, are hereby revoked, cancelled and rescinded and are all merged herein and superseded hereby. Any amendment to this

21

Agreement, including, without limitation, any oral modification supported by new consideration, must be reduced to writing and signed by both parties in order to be effective.

13.9    Counterparts: Waiver. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. This Agreement (or any counterpart hereof) may also be executed by facsimile signature. Any waiver of the performance of any covenant, condition or promise by either party, in order to be effective, must be in a writing signed by the party who has allegedly waived the covenant, condition or promise in question.

13.10    Severability. Should any part, term or provision of this Agreement or any document required herein to be executed or delivered be declared invalid, void or unenforceable, all remaining parts, terms and provisions hereof shall remain in full force and effect and shall in no way be invalidated, impaired or affected thereby.

13.11    Interpretation. The neuter gender includes the feminine and masculine, and vice-versa, and the singular number includes the plural. The word "person" includes, in addition to any natural person, a corporation, partnership, firm, trust, association, governmental body or other entity. Whether expressly stated or not in this Agreement, any release or waiver made in this Agreement by Buyer in favor of Seller shall benefit not only Seller but shall also benefit Seller's trustees, agents, employees, successors and assigns as well. The captions of the sections of this Agreement are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, or aid in the interpretation, construction or meaning of the provisions of this Agreement.

13.12    Attorneys' Fees. If either party files any action or brings any proceeding against the other arising from this Agreement, or is made a party to any action or proceeding brought by Escrow Holder, then as between Buyer and Seller, the prevailing party shall be entitled to recover as an element of its costs of suit, and not as damages, reasonable attorneys' and experts' fees and litigation expenses to be fixed by the court.

13.13    Survival: No Merger. Whether or not expressly stated to survive, all representations, warranties, acknowledgments, covenants (including indemnities), releases, waivers, and payment obligations of or made by Buyer or Seller in this Agreement, and all disclaimers of Seller, and all provisions of this Agreement which contemplate performance after the Close of Escrow, shall survive the Close of Escrow and delivery and recordation of the Grant Deed and shall not be merged thereby.

13.14    Termination. Except as set forth in Section 2.1.3 and 2.1.4 above, if this Agreement terminates pursuant to any provision hereof allowing for termination, this Agreement shall be of no further force or effect except that: (i) the Deposit shall be returned to Buyer; (ii) the Escrow shall be canceled; (iii) Buyer's obligations under Section 4.1.3, above, and 13.16, below, shall survive such termination; and (iv) Buyer and Seller shall each pay one-half (½) of any escrow cancellation fees charged by Escrow Holder ("Cancellation Charges").

13.15  Service Contracts.  Unless Seller and Buyer otherwise expressly agree in writing before the Close of Escrow, Seller will, prior to the Close of Escrow and as a condition to Buyer's obligation to close Escrow, cancel all service and maintenance contracts respecting the Property to which Seller is a party and pay in full all amounts due and payable thereunder.

13.16  Confidentiality.  The parties agree that the terms set forth in this Agreement, and all information exchanged with respect to the Property, are to remain confidential and are not to be revealed or disclosed to any person or party whatsoever, except: (i) with the consent of the other party; (ii) as may be disclosed to a party's attorneys, accountants, and other representatives that are involved in connection with the consummation of this transaction; (iii) each party's investors and/or lenders; (iv) in accordance with the provisions of this Agreement; (v) as may be required by applicable law or court order; (vi) as may be necessary for Buyer to obtain Final Approval of any of the Entitlements or any other necessary or appropriate governmental approvals; (vii) in connection with any litigation between the parties; and (viii) with respect to the information exchanged about the Property, Buyer may disclose same in its sole discretion after the Close of Escrow.  Each party agrees to indemnify, defend and hold the other party harmless from and against any and all claims, actions, causes of action, suits, damages, losses, costs, judgments, demands, orders, expenses (including without limitation attorneys' fees and costs) and liabilities arising from such party's breach of any of its covenants under this Section 13.16.  The provisions of this Section 13.16 shall survive the termination of this Agreement and shall survive the Close of Escrow and delivery of the Grant Deed and shall not be merged thereby.

13.17  Advice of Counsel.  Buyer acknowledges that it has had the opportunity to seek, and has been advised to seek, the advice of legal counsel of Buyer's own choosing with respect to the form, substance, meaning and legal consequences of this Agreement, and Buyer further acknowledges that any failure of Buyer to obtain such advice shall be at Buyer's own risk.  Seller acknowledges that it has had the opportunity to seek, and has been advised to seek, the advice of legal counsel of Seller's own choosing with respect to the form, substance, meaning and legal consequences of this Agreement, and Seller further acknowledges that any failure of Seller to obtain such advice shall be at Seller's own risk.

13.18  Execution.  This Agreement has been prepared by Seller's counsel for execution by Buyer first.  THIS AGREEMENT DOES NOT CONSTITUTE AN OFFER BY SELLER TO SELL THE PROPERTY TO BUYER.  If this Agreement is executed only by Buyer, it shall constitute an unaccepted offer from Buyer to purchase the Property on the terms and conditions herein set forth.  In such event, unless a counterpart original of this Agreement, duly executed and dated by Seller, is delivered to Buyer or Escrow Holder by 5:00 p.m. Pacific Time on or before August 10, 2018, Buyer's offer to purchase shall be deemed revoked, and any funds deposited by Buyer with Seller or Escrow Holder shall be refunded to Buyer.

13.19  Section 1031 Exchange.  Any person executing this Agreement  may consummate the purchase or sale (as applicable) of the Property as part of a so-called like kind exchange (an "Exchange") pursuant to §1031 of the Internal Revenue Code of 1986, as amended (the "Code"), provided that:  (a) the Close of Escrow shall not be delayed or affected by reason of the Exchange nor shall the consummation or accomplishment of an Exchange be a condition

23

precedent or condition subsequent to the exchanging person's obligations under this Agreement; (b) the exchanging person shall effect its Exchange through an assignment of this Agreement, or its rights under this Agreement, to a qualified intermediary; (c) no party or person executing this Agreement shall be required to take an assignment of the purchase agreement for the relinquished or replacement property or be required to acquire or hold title to any real property for purposes of consummating an Exchange desired by any other party or person executing this Agreement; and (d) the exchanging person shall pay any additional costs that would not otherwise have been incurred by a non-exchanging party or person executing this Agreement had the exchanging person not consummated the transaction through an Exchange. No person executing this Agreement shall by this Agreement or acquiescence to an Exchange desired by any other party or person executing this Agreement have its rights under this Agreement affected or diminished in any manner or be responsible for compliance with or be deemed to have warranted to the exchanging person that its Exchange in fact complies with §1031 of the Code.

13.20  Natural Hazard Disclosure Requirement Compliance.  Buyer and Seller acknowledge that Seller may be required to disclose whether the Property lies within the following natural hazard areas or zones: (i) a special flood hazard area designated by the Federal Emergency Management Agency (California Government Code Section 8589.3); (ii) an area of potential flooding (California Government Code Section 8589.4); (iii) a very high fire hazard severity zone (California Government Code Section 51178 et seq.); (iv) a wildland area that may contain substantial forest fire risks and hazards (Public Resources Code Section 4136); (v) an earthquake fault zone (Public Resources Code Section 2621.9); or (vi) a seismic hazard zone (Public Resources Code Section 2694) (sometimes collectively called the "Natural Hazard Matters"). Seller has engaged or will cause the Escrow Holder to engage the services of a natural hazard disclosure expert (the "Natural Hazard Expert"), to examine the maps and other information specifically made available to the public by government agencies for the purposes of enabling Seller to fulfill its disclosure obligations, if and to the extent such obligations exist, and to report the result of its examination to Buyer and Seller in writing within thirty (30) days after the Effective Date. The written report prepared by the Natural Hazard Expert (the "Natural Hazard Report") regarding the results of its examination will fully and completely discharge Seller from its disclosure obligations referred to in this Agreement or in the Natural Hazard Report, if and to the extent any such obligations exist. Buyer agrees to provide Seller with a written acknowledgment of its receipt of the Natural Hazard Report. Buyer's delivery of the Approval Notice shall be deemed to be Buyer's acceptance of all Natural Hazard Matters.

13.21  Energy Performance Disclosure Information.  Buyer acknowledges that Seller may be required to disclose certain information concerning the energy performance of the Property pursuant to California Public Resources Code Section 25402.10 and the regulations adopted pursuant thereto (collectively the "Energy Disclosure Requirements"). Seller is attempting to provide such information to the Buyer in an effort to comply with the Energy Disclosure Requirements. Buyer acknowledges and agrees that (i) Seller makes no representation or warranty regarding the energy performance of the Property or the accuracy or completeness of the information disclosed or to be disclosed to the Buyer concerning the energy performance of the Property (the "Energy Disclosure Information") (ii) the Energy Disclosure Information is for the current occupancy and use of the Property and that the energy performance of the Property may vary depending on future occupancy and/or use of the Property, and (iii)

24

Seller shall have no liability to Buyer for any errors or omissions in the Energy Disclosure Information. Buyer's approval or deemed approval under Section 4.1.1 above shall be deemed to include Buyer's approval of the energy performance of the Property and the Energy Performance Disclosure Information. The terms of this Section 13.21 shall survive the Close of Escrow and the recordation of the Deed.

      13.22   Entitlement Activities.  Seller agrees that, prior to the Closing Date, Buyer shall have the right to engage in various activities (the "Entitlement Activities") for the purpose of applying for, processing and obtaining from all governmental and quasi-governmental authorities at the federal, state and local level that have jurisdiction over the Property, Final Approval of any entitlements, approvals, and permits (the "Entitlements") necessary and appropriate for Buyer's intended subdivision of the Property into ten (10) parcels and development thereon of ten (10) one (1)-acre parcel single family residences (the "Project"), including without limitation the approval for a Tentative Map and a final subdivision map (the "Final Map"). Buyer shall use commercially reasonable and diligent efforts to submit its initial application for the Tentative Map as soon as reasonably possible and thereafter will use commercially reasonable and diligent efforts to obtain Final Approval of the Tentative Map. Buyer shall have sole discretion as to how to apply for, pursue, and obtain the Entitlements and may at all times during the term of this Agreement access staff and elected officials of the County, the City, and any other governmental or quasi-governmental agency or body with jurisdictions over the Property, as well as all third parties who own projects within the City or County. Seller shall, at no cost or expense to Seller, cooperate with Buyer with respect to the Entitlement Activities and shall take all actions, join in all applications and execute all documents reasonably necessary to allow Buyer to pursue and obtain the Entitlements for the Project. Seller's cooperation shall include the execution of documents and any other acts that may reasonably be necessary to assist Buyer in Buyer's efforts to obtain Final Approval of the Entitlements, which acts may include Seller's execution and delivery of, prior to the Close of Escrow, as owner of the Property, any applications, plans, drawings, and other documents reasonably necessary to support Buyer's applications for and processing of the Entitlements; provided that Seller shall not be required to incur any liability or perform any act that may result in any material adverse change to the Property prior to the Close of Escrow. Upon Seller's request, which request Seller may not make more often than once every thirty (30) days, Buyer shall keep Seller reasonably informed about Buyer's efforts and progress to obtain Final Approval of the Entitlements. From the Effective Date through and including the Closing Date, Buyer, its agents, representatives and consultants may enter onto the Property to pursue the Entitlement Activities; the parties acknowledge and agree that the Entitlement Activities shall be subject to those terms and conditions regarding Buyer's entry onto the Property prior to the Closing Date as set forth in Section 4.1 of this Agreement.

      13.23   Tentative Map.  Buyer requires, and Seller has agreed, that obtaining Final Approval for a tentative subdivision map for the Project (the "Tentative Map") pursuant to the Entitlement Activities shall be a condition of Close of Escrow, and that failure to obtain Final Approval of the Tentative Map prior to the Closing Date (as it may be extended under Section 3.4 above) shall give Buyer the right to terminate this Agreement in the manner allowed under Section 13.14 above. As used in this Agreement, "Final Approval" of any of the Entitlements for the Project (including the Tentative Map) shall mean that (i) Buyer has obtained all necessary

25

final administrative and discretionary approvals for the Entitlement from all governmental and quasi-governmental authorities with jurisdiction over the Project, (ii) all administrative and court challenges and/or appeals with respect to the Entitlement, if any, filed or pursued by any third party have been resolved, settled, or completed through non-appealable judgment with the Entitlement intact as originally approved, and (iii) all deadlines for any third party to file or pursue any administrative and/or court challenge with respect to the Entitlement have passed.

13.24  Removal of Barn.  The parties acknowledge that there is a barn structure (the "Barn") located on the Property.  The parties further acknowledge that the Barn must be relocated or otherwise removed from the Property in order to carry out the Project as intended. Seller shall be solely responsible for all costs incurred to relocate or otherwise remove the Barn from the Property, and shall relocate or otherwise remove the Barn from the Property on or before the Closing Date.  The parties acknowledge that Seller has the right to extend the Closing Date as set forth in Section 3.4 in the event that Seller is unable to relocate or otherwise remove the Barn from the Property by the Closing Date; in the event that Seller is unable to relocate or otherwise remove the Barn from the Property by the Closing Date, as extended, the parties acknowledge that Buyer will only be able to build nine (9) of the ten (10) one (1)-acre parcel single family residences constituting the Project as intended, and agree that the Purchase Price shall be reduced by an amount to be agreed upon by the parties, not to exceed One Million Six Hundred Thousand and No/100ths Dollars ($1,600,000.00).

13.25  Manufactured Home and Small Structures.  The parties acknowledge that, in addition to the Barn, there is a manufactured home located on the Property (the "Manufactured Home"), as well as other small structures.  The parties agree that Seller shall have the right to remove the Manufactured Home from the Property prior to the Closing Date, at Seller's sole cost and expense.  In the event that Seller does not remove the Manufactured Home from the Property prior to the Closing Date, the Manufactured Home and the other small structures located on the Property (other than the Barn) shall, at no cost to Buyer, become the property of Buyer as of the Closing Date, to dispose of or not as it sees fit in its sole and absolute discretion, and neither Buyer nor Seller shall have any claim against the other with regard to the continued presence or removal of the Manufactured Home or the other small structures on the Property after the Closing Date.

13.26  Williamson Act.  The parties acknowledge that the Property is subject to one or more contracts that have been entered into with the City of Saratoga relating to the preservation of the agricultural use of the Property pursuant to the Williamson Act, California Government Code Section 51200 *et seq.* (the "Williamson Act Contracts").  The parties acknowledge that Seller intends to submit notice of nonrenewal of the Williamson Act Contracts to the City of Saratoga on or before October 1, 2018.  Notwithstanding the foregoing, the parties agree that all further acts required for obtaining the cancellation of the Williamson Act Contracts (the "Williamson Act Cancellation") shall be carried out by Buyer, but that the payment of any costs and fees incurred by Buyer associated with the Williamson Act Cancellation, along with the payment of any back taxes, fees and/or penalties in connection with the Williamson Act Cancellation, shall be at Seller's sole cost and expense.  Seller agrees to cooperate fully with Buyer's efforts in carrying out the Williamson Act Cancellation; notwithstanding the foregoing, the parties agree that Seller shall have the right to request formal review of the assessed value of

26

the Property with the Santa Clara County Assessor. The parties further agree that the Williamson Act Cancellation shall be a condition precedent to Buyer's obligation to close Escrow.

13.27 Calculation of Time Periods. Unless otherwise specified, in computing any period of time described herein, the day of the act or event after which the designated period of time begins to run is not to be included and the last day of the period so computed is to be included, unless such last day is a Saturday, Sunday or legal holiday for national banks in the location where the Property is located, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday or legal holiday. The last day of any period of time described herein shall be deemed to end at 5:00 p.m. Pacific time

*(The remainder of this page is left intentionally blank; signatures follow on next page.)*

27

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates and year set forth under their respective signatures.

SELLER:

_John H. Bellicitti_

John H. Bellicitti, Trustee of the John and Monica
Bellicitti 2015 Revocable Trust under Trust
Agreement dated July 9, 2015, as amended, FBO
John H. Bellicitti as his sole and separate property

Dated: _OCT 16, 2018_

_John H. Bellicitti_

John H. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997, as amended FBO John H. Bellicitti

Dated: _OCT 16, 2018_

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Mary F. Driggs 2012
Separate Property Trust under Trust Agreement
dated July 17, 2012, as amended

Dated: _10 - 16 -18_

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997, as amended, FBO Mary F. Driggs

Dated: _10 -16 -18_

*(Remainder of this page is left intentionally blank; more signatures follow on next page.)*

28

_Robert J. Bellicitti_

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated July
9, 2015, as amended, FBO Robert J. Bellicitti, as his
sole and separate property

Dated: _10-16-18_

_Robert J. Bellicitti_

Robert J. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997 as amended FBO Robert J. Bellicitti

Dated: _10-16-18_

_Harry L. Bellicitti JR._

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust under
Trust Agreement dated July 8, 2015, as amended,
FBO Harry L. Bellicitti, Jr. as his sole and separate
property

Dated: _10-17-18_

_Harry L. Bellicitti Jr._

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement date
April 16, 1997, as amended, FBO Harry L.
Bellicitti, Jr.

Dated: _10-17-18_

*(Remainder of this page is left intentionally blank; more signatures follow on next page.)*

29

BUYER:

Dutchints Development LLC,
a California limited liability company

By: _____

Its: Managing Director

Dated: 10/18/18

Subject to the Escrow General Provisions of First American Title
Company attached hereto.
 Acknowledged and agreed to:

FIRST AMERICAN TITLE COMPANY

By: _____ Jeanne Bedford
Its: Escrow Officer
Dated: 10/19/18

30

Receipt of these provisions deems acceptance of the terms.  Please read for general information about the escrow process.

## 1. SPECIAL DISCLOSURES:
### A. DEPOSIT OF FUNDS & DISBURSEMENTS
Unless directed in writing to establish a separate, interest-bearing account together with all necessary taxpayer reporting information, all funds shall be deposited in general escrow accounts in a federally insured financial institution including those affiliated with Escrow Holder ("depositories"). All disbursements shall be made by Escrow Holder's check or by wire transfer unless otherwise instructed in writing. The Good Funds Law (California Insurance Code 12413.1) mandates that Escrow Holder may not disburse funds until the funds are, in fact, available in Escrow Holder's account. Wire transfers are immediately disbursable upon confirmation of receipt. Funds deposited by a cashier's or certified check are generally available on the next banking day following deposit. Funds deposited by a personal check and other types of instruments may not be available until confirmation from Escrow Holder's bank which can vary from 2 to 10 days.
### B. DISCLOSURE OF POSSIBLE BENEFITS TO ESCROW HOLDER
As a result of Escrow Holder maintaining its general escrow accounts with the depositories, Escrow Holder may receive certain financial benefits such as an array of bank services, accommodations, loans or other business transactions from the depositories ("collateral benefits").  All collateral benefits shall accrue to the sole benefit of Escrow Holder and Escrow Holder shall have no obligation to account to the parties to this escrow for the value of any such collateral benefits.
### C. MISCELLANEOUS FEES
Escrow Holder may incur certain additional costs on behalf of the parties for services performed, or fees charged, by third parties. The fees charged by Escrow Holder for services including, but not limited to, wire transfers, overnight delivery/courier services, etc. may include a mark up over the direct cost of such services to reflect the averaging of direct, administrative and overhead charges of Escrow Holder for such services which shall, in no event, exceed $10 for each markup.
### D. METHOD TO DELIVER PAYOFF TO LENDERS/LIENHOLDERS
To minimize the amount of interest due on any existing loan or lien, Escrow Holder will deliver the payoff funds to the lender/lienholder as soon as Escrow Holder is able after confirmation of recordation/close of escrow and as demanded by the lender/lienholder using (a) personal delivery, (b) wire transfer, or (c) overnight delivery service, unless otherwise directed in writing by the affected party.  Certain payments such as home equity line of credit payoffs ("HELOCS") may require additional time to process.

## 2. "CLOSE OF ESCROW"/PRORATIONS & ADJUSTMENTS
The term "close of escrow" means the date on which documents are recorded. All prorations and/or adjustments shall be made to the close of escrow based on the number of actual days, unless otherwise instructed in writing.

## 3. CONTINGENCY PERIODS
Escrow Holder shall not be responsible for monitoring contingency time periods between the parties. The parties shall execute such documents as may be requested by Escrow Holder to confirm the status of any such periods.

## 4. REPORTS
a.  Preliminary Report -Escrow Holder has neither responsibility nor liability for any title search that may be performed in connection with the issuance of a preliminary report.
b.  Other Reports-As an accommodation, Escrow Holder may agree to transmit orders for inspection, termite, disclosure and other reports if requested, in writing or orally, by the parties or their agents. Escrow Holder shall deliver copies of any such reports as directed. Escrow Holder is not responsible for reviewing such reports or advising the parties of the content of same.

## 5. INFORMATION FROM AFFILIATED COMPANIES
Escrow Holder may provide the parties' information to and from its affiliates in connection with the offering of products and services from these affiliates.

**THIS COMPANY CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY ISSUED BY THE STATE OF CALIFORNIA DEPARTMENT OF INSURANCE.**
© 2014 First American Title Insurance Company and/or its affiliates.                                                                    Page 1 of 4
All rights reserved. ▼ NYSE: FAF

## 6. RECORDATION OF DOCUMENTS
Escrow Holder is authorized to record documents delivered through escrow which are necessary or proper for the issuance of the requested title insurance policy(ies). Buyer will provide a completed Preliminary Change of Ownership Report form ("PCOR"). If Buyer fails to provide the PCOR, Escrow Holder shall close escrow and charge Buyer any additional fee incurred for recording the documents without the PCOR. Escrow Holder is released from any liability in connection with same.

## 7. PERSONAL PROPERTY TAXES
No examination, UCC search, insurance as to personal property and/or the payment of personal property taxes is required unless otherwise instructed in writing.

## 8. REAL PROPERTY TAXES
Real property taxes are prorated based on the most current available tax statement from the tax collector's office. Supplemental taxes may be assessed as a result of a change in ownership or completion of construction. Adjustments due either party based on the actual new tax bill issued after close of escrow or a supplemental tax bill will be made by the parties outside of escrow and Escrow Holder is released of any liability in connection with such adjustments. The first installment of California real property taxes is due November 1st (delinquent December 10th) and the second installment is due February 1st (delinquent April 10th). If a tax bill is not received from the County at least 30 days prior to the due date, buyer should contact the County Tax Collector's office and request one. Escrow Holder is not responsible for same.

## 9. CANCELLATION OF ESCROW
a.   Any party desiring to cancel this escrow shall deliver written notice of cancellation to Escrow Holder. Within a reasonable time after receipt of such notice, Escrow Holder shall send by regular mail to the address on the escrow instructions, one copy of said notice to the other party(ies). Unless written objection to cancellation is delivered to Escrow Holder by a party within 10 days after date of mailing, Escrow Holder is authorized, at its option, to comply with the notice and terminate the escrow. If a written objection is received by Escrow Holder, Escrow Holder is authorized, at its option, to hold all funds and documents in escrow (subject to the Funds Held in Escrow fee) and to take no other action until otherwise directed by either the parties' mutual written instructions or a final order of a court of competent jurisdiction. If no action is taken on this escrow within 6 months after the closing date specified in the escrow instructions, Escrow Holder's obligations shall, at its option, terminate. Upon termination of this escrow, the parties shall pay all fees, charges and reimbursements due to Escrow Holder and all documents and remaining funds held in escrow shall be returned to the parties depositing same.
b.   Notwithstanding the foregoing, upon receipt of notice of cancellation by a seller in a transaction subject to the Home Equity Sales Contract law (CC §1695 et seq.), Escrow Holder shall have the right to unilaterally cancel the escrow and may return all documents and funds without consent by or notice to the buyer.

## 10. CONFLICTING INSTRUCTIONS & DISPUTES
If Escrow Holder becomes aware of any conflicting demands or claims concerning this escrow, Escrow Holder shall have the right to discontinue all further acts on Escrow Holder's part until the conflict is resolved to Escrow Holder's satisfaction. Escrow Holder has the right at its option to file an action in interpleader requiring the parties to litigate their claims/rights. If such an action is filed, the parties jointly and severally agree (a) to pay Escrow Holder's cancellation charges, costs (including the Funds Held in Escrow fee) and reasonable attorneys' fees, and (b) that Escrow Holder is fully released and discharged from all further obligations under the escrow.  If an action is brought involving this escrow and/or Escrow Holder, the party(ies) involved in the action agree to indemnify and hold the Escrow Holder harmless against liabilities, damages and costs incurred by Escrow Holder (including reasonable attorneys' fees and costs) except to the extent that such liabilities, damages and costs were caused by the negligence or willful misconduct of Escrow Holder.

## 11. FUNDS HELD IN ESCROW
When funds remain in escrow over 90 days after either close of escrow or estimated close of escrow, a monthly holding fee of $25 shall be imposed by Escrow Holder that is to be charged against the funds held.

## 12. USURY
Escrow Holder is not to be concerned with usury as to any loans or encumbrances in this escrow and is hereby released of any responsibility and/or liability therefore.

**THIS COMPANY CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY ISSUED BY THE STATE OF CALIFORNIA DEPARTMENT OF INSURANCE.**
© 2014 First American Title Insurance Company and/or its affiliates.
All rights reserved. ▼ NYSE: FAF

## 13. AMENDMENTS TO ESCROW INSTRUCTIONS

Any amendment to the escrow instructions must be in writing, executed by all parties and accepted by Escrow Holder. Escrow Holder may, at its sole option, elect to accept and act upon oral instructions from the parties. If requested by Escrow Holder the parties agree to confirm said instructions in writing as soon as practicable. The escrow instructions as amended shall constitute the entire escrow agreement between the Escrow Holder and the parties hereto with respect to the subject matter of the escrow.

## 14. FIRE, HAZARD OR LIABILITY INSURANCE POLICIES

In all matters relating to fire, hazard or liability insurance, Escrow Holder may assume that each policy is in force and that the necessary premium has been paid. Escrow Holder is not responsible for obtaining fire, hazard or liability insurance, unless Escrow Holder has received specific written instructions to obtain such insurance prior to close of escrow from the parties or their respective lenders.

## 15. COPIES OF DOCUMENTS; ELECTRONIC SIGNATURES; AUTHORIZATION TO RELEASE

Escrow Holder is authorized to rely upon copies of documents, which include facsimile, electronic, NCR, or photocopies as if they were an originally executed document. Escrow Holder may agree to accept electronically signed documents from a platform or program approved by Escrow Holder. If requested by Escrow Holder, the originals of such documents and/or original signatures shall be delivered to Escrow Holder. Escrow Holder may withhold documents and/or funds due to the party until such originals are delivered. Documents to be recorded MUST contain original signatures. Escrow Holder may furnish copies of any and all documents to the lender(s), real estate broker(s), attorney(s) and/or accountant(s) involved in this transaction upon their request. Delivery of documents by escrow to a real estate broker or agent who is so designated in the purchase agreement shall be deemed delivery to the principal.

## 16. EXECUTION IN COUNTERPART

The escrow instructions and any amendments may be executed in one or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute the same instruction.

## 17. TAX REPORTING, WITHHOLDING & DISCLOSURE

The parties are advised to seek independent advice concerning the tax consequences of this transaction, including but not limited to, their withholding, reporting and disclosure obligations. Escrow Holder does not provide tax or legal advice and the parties agree to hold Escrow Holder harmless from any loss or damage that the parties may incur as a result of their failure to comply with federal and/or state tax laws. *WITHHOLDING OBLIGATIONS ARE THE EXCLUSIVE OBLIGATIONS OF THE PARTIES. ESCROW HOLDER IS NOT RESPONSIBLE TO PERFORM THESE OBLIGATIONS UNLESS ESCROW HOLDER AGREES IN WRITING.*

### A. TAXPAYER IDENTIFICATION NUMBER REPORTING

Federal law requires Escrow Holder to report seller's social security number or tax identification number (both numbers are hereafter referred to as the "TIN"), forwarding address, and the gross sales price to the Internal Revenue Service ("IRS"). To comply with the USA PATRIOT Act, certain taxpayer identification information (including, but not limited to, the TIN) may be required by Escrow Holder from certain persons or entities involved (directly or indirectly) in the transaction prior to closing.

Escrow cannot be closed nor any documents recorded until the information is provided and certified as to its accuracy to Escrow Holder. The parties agree to promptly obtain and provide such information as requested by Escrow Holder.

### B. STATE WITHHOLDING & REPORTING

In accordance with Section 18662 of the Revenue and Taxation Code (R&TC), a buyer may be required to withhold an amount equal to 3 1/3% (.0333) of the sale price, or an optional gain on sale withholding amount certified by the seller in the case of a disposition of California real property interest by either:

1. A seller who is an individual, trust, estate, or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the sellers.

2. A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California property.

**THIS COMPANY CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY ISSUED BY THE STATE OF CALIFORNIA DEPARTMENT OF INSURANCE.**
© 2014 First American Title Insurance Company and/or its affiliates.    Page 3 of 4
All rights reserved. ▼ NYSE: FAF

The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).

However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if any of the following applies:

1.   The sale price of the California real property conveyed does not exceed one hundred thousand dollars ($100,000).

2.   The seller executes a written certificate under the penalty of perjury certifying that the seller is a corporation with a permanent place of business in California.

3.   The seller, who is an individual, trust, estate, or a corporation without a permanent place of business in California, executes a written certificate under the penalty of perjury of any of the following:

a.   The California real property being conveyed is the seller's or decedent's principal residence (within the meaning of Section 121 of the Internal Revenue Code (IRC)).

b.   The last use of the property being conveyed was by the transferor as the transferor's principal residence (within the meaning of IRC Section 121).

c.   The California real property being conveyed is, or will be, exchanged for property of like kind (within the meaning of IRC Section 1031), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under IRC Section 1031.

d.   The California real property has been compulsorily or involuntarily converted (within the meaning of IRC Section 1033) and the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under IRC Section 1033.

e.   The California real property transaction will result in a loss or net gain not required to be recognized for California income tax purposes.

The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

Contact FTB:   For additional information regarding California withholding or for the Alternative Withholding, contact the Franchise Tax Board at (toll free) 888-792-4900), by e-mail WSCS.GEN@ftb.ca.gov; or visit their website at www.ftb.ca.gov.

### C.  FEDERAL WITHHOLDING & REPORTING

Certain federal reporting and withholding requirements exist for real estate transactions where the seller (transferor) is a non-resident alien, a non-domestic corporation, partnership, or limited liability company; or a domestic corporation, partnership or limited liability company controlled by non-residents; or non-resident corporations, partnerships or limited liability companies.

### D.  TAXPAYER IDENTIFICATION DISCLOSURE

Federal and state laws require that certain forms include a party's TIN and that such forms or copies of the forms be provided to the other party and to the applicable governmental authorities.  Parties to a real estate transaction involving seller-provided financing are required to furnish, disclose, and include the other party's TIN in their tax returns.  Escrow Holder is authorized to release a party's TINs and copies of statutory forms to the other party and to the applicable governmental authorities in the foregoing circumstances.  The parties agree to hold Escrow Holder harmless against any fees, costs, or judgments incurred and/or awarded because of the release of their TIN as authorized herein.

**THIS COMPANY CONDUCTS ESCROW BUSINESS UNDER CERTIFICATE OF AUTHORITY ISSUED BY THE STATE OF CALIFORNIA DEPARTMENT OF INSURANCE.**
© 2014 First American Title Insurance Company and/or its affiliates.                                                       Page 4 of 4
All rights reserved. ▼ NYSE: FAF

# EXHIBIT "A"

## LEGAL DESCRIPTION

Real property in the City of Saratoga, County of Santa Clara, State of California , described as follows:

PARCEL ONE:

Lot(s) 1, Tract No. 549 Rinconada Acres, filed September 8, 1948 in Book 20 of Maps, at page(s) 20, Santa Clara County Records.

PARCEL TWO:

Beginning at the point of intersection of the North line of a road with the center line of the Quito Road and from which a witness post in the West line of said Quito Road, bears North 89° 28' West 30 links, a distant and thence running along the North line of the first mentioned Road (the same being the Northerly line of lands conveyed to P.S. Langford by Deed recorded in Book 34 of Deeds, page 41, records of Santa Clara County, California) North 89° 28' West 24-15 chains to a picket marked D.D.9 from which a five oak tree marked B.Y.D.D.9 bears North 9° East 75 links distant and being the Southeast corner of lands conveyed to Henry Hutton by Deed recorded in Book 16 of Deeds, page 479, records of Santa Clara County, California; thence North 0° 40' East 8.84 chains along the East line of land formerly of Henry Hutton; thence South 89° 28' East 21.40 chains to the center line of Quito Road; thence South 5° 20' East 2.22 chains, South 22° 15' East 6.08 chains and South 7° East 1.03 chains to the place of beginning, and being a portion of the Quito Ranch.

Excepting therefrom so much thereof as contained in that Final Order and Decree of Condemnation recorded April 26, 1960 in Book 4775 Official Records, page 604, as follows:

Beginning at a 1 inch iron pipe set at the Southwesterly corner of Tract No. 549, a Map of which is recorded in Book 20 of Maps, page 20, Santa Clara County Records; thence along a Southerly line of Tract No. 549, South 89° 28' East 754.11 feet to a 3/4 inch iron pipe; thence South 0° 45' West 581.30 feet to a 3/4 inch iron pipe set in the Northerly line of Sobey Road (40 feet wide) as described in Deed recorded in Book 750, page 328 and 329, Official Records of Santa Clara County; thence along said line of Sobey Road, North 89° 15' West 59.79 feet to the Easterly corner of that certain 0.0345 acre tract conveyed to County of Santa Clara by Deed recorded in Book 2655, page 427 Official Records of Santa Clara County; thence along the boundaries of said 0.0345 acre tract, North 86° 23' West 200.25 feet and South 85° 02' West 100.50 feet to a point in said Northerly line of Sobey Road; thence along said Northerly line of Sobey Road, North 89° 15' West 393.67 feet to a 3/4 inch iron pipe in the Westerly line of that certain 20-acre tract conveyed to A. and Isabelle Bellicitti by Deed recorded in Book 1247, page 384, Official Records of Santa Clara County; thence along said Westerly line of said 20 acre tract, North 0° 41' 10" East 578.45 feet to the point of beginning.

APN: 397-02-110 and 397-02-111

31

## EXHIBIT "B"

## MEMORANDUM

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

_____

_____

_____

_____

## MEMORANDUM OF AGREEMENT

NOTICE IS HEREBY GIVEN as of this ___ day of _____, 20___, that pursuant to that certain Agreement of Purchase and Sale and Joint Escrow Instructions dated as of _____, 20___, between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti; Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs; Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively, "**Seller**"), and Dutchints Development LLC, a California limited liability company ("**Buyer**"), dated as of _____, 20___ (the "**Purchase Agreement**"), Seller has agreed to sell to Buyer that certain real property (the "Property") described on <u>Exhibit "A"</u> attached hereto and incorporated herein for all purposes and Buyer has agreed to purchase the Property, all on the terms and conditions more particularly set forth in the Purchase Agreement.

Seller and Buyer are executing and recording this Memorandum of Agreement so that third parties shall have notice of Buyer's agreement to purchase the Property and Seller's agreement to sell the Property to Buyer.

This Memorandum of Agreement may be executed in any number of identical counterparts and each counterpart shall be deemed to be an original document. All executed counterparts together shall constitute one and the same document and any counterpart signature pages may be detached and assembled to form a single original document.

[SIGNATURES FOLLOW ON NEXT PAGE]

32

IN WITNESS WHEREOF, this Memorandum of Agreement is effective as of this _____ day of _____, _____.

**SELLER:**

_____
John H. Bellicitti, Trustee of the John and Monica
Bellicitti 2015 Revocable Trust under Trust
Agreement dated July 9, 2015, as amended, FBO
John H. Bellicitti as his sole and separate property

_____
John H. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997, as amended FBO John H. Bellicitti

_____
Mary F. Driggs, Trustee of the Mary F. Driggs 2012
Separate Property Trust under Trust Agreement
dated July 17, 2012, as amended

_____
Mary F. Driggs, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997, as amended, FBO Mary F. Driggs

_____
Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated July
9, 2015, as amended, FBO Robert J. Bellicitti, as his
sole and separate property

*(Remainder of this page is left intentionally blank; more signatures follow on next page.)*

33

Robert J. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997 as amended FBO Robert J. Bellicitti

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust under
Trust Agreement dated July 8, 2015, as amended,
FBO Harry L. Bellicitti, Jr. as his sole and separate
property

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement date
April 16, 1997, as amended, FBO Harry L.
Bellicitti, Jr.

**BUYER:**

Dutchints Development LLC,
a California limited liability company

By: Vahe Tashjian
Its: Manager
Dated: _____

**[NOTARY ACKNOWLEDGEMENTS FOLLOW]**

34

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA      )
                               ) ss.

COUNTY OF _____   )

      On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

35

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
) ss.
COUNTY OF _____ )

On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

36

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA       )
                                  ) ss.

COUNTY OF _____   )

    On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

37

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
                             ) ss.
COUNTY OF _____ )

        On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

38

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                           ) ss.
COUNTY OF _____  )

On _____, 201__, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

39

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA    )
                         ) ss.
COUNTY OF _____   )

    On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Case: 21-51255     Doc# 255-1   Filed 09/22/2022   Entered 09/22/2022 15:10:18   Page 48 of 100

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA       )
                                      ) ss.
COUNTY OF _____  )

On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

41

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
                          ) ss.
COUNTY OF _____ )

    On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )
                               ) ss.

COUNTY OF _____    )

On _____, 201__, before me, _____,
Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

43

Exhibit "A"

Property Legal Description

EXHIBIT "C"

## TERMINATION OF MEMORANDUM

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

_____
_____
_____

## TERMINATION OF MEMORANDUM OF AGREEMENT

REFERENCE is hereby made to that certain Memorandum of Agreement dated as of _____, 20___ and recorded on _____, _____ in the Official Records of Santa Clara County, California as Instrument No. _____ (the "**Memorandum of Agreement**"), which instrument was executed to memorialize certain rights acquired by Dutchints Development LLC, a California limited liability company ("Dutchints"), pursuant to that certain Agreement for Purchase and Sale and Joint Escrow Instructions between Dutchints and John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti; Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs; Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under  Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively, "**Seller**"), dated as of _____, 20___ (the "**Purchase Agreement**"), relating to the purchase of that certain real property (the "Property") more particularly described on **Exhibit "A"** attached hereto and incorporated herein for all purposes.

NOTICE IS HEREBY GIVEN that as of the date hereof, the Purchase Agreement has terminated and shall be of no further force or effect and the undersigned hereby quitclaims any interest it may have in the Property pursuant to the Purchase Agreement as evidenced in the Memorandum of Agreement.

[remainder of page is intentionally blank – signatures follow on next page]

IN WITNESS WHEREOF, this Termination of Memorandum of Agreement is effective as of this ____ day of _____, _____.

Dutchints Development LLC, a California limited liability company

By:_____
 Name: Vahe Tashjian
 Title: Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
 ) ss.
COUNTY OF _____ )

On _____, 201__, before me, _____, Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Exhibit "A"

Property Legal Description

47

## EXHIBIT "D"

## PROPERTY RELATED DOCUMENTS

1. Any title reports, zoning reports, and surveys of the Property in Seller's possession.

2. Any soils reports and any environmental reports for the Property in Seller's possession.

3. Any conditions, covenants and restrictions ("CC&Rs"), reciprocal access agreements, or use restrictions affecting the Property.

4. Real property tax bills for the Property for the past two years.

5. The operating budget for the Property for the current year and preceding two (2) years.

6. Any notices of violation of any Applicable Laws with respect to the Property or any improvements thereon known to Seller, and any lawsuits, investigations, inquiries, actions or other proceedings affecting the Property or any improvements thereon known to Seller, including any matters affecting the right to use and occupy the Property or any mechanics' or materialmen's liens.

48

# EXHIBIT 2

## FIRST AMENDMENT TO AND REINSTATEMENT OF
## AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS

THIS FIRST AMENDMENT TO AND REINSTATEMENT OF AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS (this "**First Amendment**") is made and entered into as of December 4, 2018 (the "**First Amendment Date**") by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti ("Robert"); and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. ("Harry") (collectively, "Seller"), and Dutchints Development LLC, a California limited liability company ("**Buyer**"), with reference to the following:

### RECITALS:

A.    Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018 (the "**Purchase Agreement**"). All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement; and

B.    The Purchase Agreement was terminated pursuant to a notice of termination delivered to Seller on December 3, 2018.

C.    Seller and Buyer have agreed to enter into this First Amendment to reinstate the Purchase Agreement and to otherwise set forth their agreement regarding the matters set forth herein.

### AGREEMENT:

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.    Purchase Agreement Reinstatement.  The Purchase Agreement is hereby reinstated subject to the terms and conditions of this First Amendment.

2.    Approval Date Extension.  Anything to the contrary in the Purchase Agreement notwithstanding, the Approval Date is hereby extended to December 18, 2018.

Case: 21-51255    Doc# 253-1 Filed 09/22/2022 Entered 09/22/2022 15:10:18 Page 58 of 100

3.    <u>Purchase Agreement Ratified</u>.  In all other respects, except as otherwise provided by this First Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

4.    <u>Counterparts</u>.  This First Amendment may be executed in counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument.  Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

**[SIGNATURES FOLLOW ON NEXT PAGE]**

**IN WITNESS WHEREOF,** the parties have executed this First Amendment to be effective as of the First Amendment Date.

<u>**SELLER:**</u>

*John H. Bellicitti*

John H. Bellicitti, Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

*John H. Bellicitti*

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

*Mary F. Driggs*

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

*Mary F. Driggs*

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

Purchase Agreement First Amendment v1.doc

*(signature)*

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated July
9, 2015, as amended, FBO Robert J. Bellicitti, as his
sole and separate property

*(signature)*

Robert J. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997 as amended FBO Robert J. Bellicitti

*(signature)*

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust under
Trust Agreement dated July 8, 2015, as amended,
FBO Harry L. Bellicitti, Jr. as his sole and separate
property

*(signature)*

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement date
April 16, 1997, as amended, FBO Harry L.
Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a California
limited liability company

By: _____

Name: _____Vahe Tashjian_____

Title: _____Managing Director_____

Purchase Agreement First Amendment v1.doc

# EXHIBIT 3

**SECOND AMENDMENT TO**

**AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS**

THIS **SECOND AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this "**Second Amendment**") is made and entered into as of December 14, 2018 (the "**Second Amendment Date**") by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti ("Robert"); and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. ("Harry") (collectively, "**Seller**"), and Dutchints Development LLC, a California limited liability company ("**Buyer**"), with reference to the following:

**RECITALS:**

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018 and that certain First Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 4, 2108 (collectively, the "**Purchase Agreement**"). All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement; and

B.      Seller and Buyer have agreed to enter into this Second Amendment to set forth their agreement regarding the matters set forth herein.

**AGREEMENT:**

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.      Approval Date Extension. Anything to the contrary in the Purchase Agreement notwithstanding, the Approval Date is hereby extended to January18, 2019.

2.      Purchase Agreement Ratified. In all other respects, except as otherwise provided by this Second Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

1

3.    Counterparts.  This Second Amendment may be executed in counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument.  Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

**[SIGNATURES FOLLOW ON NEXT PAGE]**

Purchase Agreement Second Amendment v1.doc

**IN WITNESS WHEREOF,** the parties have executed this Second Amendment to be effective as of the Second Amendment Date.

<u>**SELLER:**</u>

John H. Bellicitti, Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

_(signature)_

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated July
9, 2015, as amended, FBO Robert J. Bellicitti, as his
sole and separate property

_(signature)_

Robert J. Bellicitti, Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April
16, 1997 as amended FBO Robert J. Bellicitti

_(signature)_

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust under
Trust Agreement dated July 8, 2015, as amended,
FBO Harry L. Bellicitti, Jr. as his sole and separate
property

_(signature)_

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement date
April 16, 1997, as amended, FBO Harry L.
Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a California
limited liability company

By: _(signature)_
Name: ___Vahe Tashjian___
Title: ___Managing Director___

# EXHIBIT 4

DocuSign Envelope ID: 86FFE124-75C4-4FD1-BE05-3D4A900BD6D3

# THIRD AMENDMENT TO
# AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS

**THIS THIRD AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this "**Third Amendment**") is made and entered into as of January ___, 2019 (the "**Third Amendment Date**") by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under  Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti ("Robert"); and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. ("Harry") (collectively, "**Seller**"), and Dutchints Development LLC, a California limited liability company ("**Buyer**"), with reference to the following:

## RECITALS:

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018, that certain First Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 4, 2018, and that certain Second Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 14, 2018 (collectively, the "**Purchase Agreement**").  All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement; and

B.      Seller and Buyer have agreed to enter into this Third Amendment to set forth their agreement regarding the matters set forth herein.

## AGREEMENT:

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.      <u>Approval Date Extension.</u>  It is hereby acknowledged that Buyer will be conducting more seismic studies on the Property to determine the feasibility of developing the Project, including, without limitation, preparing a trench on the Property approximately, eight (8) feet deep, thirty (30) inches wide and four hundred (400) meters long (collectively, the "Seismic Studies"), and that any such Seismic Studies on the Property shall be conducted at Buyer's sole cost and expense.  It is anticipated that the Seismic Studies will take up to four (4) months to

1

DocuSign Envelope ID: 86FFE124-75C4-4FD1-BE05-3D4A900BD6D3

complete. Anything to the contrary in the Purchase Agreement notwithstanding, the Approval Date is hereby extended to the earlier of (i) the date which is five (5) business days after the date Buyer receives the final written results of the Seismic Studies and (ii) May 17, 2019.

      2.    <u>Purchase Price Modification</u>. Section 2 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> "2.    <u>Purchase Price</u>. The purchase price for the Property (the "**Purchase Price**") shall be equal to the sum of One Million Six Hundred Thousand Dollars ($1,600,000) for each developable legal parcel on the Tentative Map (as defined below); provided however, that the aggregate Purchase Price for the entire Property shall not be less than Nine Million Six Hundred Thousand Dollars ($9,600,000) or more than Fourteen Million Four Hundred Thousand Dollars ($14,400,000)."

      3.    <u>Entitlement Activities Modification</u>. The first sentence of Section 13.22 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> "Seller agrees that, prior to the Closing Date, Buyer shall have the right to engage in various activities (collectively, the "**Entitlement Activities**") for the purpose of applying for, processing and obtaining from all governmental and quasi-governmental authorities at the federal, state and local level having jurisdiction over the Property, Final Approval (as defined below) of any entitlements, approvals, and permits (collectively, the "**Entitlements**") necessary and appropriate for Buyer's intended subdivision of the Property into a project consisting of no less than six (6) and no more than nine (9) one (1) acre parcel single family residences (collectively, the "**Project**"), including, without limitation, the approval of a Tentative Map (a defined below) and a final subdivision map (the "**Final Map**"); provided, however, that Buyer shall use commercially reasonable efforts to maximize the number of developable one (1) acre legal parcels on the Tentative Map."

      4.    <u>Purchase Agreement Ratified</u>. In all other respects, except as otherwise provided by this Third Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

      5.    <u>Counterparts</u>. This Third Amendment may be executed in counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument. Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

**[SIGNATURES FOLLOW ON NEXT PAGE]**

**IN WITNESS WHEREOF,** the parties have executed this Third Amendment to be effective as of the Third Amendment Date.

**SELLER:**

DocuSigned by:

*John H Bellicitti*

D5309BD2B0534CD...

John H. Bellicitti, Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

DocuSigned by:

*John H Bellicitti*

D5309BD2B0534CD...

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

DocuSigned by:

*Mary F. Driggs*

DF1A4936EA8C46F...

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

DocuSigned by:

*Mary F. Driggs*

DF1A4936EA8C46F...

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

DocuSign Envelope ID: 86FFE124-75C4-4FD1-BE05-3D4A900BD6D3



Robert J. Bellicitti, Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property



Robert J. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti

Harry L. Bellicitti, Jr., Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property

Harry L. Bellicitti, Jr., Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr.


**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a California limited liability company


By: _____
Name:   Vahe Tashjian
Title:    Managing Director

# EXHIBIT 5

# FOURTH AMENDMENT TO
## AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS

**THIS FOURTH AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this **"Fourth Amendment"**) is made and entered into as of March 31, 2020 (the **"Fourth Amendment Date"**) by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robeli J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively, **"Seller"**), and Dutchints Development LLC, a California limited liability company ("Buyer"), with reference to the following:

## RECITALS:

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018, that certain First Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 4, 2018, that certain Second Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 14, 2018 and that certain Third Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of January 18, 2019 (collectively, the **"Purchase Agreement"**). All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement; and

B.      Seller and Buyer have agreed to enter into this Fourth Amendment to set forth their agreement regarding the matters set forth herein.

## AGREEMENT:

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.      <u>Tolling of Deadlines.</u>  Buyer and Seller hereby acknowledge that the city

Case: 21-51255    Doc# 255-1    Filed: 09/22/2022    Entered: 09/22/2022 15:10:18    Page 36 of 88

offices for the City of Saratoga, California have been closed since March 16, 2020 due to a shelter in place order issued on such date in connection with the Covid-19 pandemic, and that entitlement processing for the Property has been stalled. Therefore, the parties hereby agree to toll all deadlines in the Purchase Agreement commencing as of March 16, 2020. Accordingly, all Purchase Agreement deadlines shall be extended one (1) day for each day that the shelter in place order is in effect for the City of Saratoga, California commencing on March 16, 2020.

      2.      <u>Purchase Agreement Ratified.</u> In all other respects, except as otherwise provided by this Fourth Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

      3.      <u>Counterparts.</u> This Fourth Amendment may be executed in identical counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument. Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

### [SIGNATURES FOLLOW ON NEXT PAGE]

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate propeliy

Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

*Harry L. Bellicitti Jr.*

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

*Harry L. Bellicitti Jr.*

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company

By: _____
      Vahe Tashjian, Manager

**IN WITNESS WHEREOF,** the parties have executed this Fourth Amendment to be effective as of the Fourth Amendment Date.

**SELLER:**

John H. Bellicitti trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

*Robert Bellicitti*

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate propel iy

*Robert Bellicitti*

Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

_____

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

_____

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company

By:  _____

Vahe Tashjian, Manager

# EXHIBIT 6

# FIFTH AMENDMENT TO
# AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW
# INSTRUCTIONS

**THIS FIFTH AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this **"Fifth Amendment"**) is made and entered into effective as of June 30, 2020 (the **"Fifth Amendment Date"**) by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated Carol 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robe1i J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively, **"Seller"**), and Dutchints Development LLC, a California limited liability company **("Buyer")**, with reference to the following:

## RECITALS:

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018 (the **"Agreement"**), that certain First Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 4, 2018 (the **"First Amendment"**), that certain Second Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 14, 2018 (the **"Second Amendment"**), that certain Third Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of January 18, 2019 (the **"Third Amendment"**), and that certain Fourth Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of March 31, 2020 (the **"Fourth Amendment"**) (collectively, the **"Purchase Agreement").** All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement;

B.      Buyer and Seller acknowledge that, at the behest of Buyer, Seller exercised the right to extend the Closing Date pursuant to Section 3.4 of the Purchase Agreement on January 6, 2020, which extended the Closing Date to April 15, 2020; and

C.      Seller and Buyer have agreed to enter into this Fifth Amendment to set forth their agreement regarding the matters set forth herein.

# AGREEMENT:

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.  <u>Seller's Extensions of Closing Date.</u>  Buyer and Seller agree that Section 3.4 of the Purchase Agreement is hereby amended as follows:  In the first sentence, the phrase "an additional ninety (90) day period" is hereby deleted and replaced with the phrase "four (4) additional ninety (90) day periods"; in the second sentence, the phrase "its right" is hereby deleted and replaced with the phrase "each of its rights".

2.  <u>Tolling of Purchase Agreement Dates and Closing Date.</u>  Buyer and Seller hereby acknowledge and agree that, pursuant to Section 1 of the Fourth Amendment, all Purchase Agreement deadlines were tolled for the period from March 16, 2020, through and including June 11, 2020, for a total of eighty-eight (88) days, and that the Closing Date has thus been tolled to July 13, 2020.

3.  <u>Seller's Exercise of Extension of Closing Date.</u>  The parties hereby agree that, as of the Fifth Amendment Date, Seller shall exercise one of its rights to extend the Closing Date for an additional ninety (90) day period, through and including October 13, 2020; the parties acknowledge that Seller has two (2) additional ninety (90) day extension periods remaining after this exercise.

4.  <u>Purchase Agreement Ratified.</u>  In all other respects, except as otherwise provided by this Fifth Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

5.  <u>Counterparts.</u>  This Fifth Amendment may be executed in identical counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument.  Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

**[SIGNATURES FOLLOW ON NEXT PAGE]**

**IN WITNESS WHEREOF,** the parties have executed this Fifth Amendment to be effective as of the Fifth Amendment Date.

<u>**SELLER:**</u>

_John H. Bellicitti_

John H. Bellicitti trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

_John H. Bellicitti_

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

_Robert Bellicitti_
_____
Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate prope1iy

_Robert Bellicitti_
_____
Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

_____
Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

_____
Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company


By: _____
Vahe Tashjian, Manager

Robert J. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robe1i J. Bellicitti

Harry L. Bellicitti, Jr., Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property

Harry L. Bellicitti, Jr., Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a California limited liability company

# EXHIBIT 7

**SIXTH AMENDMENT TO AND REINSTATEMENT OF
AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW
INSTRUCTIONS**

**THIS SIXTH AMENDMENT TO AND REINSTATEMENT OF AGREEMENT
FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this **"Sixth
Amendment"**) is made and entered into effective November __, 2020 (the **"Sixth
Amendment Date"**) by and between John H. Bellicitti, as Trustee of the John and Monica
Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO
John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti
Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H.
Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property
Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry
L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO
Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable
Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robe1i J. Bellicitti, as
his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under
Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L.
Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under
Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and
separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust
Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively,
**"Seller"**), and Dutchints Development LLC, a California limited liability company
("Buyer"), with reference to the following:

**RECITALS:**

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale
and Joint Escrow Instructions dated as of October 18, 2018, that certain First Amendment to
and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated
as of December 4, 2018, that certain Second Amendment to Agreement for Purchase and
Sale and Joint Escrow Instructions dated as of December 14, 2018, that certain Third
Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of
January 18, 2019, that certain Fourth Amendment to Agreement for Purchase and Sale and
Joint Escrow Instructions dated as of March 31, 2020, and that certain Fifth Amendment to
Agreement for Purchase and Sale and Joint Escrow Instructions dated as of June 30, 2020
(collectively, the **"Purchase Agreement"**). All initially capitalized terms used herein, but
undefined herein, shall have the same meanings as ascribed thereto in the Purchase
Agreement; and

B.      The Purchase Agreement terminated in accordance with its terms on October 13,
2020.

C.      Seller and Buyer have agreed to enter into this Sixth Amendment to reinstate
the Purchase Agreement and to otherwise set forth their agreement regarding the matters set
forth herein.

# AGREEMENT:

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1. <u>Reinstatement of Purchase Agreement.</u> The Purchase Agreement is hereby reinstated subject to the terms and conditions set forth in this Sixth Amendment.

2. <u>Closing Date Extensions.</u> The parties acknowledge that Buyer has not obtained Final Approval of the Tentative Map (as both are defined in Section 13.23 of the Purchase Agreement) as of the Sixth Amendment Date. By entering into this Sixth Amendment, the parties agree that Buyer shall have the right to extend the Closing Date for two (2) additional ninety (90) day periods, starting from the Sixth Amendment Date. By executing this Sixth Amendment, Buyer herewith exercises its first right to extend the Closing Date (the "First Extension") to March 1, 2021 (the "First Extended Closing Date"); as a condition of the First Extension, Buyer shall deposit into escrow by wire transfer payable to Escrow Holder an additional Fifty Thousand and No/100ths Dollars ($50,000.00) (the "First Extension Deposit") within five (5) business days after the Sixth Amendment Date. Failure to timely deliver the First Extension Deposit shall render the First Extension null and void and shall be considered a material breach of the Purchase Agreement. Buyer may exercise its second right to extend the Closing Date (the "Second Extension") by providing written notice to Seller and Escrow Holder by no later than February 15, 2021 (the "Second Extension Notice"). Concurrently with delivery of the Second Extension Notice, and as a condition of the Second Extension, Buyer shall deposit into Escrow by wire transfer payable to Escrow Holder an additional Fifty Thousand and No/100 Dollars ($50,000.00) (the "Second Extension Deposit"). In the event the Second Extension Notice and Second Extension Deposit are timey delivered into Escrow, the Closing Date deadline shall extended to May 31, 2021. In the event the Second Extension Deposit is not delivered to Escrow Holder concurrently with delivery of the Second Extension Notice, the Second Extension Notice shall be of no force and effect. The First Extension Deposit and the Second Extension Deposit shall be immediately nonrefundable, and (subject to the prior recordation of the Memorandum of Agreement in the official records of Santa Clara County, California as provided in Section 2.1.4 of the Purchase Agreement) may be released to Seller immediately following Buyer's deposit thereof into Escrow upon Seller's request. The First Extension Deposit and the Second Extension Deposit shall be applied against the Purchase Price. All other rights to extend the Closing Date in the Purchase Agreement are hereby revoked. This Section 2 completely amends and restates Section 3.4 of the Purchase Agreement.

3. <u>Closing Date.</u> Section 3.2 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

"3.2 Closing Date. In the event Buyer timely delivers to Seller the First Extension Deposit, the Closing Date deadline shall be March 1, 2021, and in the event Buyer timely delivers to Seller the First Extension Deposit, the Second

Extension Notice and the Second Extension Deposit, the outside Closing Date deadline shall be May 31, 2021. Time is of the essence with respect to the Closing Date and all other provisions of the Purchase Agreement, as amended hereby."

4. <u>Removal of Barn.</u> Rather than require Seller to remove the Barn from the Property prior to Close of Escrow as provided under Section 13.24 of the Purchase Agreement, Buyer shall instead allow Seller to remove the Barn within one hundred twenty (120) days after Close of Escrow (the "Barn Removal Period"), subject to the following terms and conditions. Buyer shall grant to Seller and Seller's agents, servants, nominees, contractors, consultants, engineers, subcontractors, employees or other persons acting for or on behalf of Seller ("Seller's Representatives") the right to enter upon the Property during the Barn Removal Period for the sole purpose of removing the Barn from the Property, between the hours of 8:00 a.m. and 5:00 p.m., provided that Seller shall give Buyer at least two (2) business days' prior written notice before the entry of any person possessing mechanic's or materialmen's or other lien rights so as to allow Buyer to post the appropriate notices of non-responsibility. The removal of the Barn shall be performed at Seller's sole expense in a workmanlike manner in accordance with Applicable Laws. Seller shall, at its sole expense, repair any damage to the Property occurring as a result of or in any way connected with any entry by Seller or Seller's Representatives upon the Property, and Seller shall, at its sole expense, restore the Property to the same condition it was prior to Seller's entry upon the Property, except for the removal of the Barn. To ensure Seller's performance of the removal of the Barn as provided herein, the sum of One Hundred Fifty Thousand and No/100 Dollars ($150,000.00) (the "Barn Removal Holdback") shall be held back after the Close of Escrow in a separate escrow account; the Barn Removal Holdback shall either be (a) released to Seller upon completion of the removal of the Barn prior to the end of the Barn Removal Period, or (b) retained by Buyer if Seller does not complete the removal of the Barn prior to the end of the Barn Removal Period. Seller shall indemnify, protect, defend and hold Buyer, its employees, agents, successors, and assigns, and the Property free and harmless from and against any and all Claims (as defined in Section 10.3.1.1 of the Purchase Agreement) arising out of or in any way connected with any act or omission of Seller or any of Seller's agents, servants, contractors, consultants, engineers, subcontractors, employees or other persons acting for or on behalf of Seller on or about the Property while performing any activities related to removing such Barn improvements. Prior to entering onto the Property, Seller shall obtain, or cause its agents and representatives that will enter the Property in connection with the Barn removal pursuant to this Section 4 to obtain, (i) workers' compensation insurance in an amount and as otherwise required by applicable law and (ii) general liability insurance (including umbrella or excess policies) in the amount of at least $2,000,000,00 per occurrence, and at least $2,000,000 in the aggregate. The general liability insurance shall name Buyer as an additional insured. Upon request, Seller shall provide Buyer with proof of such insurance prior to commencing Barn removal activities on or about the Property. All provisions of Section 13.24 of the Purchase Agreement contrary to the terms and conditions set forth in this Section 4 are hereby revoked.

5. <u>Delivery of Reports if Close of Escrow Does Not Occur.</u> In the event that Close of Escrow does not occur for any reason other than Seller's default, then Buyer shall deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property, within five (5) days of Seller's written request. Any such studies or reports delivered by Buyer

to Seller shall be without representation or warranty from Buyer whatsoever and shall be subject to the rights of those persons who prepared same.

6. <u>Final Approval of Tentative Map No Longer a Condition.</u> The Purchase Agreement is hereby amended by deleting Section 13.23 thereof in its entirety.

7. <u>Purchase Agreement Ratified.</u> In all other respects, except as otherwise provided by this Sixth Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

8. <u>Counterparts.</u> This Sixth Amendment may be executed in identical counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument. Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

**[SIGNATURES FOLLOW ON NEXT PAGE]**

**IN WITNESS WHEREOF,** the parties have executed this Sixth Amendment to be effective as of the Sixth Amendment Date.

**SELLER:**

_John H. Bellicitti_

John H. Bellicitti trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

_John H. Bellicitti_

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

_Mary F. Driggs_

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

_Robert Bellicitti_
_____
Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate prope1iy

_Robert Bellicitti_
_____
Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

_____
Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

_____
Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company


By: _____
        Vahe Tashjian, Manager

_____
Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate propeliy

_____
Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

*Harry L. Bellicitti jr.*
Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

*Harry L. Bellicitti jr.*
Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.


**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company


By: _____
      Vahe Tashjian, Manager

# EXHIBIT 8

## SEVENTH AMENDMENT TO AGREEMENT FOR
## PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS

**THIS SEVENTH AMENDMENT TO AGREEMENT FOR PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS** (this **"Seventh Amendment"**) is made and entered into as of March 22, 2021 (the **"Seventh Amendment Date"**) by and between John H. Bellicitti, as Trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti ("John"); Mary F. Driggs, as Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs ("Mary"); Robert J. Bellicitti, as Trustee of the Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO Robert J. Bellicitti, as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997 as amended FBO Robert J. Bellicitti; and Harry L. Bellicitti, Jr., as Trustee, of The Harry and Carol Ann Bellicitti 2015 Revocable Trust under Trust Agreement dated July 8, 2015, as amended, FBO Harry L. Bellicitti, Jr. as his sole and separate property, and as Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement date April 16, 1997, as amended, FBO Harry L. Bellicitti, Jr. (collectively, **"Seller"**), and Dutchints Development LLC, a California limited liability company (**"Buyer''**), with reference to the following:

## RECITALS:

A.      Buyer and Seller entered into that certain Agreement for Purchase and Sale and Joint Escrow Instructions dated as of October 18, 2018, that certain First Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 4, 2018, that certain Second Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of December 14, 2018, that certain Third Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of January 18, 2019, that certain Fourth Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of March 31, 2020, that certain Fifth Amendment to Agreement for Purchase and Sale and Joint Escrow Instructions dated as of June 30, 2020, and that certain Sixth Amendment to and Reinstatement of Agreement for Purchase and Sale and Joint Escrow Instructions (the **"Sixth Amendment"**) dated as of December 2, 2020 (collectively, the **"Purchase Agreement"**). All initially capitalized terms used herein, but undefined herein, shall have the same meanings as ascribed thereto in the Purchase Agreement; and

B.      On Friday, February 12, 2021, Buyer's counsel delivered the Second Extension Notice by email to Seller's counsel, and advised Seller's counsel that Buyer would wire the Second Extension Deposit into Escrow on February 16, 2021, rather than on February 15, 2021 as provided in the Sixth Amendment due to the fact that February 15, 2021 was a bank holiday. Seller acquiesced to delivery of the Second Extension Notice by email alone.

C.        On Monday, February 22, 2021, Seller's counsel sent an email on behalf of Seller to Buyer, Buyer's counsel, and Escrow Holder advising that the Second Extension Deposit had not been wired into Escrow as of that date, taking the position that, pursuant to Paragraph 2 of the Sixth Amendment, the Second Extension Notice was of no force and effect, and that, pursuant to Paragraphs 2 and 3 of the Sixth Amendment, the Closing Date remained March 1, 2021, and demanding that Buyer proceed to the Close of Escrow pursuant to the terms of the Sixth Amendment.

D.        Subsequently, Seller learned that the City of Saratoga (the "City") would not continue to process the Entitlement Activities required by Buyer for the Project and for the Close of Escrow until Buyer had made a deposit of $40,000 to the City (the "City Entitlement Deposit").

E.        Seller and Buyer have now agreed to enter into this Seventh Amendment to set forth their agreement regarding the matters set forth herein.

## AGREEMENT:

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree to the following:

1.        <u>Delivery of Second Extension Deposit.</u>  The Purchase Agreement is hereby amended to provide that the Second Extension Deposit shall be delivered into Escrow no later than April 9, 2021.

2.        <u>Payment of City Entitlement Deposit.</u>  Buyer agrees to make the City Entitlement Deposit as soon as possible, but in any event no later than April 9, 2021; Buyer acknowledges that the processing of the Entitlement Activities required for the Project and the Close of Escrow cannot proceed until and unless Buyer makes the City Entitlement Deposit, which could materially delay the Close of Escrow.

3.        <u>Purchase Agreement Ratified.</u> In all other respects, except as otherwise provided by this Seventh Amendment, the undersigned hereby ratify and confirm the Purchase Agreement which remains in full force and effect.

4.        <u>Counterparts.</u> This Seventh Amendment may be executed in identical counterparts, each of which shall be deemed an original and all of said counterparts shall constitute but one and the same instrument.  Signatures delivered via facsimile or other electronic means shall have the same force and effect as a wet-ink original.

## [SIGNATURES FOLLOW ON NEXT PAGE]

**IN WITNESS WHEREOF,** the parties have executed this Seventh Amendment to be effective as of the Seventh Amendment Date.

**SELLER:**

_[signature]_

John H. Bellicitti trustee of the John and Monica Bellicitti 2015 Revocable Trust under Trust Agreement dated July 9, 2015, as amended, FBO John H. Bellicitti as his sole and separate property

_[signature]_

John H. Bellicitti, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended FBO John H. Bellicitti

_[signature]_

Mary F. Driggs, Trustee of the Mary F. Driggs 2012 Separate Property Trust under Trust Agreement dated July 17, 2012, as amended

_[signature]_

Mary F. Driggs, Trustee of the Harry L. Bellicitti Exempt Trust under Trust Agreement dated April 16, 1997, as amended, FBO Mary F. Driggs

**[SIGNATURES CONTINUE ON NEXT PAGE]**

_____

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate prope1iy


_____

Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robert
J. Bellicitti


_____

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property


_____

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.


**<u>BUYER:</u>**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company


By: _____

        Vahe Tashjian, Manager

*Robert Bellicitti*
_____
Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate prope1iy

*Robert Bellicitti*
_____
Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

_____
Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

_____
Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.

**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company

By: _____
      Vahe Tashjian, Manager

_____

Robert J. Bellicitti, Trustee of the Bellicitti 2015
Revocable Trust under Trust Agreement dated
July 9, 2015, as amended, FBO Robert J.
Bellicitti, as his sole and separate propeliy


_____

Robert J. Bellicitti, Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
dated April 16, 1997 as amended FBO Robe1i
J. Bellicitti

*Harry L. Bellicitti Jr.*

Harry L. Bellicitti, Jr., Trustee, of The Harry and
Carol Ann Bellicitti 2015 Revocable Trust
under Trust Agreement dated July 8, 2015, as
amended, FBO Harry L. Bellicitti, Jr. as his
sole and separate property

*Harry L. Bellicitti Jr.*

Harry L. Bellicitti, Jr., Trustee of the Harry L.
Bellicitti Exempt Trust under Trust Agreement
date April 16, 1997, as amended, FBO Harry
L. Bellicitti, Jr.


**BUYER:**

DUTCHINTS DEVELOPMENT LLC, a
California limited liability company



By: _____
     Vahe Tashjian, Manager

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled: **DECLARATION OF JOHN BELLICITTI IN SUPPORT OF MOTION TO APPROVE COMPROMISE WITH OWNERS OF 18500 AND 18520 MARSHALL LANE, SARATOGA, CA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On September 22, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Marcus O. Colabianchi    mcolabianchi@duanemorris.com, dmicros@duanemorris.com
- Kathryn S. Diemer    kdiemer@diemerwei.com
- William J. Healy    wjhealy7@gmail.com
- Geoffrey A. Heaton    gheaton@duanemorris.com, dmicros@duanemorris.com
- Monique Jewett-Brewster    mjb@hopkinscarley.com, camaro@hopkinscarley.com
- Nicholas A. Koffroth    nkoffroth@foxrothschild.com, chris.omeara@dentons.com
- Timothy S. Laffredi    timothy.s.laffredi@usdoj.gov
- Meagen E. Leary    meleary@duanemorris.com, jnazzal@duanemorris.com;tjevans@duanemorris.com
- Benjamin R. Levinson    ben@benlevinsonlaw.com
- Susan B. Luce    sluce@diemerwei.com
- Iain A. Macdonald    imac@macfern.com, 6824376420@filings.docketbird.com
- Richard Marshack    pkraus@marshackhays.com, ecf.alert+marshackcanb@titlexi.com
- Byron Z. Moldo    bmoldo@ecjlaw.com, lpekrul@ecjlaw.com
- Vinod Nichani    vinod@nichanilawfirm.com, NichaniVR98323@notify.bestcase.com
- Office of the U.S. Trustee / SJ    USTPRegion17.SJ.ECF@usdoj.gov
- Jack Praetzellis    jpraetzellis@foxrothschild.com, jack-praetzellis-1683@ecf.pacerpro.com
- Elvina Rofael    elvina.rofael@usdoj.gov, Katina.Umpierre@usdoj.gov,GemMil.Langit@usdoj.gov
- Valerie Jean Schratz    vschratz@hallgriffin.com, llane@hallgriffin.com
- Leonard M. Shulman    lshulman@shulmanbastian.com
- Wayne A. Silver    w_silver@sbcglobal.net, ws@waynesilverlaw.com
- Troy H. Slome    tslome@mdjalaw.com, riwata@mdjalaw.com
- Wendy W. Smith    wendy@bindermalter.com
- Michael St. James    ecf@stjames-law.com
- Michael A. Sweet    msweet@foxrothschild.com, michael-sweet-6337@ecf.pacerpro.com
- Zachary Tyson    zacharytyson@novalawgroup.com, zacharytyson@gmail.com
- Marta Villacorta    marta.villacorta@usdoj.gov
- Kaipo K.B. Young    KYoung@BL-Plaw.com

2. **SERVED BY UNITED STATES MAIL**: On September 22, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.*

Active\118534396.v2-1/12/21

FCI Lender Services, Inc.
P.O. Box 27370
Anaheim, CA 92809-0112

Grace C. Lee
MEYLAN DAVITT JAIN AREVIAN & KIM LLP
444 S. Flower Street, Suite 1850
Los Angeles, CA 90071

Leonard M. Shulman
SHULMAN BASTIAN FRIEDMAN & BUI LLP
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618

Vahe Tashjian
901 Loyola Drive
Los Altos, CA 94024

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

Gena Hunter and 18500 Marshall LN LLC
5150 El Camino Real, Suite E20
Los Altos CA 94022

T Properties LLC
1525 Miramonte Ave, Suite 3892
Los Altos, CA 94024

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on N/A, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 22, 2022 | Kimberly Hoang | /s/ Kimberly Hoang |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

2